## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| **MARYLAND SHALL ISSUE, INC.**, *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | **No. 23-1719** |
| **MONTGOMERY COUNTY, MD,** | ) ) ) ) | |
| *Defendant*. | | |

## PLAINTIFFS' EMERGENCY MOTION FOR A
## RULE 8 INJUNCTION PENDING APPEAL

Pursuant to Rule 8(a)(1)(C) of the Federal Rules of Appellate Procedure, plaintiffs respectfully move this Court for an injunction pending appeal. Pursuant to 28 U.S.C. § 1292(a)(1), on July 7, 2023, plaintiffs filed a notice of appeal from the July 6, 2023, order of the district court denying plaintiffs' motion for a preliminary injunction. On July 8, 2023, plaintiffs filed a letter with the district court requesting leave to file a Rule 8 motion with the district court, as required by the district court's case management order. Dkt #87. To date, the district court has failed to allow plaintiffs to file a Rule 8 motion and has thus "failed to afford the relief requested" within the meaning of Rule 8(a)(2)(ii). The district court has not provided any reason for this inaction and the court's inaction is functionally the same as a denial in its impact on plaintiffs. Plaintiffs therefore seek emergency relief from this Court.

1

Plaintiffs respectfully request an immediate ruling on this emergency motion. Counsel for the appellee has been informed of this filing and while appellants have yet to receive a response, appellee will undoubtedly file an opposition.

In support of this motion, plaintiffs attach the Decision and Order of the district court, the district court docket sheet, the Verified Second Amended Complaint ("SAC"), a copy of Bill 4-21 and Bill 21-22E as enacted by the County, a copy of Montgomery County Code, Chapter 57 as thus amended, the declarations submitted below in support of the motion for a preliminary injunction, the supplemental declaration of Allan Barall, the supplemental declaration of Daniel Carlin-Weber, the transcript of the February 6, 2023 hearing, and a copy of Senate Bill 1, 2023 Maryland Session Laws, Ch. 680. The verification declarations attest to the allegations of the SAC and are thus omitted from this filing but are available from the district court docket (Dkt # 49).

### A.    Introduction

At issue in this case are ordinances, Bill 4-21 and Bill 21-22E, enacted by Montgomery County, Maryland ("the County"), codified at County Code Chapter 57. Bill 4-21 was enacted in 2021 and Bill 21-22E was enacted on November 28, 2022, in response to *NYSRPA v. Bruen*, 142 S.Ct. 2111 (2022). As thus amended, Section 57-11(a) of Chapter 57 bans the possession, transport, sale, and transfer of all firearms within thousands of 100-yard exclusionary zones spread throughout the

County. Section 57-10 bans firearms, with minor exceptions, on the person or in a vehicle. Plaintiffs in this case are Maryland Shall Issue, Inc., a Section 501(c)(4) membership advocacy organization, Engage Armament, a State and Federally licensed firearms dealer, ICE Firearms, a firearms instruction business, and eight individuals who live and/or work in the County. Each of the individual plaintiffs has a Maryland wear and carry permit issued by the Maryland State Police pursuant to MD Code, Public Safety, § 5-306.

The Verified Second Amended Complaint was filed November 30, 2022, immediately after the enactment by the County of Bill 21-22E on November 28, 2022. In Count VII, plaintiffs challenged Chapter 57 of the Montgomery County Code ("Chapter 57"), as amended by Bill 4-21 and Bill 21-22E, as a violation of the Second Amendment as construed in *Bruen*. On December 6, 2022, plaintiffs filed an emergency motion for a TRO and preliminary injunction, seeking immediate relief. The district court held argument on February 6, 2023, and denied the motion five months later, on July 6, 2023. Plaintiffs filed a timely notice of appeal on July 7, 2023.

*Bruen* struck down a New York statute that required applicants for a carry permit to demonstrate "proper cause" for carrying a handgun in public. The Court held that the Second Amendment protected "the general right to publicly carry arms for self-defense," 142 S.Ct. at 2134, while also making clear that a State may

condition that "Second Amendment right to public carry" on obtaining a carry permit from the State if the permit is issued on an otherwise reasonable and objective "shall issue" basis. *Bruen*, 142 S.Ct. at 2138 & n.9. Permits in Maryland are now issued on a "shall issue" basis. See *Matter of Rounds,* 255 Md.App. 205, 213, 279 A.3d 1048 (2022) (invalidating the "good and substantial reason" requirement found in MD Code, Public Safety, § 5-306(a)(6)(ii), as contrary to *Bruen*).

County officials reacted to *Buren* with defiance. The County Executive was vocal in opposing *Bruen*. https://bit.ly/3B9ucB4 (starting at 01:29), as was the sponsor of Bill 21-22E, the County Council President. https://bit.ly/3VvCf3u, who complained that the decision made it more difficult for the County to enact policies that "prevent someone's Second Amendment right from infringing on the right of me and my family to go to a movie theater without having to wonder or worry about someone sitting next to me is carrying a gun on them." https://bit.ly/3P1mmz9 (starting at 01:40). Those views were endorsed by the leadership of the Montgomery County Police Department, id., by the County Council, https://bit.ly/3VydQdF (starting at 02:04:13), and by the County Executive. https://bit.ly/3ET5bv3 (at 02:05). Bill 21-22E was enacted as emergency legislation and went into effect immediately upon the signature of the County Executive on November 28, 2023.

**B. Chapter 57, Bill 4-21 and Bill 21-22E**

A major change made by Bill 21-22E was to amend Section 57-11(b) of Chapter 57 to eliminate the exemption for permit holders from the bans on firearms otherwise imposed by Section 57-11(a). (SAC ¶ 85). Bill 21-22E also altered the definition of "place of public assembly," as used in Section 57-11(a) of Chapter 57. Specifically, Bill 21-22E replaced the definition of "place of public assembly" imposed by Bill 4-21 and redefined the phrase to mean:

> (1) a publicly or privately owned:
> (A) park; (B) place of worship; (C) school; (D) library; (E) recreational facility; (F) hospital; (G) community health center, including any health care facility or community-based program licensed by the Maryland Department of Health; (H) long-term facility, including any licensed nursing home, group home, or care home; (I) multipurpose exhibition facility, such as a fairgrounds or conference center; or (J) childcare facility;
> (2) government building, including any place owned by or under the control of the County; (3) polling place;
> (4) courthouse;
> (5) legislative assembly; or
> (6) a gathering of individuals to collectively express their constitutional right to protest or assemble.
> (SAC ¶ 11).

Bill 21-22E further defined the "place of public assembly" to mean: "A 'place of public assembly' includes all property associated with the place, such as a parking lot or grounds of a building." Id.

Section 57-11(a), as thus amended, provides that "[i]n or within 100 yards of a place of public assembly, a person must not: (1) sell, transfer, possess, or transport a ghost gun, undetectable gun, handgun, rifle, or shotgun, or ammunition or major

component for these firearms." See Exhibit B. Similarly, Section 57-10 of Chapter 57

provides that "[i]t shall be unlawful for any person to have upon his person, concealed

or exposed, or in a motor vehicle where it is readily available for use, any gun designed

to use explosive ammunition" subject to limited exceptions.[1] No exception is made for

permit holders and this prohibition in Section 57-10 is County-wide. Under Section

57-15 "[a]ny violation of this Chapter … is a Class A violation to which the maximum

penalties for a Class A violation apply." Under Section 1-19 of the County Code, the

maximum penalties applicable for a violation of Chapter 57 are a $1,000 fine and 6

months in jail. Under Section 1-20(c) of the County Code, "[e]ach day any violation

of County law continues is a separate offense."

### C. Proceedings Below

On May 28, 2021, plaintiffs filed the Complaint in this matter, challenging Bill

4-21. On June 16, 2021, plaintiffs filed an emergency motion for partial summary

judgment and supporting memorandum, seeking declaratory and equitable relief on

Counts I, II and IV of the Complaint. Count I challenged Bill 4-21 as unconstitutional

under Maryland's Constitution. Count II alleged that Bill 4-21 conflicted with

---

[1] One of the exceptions from Section 57-10 is for persons on "a lawful mission" which presumably included persons who had a wear and carry permit. Bill 21-22E's repeal of the exception for permit holders effectively removed that exception from Section 57-10, thus subjecting permit holders to the bans imposed by Section 57-10 as well as by Section 57-11(a).

numerous State laws and preemption statutes. Count III alleged that Bill 4-21 was a Taking under the State Constitution. Count IV alleged that parts of Bill 4-21 were unconstitutionally vague under the federal and State Constitutions. On July 12, 2021, defendant removed the entire case to federal district court. On February 7, 2022, the district court remanded Counts I, II and III to State court. *Maryland Shall Issue, Inc. v. Montgomery County*, 2022 WL 375461 (D. Md. Feb. 7, 2022).

Shortly thereafter, the Supreme Court decided *Bruen*, striking down a New York statute that required applicants for a carry permit to demonstrate "proper cause" for carrying a handgun in public. The Court held that the Second Amendment protected "the general right to publicly carry arms for self-defense," 142 S.Ct. at 2134, while also making clear that a State may condition that "Second Amendment right to public carry" on obtaining a carry permit from the State if the permit is issued on an otherwise reasonable and objective "shall issue" basis. *Bruen*, 142 S.Ct. at 2138 & n.9.

*Bruen* identified three locations (polling places, legislative assemblies, and courthouses) where a state may completely ban firearms, noting that "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." 142 S.Ct. at 2134. Such an analogue must be a "well-established and representative historical analogue." Id. Outlier statutes are to be disregarded (id. at 2133, 2153), as are statutes from the Territories (id. at 2154-55) as

are statutes from the "late-19th-century evidence, the 20th-century." Id. at 2154 n.28. The Court looked to the Founding Era in conducting this analysis.

On July 22, 2022, plaintiffs filed, in State court, the "First Amended Verified Complaint," adding a new Count V alleging that Bill 4-21 was unconstitutional under the Second Amendment as construed in *Bruen*. On August 8, 2022, the County promptly removed the First Amended Complaint to federal district court. On November 28, 2022, the County enacted Bill 21-22E. On November 30, 2022, plaintiffs filed a Second Amendment Complaint, directly challenging Chapter 57, as thus altered, and amended by Bill 21-22E. On December 6, 2022, plaintiffs filed an emergency motion for a TRO and preliminary injunction on Count VII of the Second Amended Complaint, contending that Chapter 57's bans on carry by permit holders were facially unconstitutional under *Bruen*. Oral argument was held February 6, 2023, and the district court issued its order and opinion denying that motion on July 6, 2023.

## ARGUMENT

Plaintiffs' Rule 8 motion seeks an injunction pending appeal **only** with respect to permit holders and **only** with respect to: (1) the County's bans on possession and transport of firearms within the County's 100-yard exclusionary zones as regulated by Section 57-11(a), (2) the bans imposed by Section 57-10, and (3) the bans imposed by Chapter 57 at or within houses of worship. This Rule 8 motion does not seek relief with respect to firearms **inside** all the rest of the locations identified by

the County's definition of a "place of public assembly" or at any place where firearms are otherwise banned by State law. This limited request is thus much narrower than the preliminary injunctive relief sought in plaintiffs' original motion.

Rule 8 relief is governed by *Nken v. Holder*, 556 U.S. 418, 434 (2009), which makes clear that the standard for a preliminary injunction and the standard for relief pending appeal, while "similar" and "overlap[ping]," are not the same. See *Grimmett v. Freeman*, 2022 WL 3696689 at *1 (4th Cir. 2022) (*per curiam*). A Rule 8 motion is addressed to *this* Court's equitable discretion and is considered *de novo*. See, e.g., *Does 1-3 v. Mills*, 39 F.4th 20, 24 (1st Cir. 2022); *Priorities USA v. Nessel*, 978 F.3d 976, 982 (6th Cir. 2020).

**A. Plaintiffs Are Likely To Succeed On The Merits**

The party seeking Rule 8 relief pending appeal must show that they are "'likely to succeed on the merits.'" Id., quoting *Nken*, 556 U.S. at 426. Under this element, the movant "must establish a material probability of success on the merits." *Vialva v. Watson*, 975 F.3d 664, 666 (7th Cir. 2020). However, *Nken* "did not suggest that this factor requires a showing that the movant is 'more likely than not' to succeed on the merits." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37 (2d Cir. 2010). Thus, "[a] 'strong' showing thus does not mean proof by a preponderance." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020).

Chapter 57 bans firearms at and within 100 yards of any location defined by the County to be a "place of public assembly," There are likely thousands of such 100-yard exclusionary zones spread throughout the County. For example, the County stated that "[t]here are over 1,000 licensed childcare facilities in the County." County Opp. To Plaintiffs' Motion for a PI at 26. The existence of so many such zones makes it impossible, as a practical matter, for a permit holder to travel through the County without coming within at least one of these 100-yard exclusionary zones. The scope of that coverage is illustrated in the maps that identify these thousands of locations, attached to the Supplemental Declaration of Daniel Carlin-Weber, filed herewith. This is what Montgomery County looks like with the Section 57-11(a) 100-yard exclusionary zones (red shaded areas):



Id. at 9. Additional maps are set forth in the Carlin-Weber Declaration. As these maps make plain, it is literally impossible to drive in or through the County, including on Interstate Highways, like I-495 and I-270 and other thoroughfares, with a firearm without quickly entering one or more of these 100-yard exclusionary zones. The downtown areas in the County are almost completely "no go" zones. Indeed, plaintiffs Brandon Ferrell, Joshua Edgar, Deryck Weaver and Nancy and Ronald David cannot even carry outside their homes **at all** with their permits. SAC

¶¶ 64, 66, 69, 71, 73. The same is true for declarant Allan Barall. See Supplemental Declaration of Allan Barall. That effect is not disputed by the County. That result is reinforced by Section 57-10, which, as noted, makes it unlawful for any person to have a gun "on his person, concealed or exposed, or in a motor vehicle where it is readily available for use." That provision is not subject to any 100-yard limitation.

That result is indefensible. *Bruen* held that "there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place'" as that "would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense." 142 S.Ct. at 2134. The island of Manhattan occupies approximately 23 square miles. Montgomery County occupies over 506 square miles. Carlin-Weber Decl. at 3. If New York may not "effectively" ban carry on the island of Manhattan or in cities, the County may not "effectively" ban carry throughout the County. *Bruen* held that there is a "general right" to carry in public, 142 S.Ct. at 2135, 2134, 2135, but the County has extinguished that right, exactly as its officials intended.

Relying exclusively on post-Civil War historical analogues, including some statutes and local ordinances from the Territories and from the late 19th and 20th centuries, the district court nonetheless sustained Chapter 57's ban on firearm possession and transport by permit holders. In so holding, the court relied (slip op. 18-19) exclusively on *NRA v. Bondi*, 61 F.4th 1317, 1322 (11th Cir. 2023), a decision

holding that the Reconstruction Era was the "more probative" period than the Founding Era for conducting the historical analogue inquiry. That panel holding in *Bondi* conflicts with *Hirschfeld v. ATF*, 5 F.4th 407, 419 (4th Cir. 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021), which held that 1791 is the "critical year" for conducting the historical inquiry required under the Second Amendment. Quoting *Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012).[2] However, on July 14, 2023, the Eleventh Circuit granted rehearing en banc in *Bondi* and vacated the panel's opinion. *NRA v. Bondi*, 2023 WL 4542153 (11th Cir. 2023).

Apart from the now-vacated decision in *Bondi*, we know of no court that has held that the Reconstruction Era is "more probative" for the historical inquiry required by *Bruen*. See *Worth v. Harrington*, 2023 WL 2745673, at *11 (D. Minn. Mar. 31, 2023) (rejecting *Bondi*, following *Hirschfeld* and noting the "rather clear signs that the Supreme Court favors 1791"); *Fraser v. ATF*, 2023 WL 3355339 *15 & n.21 (E.D. Va. May 10, 2023) (following *Hirschfeld* and *Worth* and rejecting *Bondi*). In this case, the district court looked exclusively to laws from the Reconstruction Era, statutes enacted in the Territories and statutes or ordinances enacted in late 19ᵗʰ and 20ᵗʰ centuries in conducting the historical inquiry. Slip op.

---

[2] While *Hirschfeld* involved a challenge to a federal statute, *Bruen* held that "individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government." 142 S.Ct. at 2137.

23-27, 29-32, 34, 38. The court dismissed Founding Era traditions as inconsistent with these statutes. Slip op. at 37-38.

The district court's analysis was error. Later statutes are to be rejected if they conflict with a Founding Era tradition and a court may not rely on statutes from the Territories and the late 19th and 20th centuries or on outliers. *Bruen,* 42 S.Ct. at 2154 (finding territorial statutes not 'instructive'"), id at n.28 (declining to consider late-19th or 20th century evidence because it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence"); Id at 2154 (later history is accorded little weight "when it contradicts earlier evidence"). *Bruen* holds that "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." 142 S.Ct. 2131. The same "lack" is apparent here.

Section 57-11(a) and Section 57-10 ban firearms over vast tracts of privately owned land otherwise open to the public and those bans are thus analogous to New Jersey's presumptive ban on carry on private property at issue in *Koons v. Platkin*, 2023 WL 3478604 at *68 (D.N.J. May 16, 2023), where the district court preliminarily enjoined that presumptive ban. New Jersey appealed that and other rulings to the Third Circuit and sought a stay of the injunction pending appeal. In a 2-1 ruling, the Third Circuit granted New Jersey's motion for a stay in limited part, but otherwise denied the state's motion for a stay, including refusing to stay that part

14

of the district court's preliminary injunction invalidating the presumptive ban on carry on private property. The third judge on the motions panel would have denied New Jersey's motion for a stay in its entirety. See *Koons v. Attorney General of New Jersey*, No. 23-1900, slip op. 2 and n.1 (June 20, 2023). In this case, Chapter 57, with its 100-yard exclusionary zones (Section 57-11(a)) and ban on possession on the person and in a vehicle (Section 57-10), effectively prohibits carry by permit holders much more extensively than the New Jersey statute enjoined in *Koons*.

The same situation applies to houses of worship at which firearms are expressly banned by Section 57-11(a). The district court in *Hardaway v. Nigrelli*, 2022 WL 16646220 (W.D.N.Y. Nov. 3, 2022), and a different district court in *Antonyuk v. Hochul*, 2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022), preliminarily enjoined, *inter alia*, New York's ban on carry in houses of worship by permit holders. On appeal, New York sought a stay pending appeal of all aspects of both orders. The Second Circuit granted the motion for a stay, but, in both cases the Second Circuit expressly excepted from its stay order "persons who have been tasked with the duty to keep the peace at places of worship." *Hardaway v. Nigrelli*, No. 22-2933 (2d Cir. 2023); *Antonyuk v. Hochul*, 2022 WL 18228317 (2d Cir. 2022). Multiple declarants in this case provided precisely that security for their places of worship in the County prior to the enactment of Bill 21-22E and attest to the urgent and indisputable need for security. See Declaration of David Sussman, the

15

Declaration and Supplemental Declaration of Allan Barall and the anonymous Declarations of John Doe 1, John Doe 2, Thomas Paine and the anonymous Declaration and Supplemental Declaration of John Smith, all submitted with plaintiffs' motion for a preliminary injunction or reply. In further support, attached to this Motion is the Second Supplemental Declaration of Allan Barall. These rulings in *Koons, Hardaway* and *Antonyuk*, by three district courts and two different courts of appeals indicate that plaintiffs have a strong likelihood of success.

### C.     Plaintiffs Are Suffering Continuous Irreparable Injury

*Nken* also requires a showing of irreparable harm. 556 U.S. at 434. Plaintiffs suffer continuing irreparable harm by the County's denial of plaintiffs' constitutional right to carry in public. See *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987) ("the denial of a constitutional right, if denial is established, constitutes irreparable harm for purposes of equitable jurisdiction"); *Grimmett*, 2022 WL 3696689 at *2 ("Infringing constitutional rights generally constitutes irreparable harm") (citing *Ross*). See also *Koons v. Reynolds*, 2023 WL 128882 at *23 (D.N.J. Jan. 9, 2023). That harm is "irreparable" under *Nken*. The district court seemed to accept this point but inexplicitly found it insufficient. Slip op. 38.

Instead, the district court suggested that plaintiffs were not irreparably harmed because they had not demonstrated "a specific incident of violence for which a firearm would be necessary for self-defense is imminent or likely." Slip op. 39. But

"[t]he right to 'keep and bear Arms' historically encompassed an "individual right to possess and carry weapons *in case of confrontation.*'" *Bruen* 142 S.Ct. at 2176 (emphasis added) (citation omitted). The point of carry "in case of confrontation" is lost if plaintiffs must wait until a deadly threat is "imminent or likely." The Supreme Court disallowed that sort of reasoning in *Bruen* in rejecting New York's argument the government should be allowed to "condition handgun carrying in areas 'frequented by the general public' on a showing of a nonspeculative need for armed self-defense in those areas.'" 142 S.Ct. at 2135. No court since *Bruen* has required a plaintiff to show an "imminent" need for self-defense. That very notion is antithetical to the "general right" recognized in *Bruen*.

The district court also erred in suggesting that "[p]laintiffs also have not persuasively demonstrated how the Second Amendment right to armed self-defense extends to a right to act as an armed security guard for private institutions." Slip op. 40. The connection to self-defense is tragically obvious. Plaintiff Shemony alleges in the verified Second Amended Complaint that "he regularly carries a loaded firearm while attending services at his synagogue **for his own self-defense** and for the defense of others." (SAC ¶ 74) (emphasis added). The declaration of Allan D. Barall (Exhibit O) details the threats to which Jewish synagogues are subject and those threats apply directly to the permit holder **member** of the synagogue no less than any other member of that community. Full time security guards at small

synagogues are both not affordable and less effective, as explained in the Declaration of John Doe No. 1 (Exhibit P ¶ 8) and in the Barall Declaration ¶ 6 (Exh. O). The same points obviously apply no less to churches, which are also under threat of attack. See Declaration of John Smith No.1 (Exhibit S). This incontestable evidence cannot be ignored.

### D.     The Requested Relief Would Not Harm The County

Finally, *Nken* requires consideration of whether the relief sought will "substantially injure" other parties. 556 U.S. at 434. This factor is less important than the likelihood of success and irreparable injury. See *Nken*, 556 U.S. at 434 ("The first two factors of the traditional standard are the most critical."). Contrary to the district court's ruling (slip op. 39), relief simply cannot be denied just because the County (or the court) believes (or fears) that public safety might be impaired by allowing trained and vetted permit holders to exercise their constitutional rights. See *Bruen*, 142 S.Ct. at 2126 n.3 ("'[t]he right to keep and bear arms ... is not the only constitutional right that has controversial public safety implications'") (citation omitted). See also *Bruen*, 142 S.C. 2160-61 (Alito, J., concurring).

The district court noted rising crime in Montgomery County (slip op. 39-40), but no part of this rise can be remotely attributed to thoroughly vetted **permit holders** who are, as a group, probably the most law-abiding persons in the United States. See https://bit.ly/3O02TPA. Prior to the enactment of Bill 21-22E in

November 2022, the County expressly exempted permit holders from its regulations See slip op. 5. Likewise, prior to *Bruen*, the Maryland State Police issued carry permits to members of churches and synagogues to provide security at these places of worship under MD Code, Public Safety, § 5-306(a)(6)(ii), the "good and substantial reason" requirement invalidated under *Bruen*. See Barall Decl. (Exh. O). Allowing permit holders to continue to provide security cannot possibly harm the County. Carry at churches is fully consistent with the historical tradition at the time of the Founding. See *Koons v. Platkin*, 2023 WL 3478604, at **72–73 (D.N.J. May 16, 2023).

Allowing permit holders to carry pending appeal would thus reinstate the *status quo ante* that existed prior to the enactment of Bill 21-22E. A preliminary injunction or an injunction pending appeal restoring the *status quo ante* is fully appropriate under equitable principles. See *Aggarao v. MOL Ship Mgmt. Co*., 675 F.3d 355, 378 (4th Cir. 2012) ("The status quo to be preserved by a preliminary injunction, however, is not the circumstances existing at the moment the lawsuit or injunction request was actually filed, but the 'last uncontested status between the parties which preceded the controversy.'"), quoting *Stemple v. Bd. of Ed. of Prince George's Cnty*., 623 F.2d 893, 898 (4th Cir.1980). The relief sought here would "restore" that ability to carry pending appeal.

Carry by permit holders did not harm the County prior to the enactment of Bill 21-22E and it cannot now. While *Bruen* allows more people to obtain carry permits under "shall issue" laws, 142 S.Ct. at 2138 n.9, that is because "the people" have a constitutional right to bear arms. "A state is 'in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction.'" *Centro Tepeyac v. Montgomery Cty.,* 722 F.3d 184, 191 (4th Cir. 2013), quoting *Giovani Carandola, Ltd. v. Bason,* 303 F. 3d. 507, 521 (4th Cir. 2002). See also *Hispanic National Law Enforcement Association NCR v. Prince George's County*, 535 F.Supp.3d 393, 428-29 (D. Md. 2021) (Chuang, J.) (same). *Nken* requires no more.

### E.    The "Public Interest" Is Not Harmed

Finally, *Nken* requires consideration of whether the relief sought will be "in the public interest." 556 U.S. at 434. "[U]pholding constitutional rights is in the public interest." *Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011). See also *Giovani Carandola,* 303 F. 3d. at 521 (stating that "upholding constitutional rights surely serves the public interest"). The right of self-defense is well-recognized in the law and is not contrary to the public interest.

The district court gave controlling weight to the County's argument that Bill 21-22E "serve[s] the public interest of reducing the risk of gun violence." Slip op.

20

39. That *ipse dixit* view is contrary to Senate Bill 1 ("SB 1"), State-wide legislation regulating carry by permit holders enacted by the Maryland General Assembly this year. 2023 Maryland Session Laws Ch. 680. SB 1 affirmatively *allows* carry by private owners (and by persons with whom the owner has an "express agreement") in the Bill's list of privately owned "sensitive" areas, including private schools. Id., amending MD Code, Criminal Law, § 4-111(b)(9). The bans in government areas are restricted to buildings or parts of buildings which "must" be posted. Id. at § 4-111(d)(2). SB 1 does **not** ban firearms in any park, place of worship, library, recreational facility, or in any multipurpose exhibition facility such as fairgrounds or conference centers and regulates firearms in far fewer types of health care facilities than the County. **None** of these areas include buffer zones.

Under SB 1, places of worship are treated as ordinary private property in which the owners may carry and allow others to do likewise by simple permission, including a sign. Id. § 6-411(d)(1),(2). SB 1 also affirmatively allows fully armed permit holders to carry in a vehicle. Id. § 6-411(b)(11). Unlike Chapter 57, SB 1 expressly applies only to "building[s]" and allows carry (by permit holders) in areas "adjacent to" such private property . Id., § 6-411(b)(6). These determinations of the "public interest" by the General Assembly warrant consideration. The district court ignored SB 1, even though it was briefed by plaintiffs. (Dkt #80). This is not to say

that all of SB 1 is constitutional (parts of it have already been challenged by MSI and others), only that the contrast to the County is stark.

The Supreme Court rejected means-ends scrutiny in *Bruen*, 142 S.Ct. at 2126-27. Prior to *Bruen*, that means-end approach balanced the State's asserted "compelling interest" in public safety with the right guaranteed by the Second Amendment in what amounted to "rational basis review." See *Silvester v. Becerra*, 138 S.Ct. 945 (2018) (Thomas, J., dissenting from the denial of certiorari) (noting that means-end scrutiny "was indistinguishable from rational-basis review"). *Bruen*, 142 S. Ct. at 2131 ("The Second Amendment is the very *product* of an interest balancing by the people and it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense.") (internal quotation marks omitted).

Just as the courts may not "engage in independent means-end scrutiny under the guise of an analogical inquiry," *Bruen*, 142 S.Ct. at 2133 n.7, courts may not engage in means-ends scrutiny under the guise of balancing the right to armed self-defense in undertaking the analysis required for equitable relief. Doing so would effectively "eviscerate the general right to publicly carry arms for self-defense," just as means-ends scrutiny did prior to *Bruen*. Id. at 2134. "'The constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely

different body of rules than the other Bill of Rights guarantees.'" *Bruen*, 142 S.Ct. at 2156 (citation omitted).

## CONCLUSION

The motion for an injunction pending appeal should be granted.

*/s/ Mark W. Pennak*

_____

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd, Ste, C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
Bar No. 21033
*Counsel for Plaintiffs*

Dated: July 17, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 27(d) and Rule 32(g)(1) of the Federal Rules of Appellate Procedure, the undersigned counsel here certifies that the forgoing Plaintiff's Emergency Motion For A Rule 8 Injunction Pending Appeal contains 5,187 words, not counting those items which may be excluded under Rule 32(f), and uses a 14 point, Times New Roman proportional font.

*/s/ Mark W. Pennak*

Mark W. Pennak,
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on July 17, 2023, the forgoing "Plaintiff's Emergency Motion For A Rule 8 Injunction Pending Appeal" were served on opposing counsel listed below via ECF service:

Edward B. Lattner
101 Monroe St.
Rockville, MD        20850

Erin Jeanne Asbarry
101 Monroe St.
Rockville, MD 20850

*s/ Mark W. Pennak*

_____
MARK W. PENNAK
*Counsel for Plaintiffs-Appellants*

Dated: July 17, 2023