SUPPLEMENTAL DECLARATION OF ALLAN BARALL FILED WITH REPLY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC., *et al*.,  )
                                       )
*Plaintiffs*,                          )
                                       )
v.                                     )  Case No. 8:21-cv-01736-TDC **(L)**
                                       )  Case No. 8:22-cv-01967-DLB
MONTGOMERY COUNTY, MD.,                )
                                       )
*Defendant*.                           )

### SUPPLEMENTAL DECLARATION OF ALLAN D. BARALL

COMES NOW, the declarant, ALLAN D. BARALL, and hereby solemnly declares under penalties of perjury that the statements in this supplemental declaration are based upon personal knowledge that the contents of this supplemental declaration are true to the best of my knowledge and belief:

1. My name is ALLAN D. BARALL, and I am member of Maryland Shall Issue, Inc., a plaintiff in the above-captioned matter. I am an adult over the age of 18, a Montgomery County, Maryland resident and I am fully competent to give sworn testimony in this matter.

2. This Declaration is a follow-on to my previously submitted declaration, dated December 1, 2022.

3. Montgomery County, the Defendant in the Opposition to the Plaintiffs' Emergency Motion for Temporary Restraining Order and Emergency Motion for a Preliminary Injunction, states that "no irreparable harm" exists because of passing of County Bill 21-22E. I believe this is an incorrect statement.

1

**EXHIBIT B**

4. I am a law-abiding citizen. Upson passage of Bill 21-22E I stopped carrying a handgun in my synagogue even though I was specifically requested to carry by the synagogue's rabbi and senior leadership for security measures. Knowing that the new law would only affect law-abiding, permit holding people, I heard at least three independent persons state that they now feel like "sitting ducks" in my synagogue. This exact, precise phrase was used by separate, independent individuals. And, I am personally aware of at least two individuals who have now stopped coming to the synagogue because they no longer feel that it is safe to do so in light of the County's enactment of Bill 21-22E.

5. Orthodox Jews often attend services at a synagogue two or three times a day. Synagogues are especially open places. My specific synagogue is mere feet off a busy road where the congregation has its collective back to windows that face the street. It is especially easy for someone with ill intent to enter.

6. A report issued on December 28, 2022, entitled the "Hate Crime Accountability Project" documents that 194 antisemitic assaults occurred between 2018 and 2022. (https://bit.ly/3X4BNtn.) Among the incidents noted in the report was that two men were arrested on November 18, 2022, for a plot to attack a New York City synagogue. "What might have been the next Pittsburgh or Poway synagogue massacre was averted," the CEO of UJA-Federation of New York, Eric Goldstein, said, referring to the 2018 and 2019 massacres at Jewish houses of worship. (https://bit.ly/3i6KEfq.) I believe that the same sort of antisemitic attack could just as easily happen at my synagogue or any other synagogue in the Montgomery County, and that it is only a matter of time.

7. The Defendant states that "… Plaintiff's fear is outweighed by the fear the non-permit holding public may have that a stranger standing next to them – of unknown current state

or temperament – is carrying a loaded firearm as they exercise their First Amendment right to assemble in a place of public assembly". Referenced is a quote from the Montgomery County Council President "on the right of me and my family to go to a movie theater without having to wonder or worry about someone sitting next to me is carrying a gun on them." First of all, in order to obtain a wear and carry permit, I went through a background check from the State police, including fingerprinting, an interview with a State investigator, and reference checks. It is thus simply not correct to state that my "state of temperament" is "unknown." Further, if the County believes that "wonder or worry" about a legally armed permit holder is a harm, then I believe that the "wonder or worry" of me and my fellow synagogue members about "being sitting ducks" to antisemitic criminal attack is even a greater harm. Since the law passed, I have not seen a single police officer at my synagogue, and I have attended consistently three services daily. Without the ability to defend myself, the additional anxiety and worry about my physical safety is, indeed, "irreparable harm" to me.

       8. The County is, understandably, attempting to curtail the number of firearm-related deaths in the U.S. The Defendant quotes the Montgomery County Police Chief Marcus Jones who stated on July 11, 2022, that "gun violence has become sort of the norm, which is not where we need to be … It is of grave concern." I agree entirely, which is why I obtained a wear and carry permit.

       9. At hearing on this bill, County Council members cited the recent events of the University of Virginia shooting and the shooting outside of Clyde's restaurant in Bethesda. I conducted an online search and determined that neither of those shootings was caused by a permit-holding person. I believe that the County should understand that Bill 21-22E only affects the law-abiding person like me; I believe that it does nothing to protect the law-abiding citizen from the

3

criminal element who I believe will continue to illegally carry just as they illegally carried prior to the enactment of Bill 21-22E.

*/s/ Allan D. Barall*

Dated: January 4, 2023:
ALLAN D. BARALL