## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARYLAND SHALL ISSUE, INC., *et al.*,  *

                    *

   Plaintiffs-Appellants,  *

                    *    No. 23-1719

   v.  *

                    *

MONTGOMERY COUNTY,  *

MARYLAND,  *

                    *

   Defendant-Appellee.  *

## DEFENDANT'S RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR A RULE 8 INJUNCTION PENDING APPEAL

Defendant Montgomery County, Maryland ("the County"), by and through its undersigned counsel, and pursuant to Rule 8(a)(1)(C) of the Federal Rules of Appellate Procedure and the Court's July 17, 2023, Order (Doc. 12),[1] files its Response to Plaintiff's Emergency Motion for a Rule 8 Injunction Pending Appeal (the "Emergency Motion").

### I.    INTRODUCTION

The Second Amended Complaint challenges Chapter 57 of the Montgomery County Code, as amended by County Bills 4-12 and 21-22E (the "County Firearms Law") on a variety of grounds. On July 6, 2023, the District Court denied the

---

[1] The County will refer to docket entries in the U.S. District Court (Case No. 8:21-CV-01736-TDC) as "ECF," and will use "Doc." to reference docket entries in the instant interlocutory appeal before this Court, No. 23-1719.

Plaintiffs' Emergency Motion for a Temporary Restraining Order and Preliminary Injunction ("Denied Motion"). That Denied Motion sought to enjoin the County from enforcing Section 57-11(a) of the Montgomery County Code against persons who have been issued a wear and carry gun permit by the Maryland State Police. (ECF 54, 82).

On July 7, 2023, Plaintiffs took this interlocutory appeal from the District Court's July 6, 2023, Order. On July 8, 2023, in accordance with the District Court's Case Management Order (ECF 11), Plaintiffs sought permission from the District Court to file a motion for injunction pending appeal "**only**" (emphasis in original) as to the restrictions on possession and transportation of firearms in the County's 100-yard buffer zone under 57-11(a). (ECF 87). When the District Court failed to respond to Plaintiffs' request in accordance with their timetable, Plaintiffs filed a broader "Emergency Motion" with this Court, seeking the ***extraordinary relief*** of an injunction pending appeal with respect to permit holders as to County restrictions on: (1) possession and transport of firearms in the County's 100-yard buffer zone under 57-11(a); (2) keeping guns on persons or in vehicles under Section 57-10; and (3) firearms on places of worship under Chapter 57. (Doc. 10-1 at 8); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (preliminary injunction is "an extraordinary remedy").

Plaintiffs' Emergency Motion should, once again, be denied on both procedural and substantive grounds. Plaintiffs' Emergency Motion has numerous factual and legal inaccuracies.  Plaintiffs also attempt improperly to include new factual allegations in the form of supplemental declarations and maps, which are the subject of the County's pending Motion to Strike.

The Emergency Motion should be denied on procedural grounds because:

(1) In violation of FRAP  Rule 8(a)(1)(C), the scope of the Emergency Motion is broader than, and seeks relief beyond that sought in, the Denied Motion. Namely, the Denied Motion did not ask the District Court to enjoin Section 57-10  (ECF 54);

(2) Plaintiffs failed to comply the District Court's Case Management Order. Plaintiffs informed the district court that its proposed Rule 8 Motion would be "**only**" (emphasis in original) to the restrictions of possession and transport of firearms in the County's 100-yard buffer zone under 57-11(a). (ECF 87). Plaintiffs' Emergency Motion challenges an additional two other areas – Section 57-10 and restrictions on carry in places of worship; and

(3) The Emergency Motion improperly attempts to include new factual allegations in the form of two supplemental declarations and  maps that were not before the District Court. (Doc. 10-1 at 11; Doc. 10-7 and Doc.

3

10-15).

The Emergency Motion should be denied on substantive grounds because Plaintiffs have not met the heavy burden of showing they are entitled to the extraordinary remedy of an injunction pending appeal.

## II.    STANDARD OF REVIEW

A request for an injunction pending appeal "[d]emands a significantly higher justification" than a request for a stay, because unlike a stay, an injunction "does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts." *Respect Me. PAC v. McKee*, 562 U.S. 996, (2010) (citing *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U. S. 1312, 1313 (1986)).

The "**demanding**" four-part test for evaluating a Rule 8 request for injunction articulated by the Court is: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably  injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 433-434, (2009) (citation omitted); *Grimmett v. Freeman*, No. 22-1844, 2022 U.S. App. LEXIS 24124, at *1 (4th Cir. Aug. 23, 2022) (*per curiam*) (emphasis added).  The first two factors of this standard are the most critical, and it is not enough to show some "possibility of irreparable injury" or

4

that the chance of success on the merits be "better than negligible." *Nken*, 556 U.S. at 434-35 (citations omitted); *Protect Our Parks, Inc. v. Buttigieg*, 10 F.4th 758, 763 (7th Cir. 2021) ("the mere possibility of success is not enough; [a plaintiff] must make a "strong" showing on the merits.")

This court evaluates a district court's decision to grant or deny preliminary injunctions under an abuse of discretion standard. *Aggarao v. MOL Ship Mgmt. Co., Ltd..,* 675 F.3d 355, 366 (4th Cir. 2012). Pursuant to this standard, appellate courts review the district court's factual findings for clear error and review its legal conclusions de novo. *Dewhurst v. Century Aluminum Co*., 649 F.3d 287, 290 (4th Cir. 2011). Because preliminary injunctions are "extraordinary remed[ies] involving the exercise of very far-reaching power," *Direx Isr., Ltd. v. Breakthrough Med Corp.,* 952 F.2d 802, 811 (4th Cir. 1992), appellate courts should be particularly "exacting" in their use of the abuse of discretion standard when it reviews an order granting or denying a preliminary injunction. *Sun Microsystems, Inc. v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 333 F.3d 517, 524 (4th Cir. 2003), *abrogated on other grounds by eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

The Emergency Motion should be denied because it does not meet the "demanding" four-part test for an injunction pending appeal.

### III.   ARGUMENT

### A. The Scope of the Emergency Motion Exceeds the Scope of the Denied Motion.

Plaintiffs' Denied Motion sought to enjoin the County "from enforcing Section 57-11(a) of [the County Firearms Law] against persons who have been issued a wear and carry permit…" (ECF 54 at 1).  The proposed orders  Plaintiffs filed with their Denied Motion confirm the scope of the Denied Motion was limited to enforcement of Section 57-11(a) as to those persons issued a wear and carry permit. (ECF 54-8, 54-9).

Despite failing to raise any argument regarding Section 57-10 in the Denied Motion, Plaintiffs' Emergency Motion **for the first time** seeks an emergency preliminary injunction as to "bans imposed by Section 57-10" of the County Firearms Law, which pertains to "Keeping guns on person or in vehicles."   None of the three complaints filed since this case's April 2021 inception even reference Section 57-10. *See* Ex. 1 (original Complaint); Ex. 2 (Amended Complaint); ECF 49 / Doc. 10-6 (Second Amended Complaint). This Court should summarily deny Plaintiffs' Emergency Motion as to Section 57-10, and need not reach the merits of this argument, because it is beyond the scope of both the Denied Motions and all three iterations of the lawsuit.  FRAP Rule 8(a)(1)(C) precludes Plaintiffs from seeking injunctive relief from this Court without first seeking that injunctive relief

from the District Court, absent extraordinary circumstances. Plaintiffs have made no such showing in this case for their failure to first present these additional arguments to the District Court.

As Section 57-10 is beyond the scope of the Denied Motion, the District Court's Opinion did not reach any legal conclusion as to Section 57-10. (ECF 82). Therefore, any argument pertaining to Section 57-10 is not properly before this court, and should be denied, as there are no factual findings or legal conclusions made by the District Court for this Court to review. *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011).[2]

## B. Plaintiffs Failed to Comply with the District Court Rules Prior to Filing the Emergency Motion.

The factual inaccuracies in the Emergency Motion begin on its first page. Plaintiffs incorrectly state that they requested leave from the district court to file a Rule 8 motion seeking the relief requested in the Emergency Motion "as required by the district court's case management order." (Doc. 10-1 at 1).

---

[2] "Absent exceptional circumstances, of course, [appellate courts] do not consider issues raised for the first time on appeal." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 603 (4th Cir. 2004). Rather, "[appellate courts] consider such issues on appeal only when the failure to do so would result in a miscarriage of justice." *Id*. (citing *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993)). The Emergency Motion fails to acknowledge that it exceeds the scope of the Denied Motion and does not argue that exceptional circumstances justifying departure from the general rule are present here. See *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 242, (4th Cir. 2009). Furthermore, as discussed *infra* Section III(E), there are no exceptional circumstances warranting such a departure.

The District Court's Case Management Order requires a party to file a letter before filing a motion. *See* ECF 11 ("[n]o motions may be filed without first seeking a Pre-Motion Conference with the Court"). A party's required Notice of Intent to File a Motion must contain "a brief description of the motion sought to be filed, a brief summary of the particularized factual and legal support for the motion [and] … shall contain sufficient information to demonstrate that it is premised on colorable, good-faith arguments and is not frivolous or brought for any improper purpose…" (ECF 11 at 2-3).

Plaintiffs did file a letter, but it sought "an injunction pending appeal **only** with respect to the County's bans on possession and transport of firearms in the County's 100-yard exclusionary zones by a person who has a wear and carry permit issued by the Maryland State Police." (ECF 87 at 1) (emphasis in original) (hereafter "Letter"). The deficient and factually incorrect Letter goes on to inform the district court and the County that the "Rule 8 motion thus **will not seek relief** as to whether the County may ban possession of all firearms within the specific locations identified by the County's definition of a 'place of public assembly.'" (ECF 87 at 3) (emphasis added).

In direct contradiction to the Letter, the Emergency Motion seeks to enjoin the County's restriction firearms within a place of worship, which the County Firearms Law defines as a place of public assembly under Section 57-11. (Doc. 10-

1 at 8; ECF 87). Furthermore, Plaintiffs' Letter did not inform the District Court or seek its approval to file for an emergency injunction as to Section 57-10, which was outside the scope of the Denied Motion as set forth in *supra* Section III(A). (Doc. 10-1 at 8: ECF 87). At no time did Plaintiffs inform the County that they intended to seek relief or offer arguments exceeding the scope of the Letter.

Had Plaintiffs' Letter complied with the requirements in the Case Management Order and accurately stated the scope of the Emergency Motion, it would have provided the County with the "reasonable notice" as the full scope of relief sought by Plaintiffs required under FRAP Rule 8(a)(2)(C) and afforded the County and the District Court an opportunity to assess and conference prior to the Emergency Motion, including whether the requested relief  is "premised on colorable, good-faith arguments and is not frivolous or brought for any improper purpose." (ECF 11 at 2-3).

Accordingly, the relief sought in the Emergency Motion pertaining to Section 57-10 and the County's restriction of firearms in places of worship under Section 57-11 should be denied.

### C. Plaintiffs' New Factual Allegations and Exhibits Should be Struck.

The Emergency Motion improperly attempts to introduce new factual allegations and evidence not offered in the District Court, including new maps (Doc. 10-1 at 11, Doc. 10-15 exhibit), the Supplemental Declaration of Daniel Carlin-

Weber (Doc. 10-7) and the Second Supplemental Declaration of Allan Barall (Doc. 10-15).

For the reasons set forth in the County's Motion to Strike filed concurrently with this Response, and adopted and incorporated herein, this Court should strike Plaintiffs' improper attempt to introduce new factual allegations and evidence, all of which were available to Plaintiffs at the time they filed the Denied Motion. Plaintiffs offer no explanation for their late and improper attempt to supplement their argument.

### D. The Limitations in Chapter 57 Are Not What Plaintiffs Would Have This Court Believe Them to be.

Plaintiffs overstate grossly the reach of the County Firearms Law. They characterize the County's restrictions on public carry as banning the ability to carry a firearm throughout the County, including private property. This is simply not true. The County's law restricts firearms in places of public assembly, and that restriction does **not** apply to:

1. possession of a firearm or ammunition in a person's home;[3]

2. possession of a firearm and its ammunition at a business by its owner or an authorized employee of the business;[4]

---

[3] *See* Montgomery County Code ("MCC") § 57-11(b)(2). This exception does not include ghost guns and undetectable guns. *See id.*

[4] *See* MCC § 57-(b)(4). Both the business owner and employee must have State-issued wear-and-carry permits. *See id.*

3. a law enforcement officer or a licensed security guard;[5]

4. a retired law enforcement officer;[6] and

5. the transport of a firearm in a vehicle when it is locked in a case, separate from its ammunition.[7]

Plaintiffs' newfound maps (Doc. 10-1 at 11; Doc. 10-7 at 10-25, 26, 29-31; Doc. 10-15 at 5), which as noted above should not even be considered by this Court, fail to show the private residence or business exceptions where a gun may be kept. Contrary to Plaintiffs' assertions, it is possible to carry a weapon anywhere outside of one's home in the County, as a person can transport the weapon in a locked case, separate from its ammunition. Plaintiffs' maps are therefore inaccurate and misleading.

The County's restrictions are not the totalitarian hand of government reaching into Plaintiffs' homes and private property as Plaintiffs' breathless hyperbole would have this Court believe.

---

[5] *See* MCC § 57-11(b)(2).

[6] The Law Enforcement Officers Safety Act permits a qualified law enforcement officer or a qualified retired or separate law enforcement officer to carry a concealed weapon regardless of state or local laws. *See* 18 U.S.C. §§ 926B, 926C.

[7] *See* Code § 57-11(b)(5)(A). This exception does not include ghost guns and undetectable guns. *See id.*

**E. This Court Should Deny Plaintiffs' Request for Emergency Injunctive Relief.**

**1. The District Court Properly Held That Plaintiffs Are Not likely to Succeed on the Merits.**

Under *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) ("*Bruen*"), if the Second Amendment applies to the conduct regulated by the government, there is only one step for a court to consider: whether the government can justify its regulation by demonstrating it is "[c]onsistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

*Bruen* identified five "sensitive places" where firearms historically could be prohibited: schools, government buildings, legislative assemblies, polling places, and courthouses. *See id.* at 2133.[8] The Court instructed courts to "use analogies to those historical regulations of 'sensitive places' to determine [whether] modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible." *Id.* at 2133 (emphasis in original).

The five sensitive places in *Bruen* are not exhaustive, and a government may justify its regulation by identifying other "relevantly similar" historical regulations.

---

[8]Plaintiffs' Emergency Motion omits schools and government buildings from their list, incorrectly asserting that *Bruen* identified only three locations where firearms may be banned. *See* Pls.' Emerg. Mot. for a Rule 8 Inj. Pending Appeal (Doc. 10-1) at 7.

*See id.* at 2132. *Bruen* listed two metrics for courts for a "relevantly similar" analysis: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. The historical analogue analysis therefore should review "[w]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133.

The "how" and "why" metrics are central to the analysis, but they are not the only metrics for a court to review. *See id.* at 2132. In addition to the "how" and "why" metrics, the task of analogue analysis can be a "straightforward" assessment if the challenged law "addresses a general societal problem that has persisted since 18th century." *Id.* at 2131. The absence of a similar law addressing the ongoing historical problem is relevant evidence that the new law is unconstitutional. *See id.* at 2131. But for laws that implicate "unprecedented societal concerns or dramatic technological changes," a more "nuanced" approach may be required, as "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868." *Id.* at 2132.

To that end, the analogue analysis as "[n]either a straightjacket nor a regulatory blank check." *Id.* at 2133. Analogical reasoning only requires that the government "[i]dentify a well-established and representative historical *analogue*,

not a historical *twin*." *Id.* at 2133 Even if a challenged law is not a "[d]ead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 2133.

*Bruen* does not support the Plaintiffs' argument that only "Founding Era" laws are instructive in the analogue analysis.[9] *Bruen* acknowledged the debate between whether the laws at the time of the Second Amendment's adoption (1791) or the ratification of the Fourteenth Amendment (1868) are more instructive. *See Bruen* at 2138. But the Court **expressly** did not weigh in on which era is definitive. *See id.*[10] Rather, the Court stated the laws in both eras supported its conclusion that New York's law requiring "proper cause" to carry in public did not pass constitutional muster. *See id.*

Many courts prior to *Bruen*,[11] and after,[12] considered Reconstruction Era laws as pertinent to Second Amendment challenges to government regulations. As noted by the District Court, the Second Amendment originally applied only to the Federal

---

[9] *See* Pls.' Emerg. Mot. for a Rule 8 Inj. Pending Appeal (Doc. 10-1) at 8.

[10] Plaintiffs agreed in the District Court that *Bruen* did not resolve this debate. *See* ECF 54-1 at 10, excerpted as Exhibit 3.

[11] *See Gould v. Morgan*, 907 F.3d 659, 669 (1st Cir. 2018); *Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012).

[12] *See Goldstein v. Hochul*, No. 22-CV-8300 (VSB), 2023 U.S. Dist. LEXIS 111124, at *30-31 (S.D.N.Y. June 28, 2023); *Frey v. Nigrelli,* No. 21-CV-05334 (NSR), 2023 U.S. Dist LEXIS 42067 at *39, *48-49 (S.D.N.Y. March 13, 2023).

Government. *See McDonald v. City of Chicago*, 561 U.S. 742, 754 (2010); *Barron ex Rel. Tiernan v. Mayor of Balt.*, 32 U.S. (7 Pet.) 243, 250-51 (1833). Thus, sources from the time of the Fourteenth Amendment's ratification are "equally if not more probative of" the scope of the Second Amendment's right to bear arms. *See* ECF 82 at 18; Doc. 10-4 at 19.[13]

Contrary to Plaintiffs' assertion of broad rights of armed confrontation, the Second Amendment right to bear arms is not a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The Second Amendment right to bear arms for purposes of self-defense is most acute in one's own home. *See Heller*, 554 U.S. at 628. And an individual's Second Amendment right to possess a firearm for self-defense is not limitless and is appropriately subject to government regulation. *See Bruen* at 2162 (Kavanaugh, J., concurring) ("[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations" (quoting *Heller*, 554 U.S. at 636)); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (noting that it is "important to keep in mind" that *Heller* did not cast doubt on certain "longstanding regulatory measures" in connection with firearms); *Heller*, 554 U.S. at 595 (2008) (the right to keep and bear arms is "not unlimited").

---

[13] Indeed, the Second Amendment was made applicable to the States via the Fourteenth Amendment only 13 years ago. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

As discussed below, under *Bruen*'s analysis, the County's Firearms Law is constitutional.

### a. The County Identified Multiple Historical Analogues for its Prohibition Against Firearms in a 100-Yard Buffer Zone Around Places of Public Assembly.

Precedent for a buffer zone[14] around various areas, activities, and populations can be found in many historical laws.

Maryland prohibited guns within one mile of polling places on election days in Calvert County (1886 and 1888) and in Kent, Queen Anne's, and Montgomery Counties (1874). *See* Exs. 4, 5, 6. Louisiana in 1870 similarly prohibited guns within "one-half mile of any place of registration" for elections. *See* Ex. 7.

To protect water fowl, Somerset County in 1837 banned guns in or within 50 yards of any water fowl blind on Smith Island. *See* Ex. 8.

Many localities (Philadelphia; St. Paul; Pittsburgh; Reading, Pennsylvania; Trenton, New Jersey) banned guns within 50 or 100 yards of their parks, squares, or common areas between 1868 and 1903. *See* Exs. 9, 10, 12, 12, 13, 14.

---

[14] As context for the County's "buffer zone," the State statute authorizing the County's Firearms Law provides that the County may regulate firearms "within 100 yards of or in a park, church, school, public building, and other place of public assembly" *See* Md. Code Ann., Crim. Law § 4-209(b) (2021).

New Mexico, in 1887 when it was still a Territory,[15] prohibited the unlawful brandishing of a weapon within a "settlement," defined to mean "any point within three hundred yards of any inhabited house." *See* Ex. 15.

Mississippi prohibited the concealed carry of weapons within two miles of a university, college, or school in 1892. *See* Ex. 16. And Connecticut in 1859 banned the sale of liquor "within one mile of any military parade-ground, muster-field, or encampment." *See* Ex. 17.

These historical laws *expressly* prohibit weapons in buffer zones around sensitive areas. If Maryland historically protected water fowl with a buffer zone, certainly human life in areas of public assembly can be protected by a buffer zone. The County's regulation of firearms within 100 yards of places of public assembly is consistent with historical firearm regulation and is constitutional.[16]

---

[15] *See* Andrew Willinger, *Territorial Gun Regulation and the "Lost" History of the Federal Second Amendment*, Duke Center for Firearms Law Blog (August 8, 2022) https://firearmslaw.duke.edu/2022/08/territorial-gun-regulation-and-the-lost-history-of-the-federal-second-amendment/ (arguing the Second Amendment has always applied in territories, and historical territorial laws should be given weight despite the *Bruen* court's discount of same).

[16] Three federal circuits found firearm bans in government buildings included the parking lots and property surrounding those buildings. *See U.S. v. Class*, 930 F.3d 460, 464 (D.C. Cir. 2019); *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1123 (10th Cir. 2015); *U.S. v. Dorosan*, 350 Fed. Appx. 874, 875-76 (5th Cir. 2009). While these decisions predated *Bruen*, all relied heavily upon the *Heller* court's discussion of "sensitive locations," which *Bruen* augmented. *See Class*, 930 F.3d at 464; *Bonidy* 790 F.3d at 1124-25; *Dorosan* at 350 Fed. Appx. at 875-76.

### b. The County Identified Many "Twin" or "Dead Ringer" Laws Prohibiting Guns in Places of Worship.

As noted above in Section III(B), Plaintiffs failed to identify the County's firearms prohibition in places of worship as grounds for an injunction pending appeal before the District Court.

Assuming this Court elects to reach this issue despite that procedural deficiency, there are many historical analogues to support the County's ban on guns in places of worship. Georgia in 1870 and 1882 prohibited the carrying of a "pistol or revolver, or any kind of deadly weapon, to any…place of public worship." *See* Exs. 18, 19. The 1882 law excepted law enforcement. *See* Ex. 19. In 1870 and 1879, Texas prohibited any person from going into "any church or religious assembly" with a gun.  *See* Exs. 20, 21. The Texas laws did not apply, however, to law enforcement. *See id.*

Missouri in 1875, 1879, and 1883 prohibited firearms in any church or place where people assembled for religious worship, except for law enforcement. *See* Exs. 22, 23, 24. Virginia prohibited pistols or other dangerous weapons in 1877  in "any place of worship while a meeting for religious purposes is being held at such a place, or without good or sufficient cause therefor." *See* Ex. 25.

Arizona, while still a territory in 1889, prohibited the carry of "a pistol or other firearm" in "any church or religious assembly." *See* Ex. 26 § 3. This prohibition did not apply to law enforcement. *See id. §* 4.

In 1890, Columbia, Missouri prohibited anyone other than police officers from carrying dangerous weapons "into any church, or place where people have assembled for religious worship." *See* Ex. 27.

When it was still a territory, Oklahoma, in 1890 and 1893, prohibited the carry of firearms by anyone other than a peace officer into "any church or religious assembly." *See* Ex. 28, 29.

In 1894, Huntsville, Missouri, prohibited the carry of a deadly or dangerous weapon in "any church or place where people have assembled for religious worship." This prohibition did not apply to police officers. *See* Ex. 30.

These historical precursors are exact matches of the County's prohibition of guns in places of worship. Like these laws, the County's law does not apply to law enforcement officers or security guards.

In addition to these historical statutory precursors, several courts in the 1870s viewed churches or places of worship as no place for firearms. *See Hill v. State*, 53 Ga 472, 475 (Ga. 1874) (carrying arms at places of worship improper and not protected by constitution); *English v. State*, 35 Tex. 473 478-79 (Tex. 1872) ( finding it "[l]ittle short of ridiculous" that anyone should claim right to carry weapon into a peaceful public assembly such as church); *Andrews v. State*, 50 Tenn. 165, 182 (Tenn. 1871) (observing it is not appropriate to carry arms to church and such

practice may be prohibited).[17]

Given the "twin" historical analogues above, as well as the historical views of courts on the impropriety of firearms in places of worship, the County's gun restriction in places of worship is constitutional.

### c. Contrary to Plaintiffs' Arguments, County Code Section 57-10 is Not a "Private Property" Ban.

As noted above in Section III(A), Section 57-10 is not mentioned at all in any complaint filed to date in this case, was not raised in the District Court, and therefore is not properly before this Court for consideration.

Even if the Court elects to reach it, there is simply no merit to the Plaintiffs' brand new legal challenge to Section 57-10. Plaintiffs skew that provision to ban the carry of guns on private property. Plaintiffs' arguments disregard completely the exceptions to the ban in places of public assembly, to include one's own home and business, and carrying an unloaded firearm locked away from its ammunition. *See* MCC 57-11(b). The focus of the County's law, by any read, is places where the public may assemble. There is no blanket private property ban in the County's law.

---

[17] While *Bruen* distinguished the *English* decision and some statutes relied upon by the County, it did so only in the context of assessing the "proper cause" requirement in in New York's public carry law, not in the context of a "sensitive places" analysis required in this appeal. *Bruen* at 2133-34 (observing defenders of New York's law "[e]rr in their attempt to characterize New York's proper-cause requirement as a 'sensitive-place law'").

**2.  The District Court Properly Found No Irreparable Harm to Plaintiffs.**

The County's removal of the ability of State wear-and-carry permit holders in places of public assembly via Bill 21-22E has been in effect since November 28, 2022, for nearly seven (7) months. (Doc. 10-10; *see id.* at Lines 85-86). Plaintiffs' assertions of exigency and irreparable injury ring hollow given this passage of time. There is no exigency or immediate harm to Plaintiffs under these circumstances.

**3.  The District Court Properly Held That The Balance of Equities and the Public Interest Weigh in Favor of the County.**

When a temporary restraining order is sought against the government, "the government's interest is the public's interest," and the third and fourth elements necessary for an injunction – the balance of the equities and the public interest – merge. *See Nken v. Holder*, 556  U.S. 418, 435 (2009).

Staying enforcement of Bills 4-21 and 21-22E will undermine the public's strong interest in preventing gun violence in areas where people, especially vulnerable populations, congregate. The County Council enacted the Bills in direct

response to (a) an increase in ghost guns in the community,[18] (b) an increase in gun violence in the country[19] and the County,[20] and (c) an increase the number of gun permit applications in Maryland following *Bruen*.[21] With these unquestioned facts, the Council enacted the laws it believed necessary for the safety and welfare of its residents. Enjoining the County's law will strip residents of these protections in this atmosphere of heightened gun violence.

---

[18] The number of guns, excluding ghost guns, confiscated by County Police increased 51% in 2021. *See* Montgomery County, Maryland Office of Legislative Oversight, Memorandum Report No. 2022-13, "Firearms: Availability, Data, and Legal Authority in Montgomery County, Maryland, available online at: https://www.montgomerycountymd.gov/OLO/Resources/Files/2022_reports/OLO Report2022-13.pdf, at 13. In January 2022, a high school student used a ghost gun to shoot another student in the high school restroom during the school day. *See* Darcy Spencer, *Maryland Teenager Sentenced to 18 Years for Shooting Student at Magruder High,* NBCwashington.com, December 22, 2022, https://www.nbcwashington.com/news/local/maryland-teenager-sentenced-to-18-years-for-shooting-student-at-magruder-high/3239939/.

[19] In 2020, 45,222 people died from gun-related injuries in the United States – the most in any year recorded. *See* Doc. 10-12 at 21. Gun deaths are now the leading cause of death for children, teens, and young adults in the country. *See Bruen* at 2165.

[20] As of July 2022, nonfatal shootings were up 75% in the County, and noncontact shootings increased 29% compared to the same period in 2021. *See* Dan Morse, *Gun violence rises sharply in Montgomery County, police chief says*, The Washington Post, July 11, 2022, https://www.washingtonpost.com/dc-md-va/2022/07/11/montgomery-county-gun-violence-double/.

[21] *See* Fredrick Kunkle, *Supreme Court ruling sets off rush for concealed gun permits in Maryland,* The Washington Post (July 25, 2022) https://www.washingtonpost.com/dc-md-va/2022/07/15/concealed-carry-maryland-guns-hogan/.

The balance of the equities and the public interest weigh in favor of the County, which enacted the challenged law in response to the rise of gun violence, and to protect the safety of the public when exercising their constitutional right to assemble.

## IV.   CONCLUSION

This Court need not reach two-thirds of Plaintiffs' arguments for the reasons noted above.

For the sole issue that is only arguably properly before this Court – the challenge to the County's 100 yard buffer zone around places of public assembly – Plaintiffs failed to meet the demanding standard for obtaining an injunction. Plaintiffs' Emergency Motion should be denied.

Respectfully submitted,

JOHN P. MARKOVS
COUNTY ATTORNEY

     /s/
Edward B. Lattner, Deputy County Attorney
edward.lattner@montgomerycountymd.gov
Bar No. 03871

     /s/
Erin J. Ashbarry
Associate County Attorney
erin.ashbarry@montgomerycountymd.gov
Bar No. 26298

_____/s/_____
Matthew H. Johnson
Associate County Attorney
matthew.johnson3@montgomerycountymd.gov
Bar No. 17678

Attorneys for Defendant Montgomery
County, Maryland
101 Monroe Street, Third Floor
Rockville, Maryland 20850-2540
(240) 777-6700
(240) 777-6705 Fax


**CERTIFICATE OF COMPLIANCE WITH RULE 32(g)**
Certificate of Compliance with Length Limitation,
Typeface Requirements, and Type Style Requirements

1.  This Response complies with the length limitation of Fed. R. App. P. 27(d)(2)(A) because this brief contains 5,177 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.  This Response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.


_____/s/_____
Erin J. Ashbarry
Attorney for Appellee
Dated: February 24, 2023

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 24, 2023, a copy of the foregoing was

filed to be transmitted via this Court's CM/ECF Electronic Document Filing

System to:

>Mark W. Pennak
>Maryland Shall Issue, Inc.
>9613 Harford Rd., Ste C #1015
>Baltimore, Maryland 21234-21502
>mpennak@marylandshallissue.org

/s/
_____
Erin J. Ashbarry
Counsel for Appellee
Montgomery County, Maryland

25