IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, | ) ) ) |
| *Plaintiffs*, | ) ) |
| | ) No. 23-1719 |
| v. | ) ) |
| MONTGOMERY COUNTY, MD, | ) ) ) |
| *Defendant*. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE**

Pursuant to Rule 27 of the Federal Rules of Appellate Procedure, plaintiffs respectfully submit this Memorandum in opposition to appellee's motion to strike, filed on July 24, 2023 by the appellee, Montgomery County, Maryland ("the County"). For the reasons set forth below, the County's motion to strike should be denied.

**ARGUMENT**

The County asks this Court to strike the supposedly "improper factual allegations and exhibits" in the Declaration of Daniel Carlin-Weber, and the Second Supplemental Declaration of Allan Barall (collectively, "the Declarations") that accompanied plaintiffs-appellants' Emergency Motion for a Rule 8 Injunction Pending Appeal. The County's motion is based on a fundamental misunderstanding

1

of the mechanics and law associated with a Rule 8 motion and a gross mischaracterization of these Declarations. The County's motion should be denied.

### A. Appellee Misstates the Standard Applicable to Rule 8 Motions

In its motion to strike, the County cites *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012), arguing that an abuse of discretion standard is somehow relevant to the motion at bar. (Co.Mot. at 3) *Aggarao* dealt with an appeal from a final order dismissing the case for improper venue, *not* a Rule 8 motion. *Id*. at 365. In contrast, a Rule 8 motion is addressed to *this* Court's equitable discretion. P. Motion at 9. As stated in *Priorities USA v. Nessel*, 978 F.3d 976, 982 (6th Cir. 2020), "[w]e consider the [Rule 8] motion de novo because 'we are not reviewing any district court decision or order.'" (Citation omitted). The Court may, of course, consider that the underlying appeal is from a denial of a preliminary injunction, *Does 1-3 v. Mills,* 39 F.4th 20, 24 (1st Cir. 2022), but that does not change the *de novo* standard or preclude new evidence on the motion. *Id*. Indeed, Rule 8(a)(2)(B) requires that "[t]he motion must also include (ii) originals or copies of affidavits or other sworn statements supporting facts subject to dispute; **and** (iii) relevant parts of the record." (Emphasis added). That text of Rule 8 makes clear that the "supporting" material for the motion is **not** limited to "relevant parts of the record."

The County relies heavily on *dmarcian, Inc. v. dmarcian Eur. BV*, 2021 WL 3561182 (W.D.N.C. 2021) for support of its contention that plaintiffs are attempting

2

to "backfill" the appellate record. But the district court there mistakenly thought Rule 8 evidence was barred in district court where a notice of appeal had been filed. Slip op. at *3. Indeed, the court's holding that it lacked jurisdiction once a notice of appeal was filed is at odds with the court's further holding that it would consider new evidence if "it was not available to the parties for presentation … at the time of the preliminary injunction hearing." Id. Unlike *dmarcian*, plaintiffs here are not before the district court on a motion to stay pending appeal. We are before this Court, which is "not reviewing any district court decision or order" when it considers a Rule 8 motion. *A. Philip Randolph Inst. v. Husted*, 907 F.3d 913, 917 (6th Cir. 2018).

Defendant's suggestion that an appellant is foreclosed from submitting any new evidence with a Rule 8 motion is not just inconsistent with the text of the rule, but also logically inconsistent with the posture and purpose of a Rule 8 motion. A Rule 8 motion for injunction pending appeal invokes this Court's equitable discretion and seeks emergency relief *while* the underlying district court order is on appeal. Such a motion does not ask this Court to review whether the underlying order from which the appeal taken is correct, it asks this Court to consider whether equitable relief is appropriate while the appeal is pending. As the case law discussed above makes clear, the two points are analytically distinct. That is why a Rule 8 motion filed with this Court is considered *de novo* and that is why the party moving for Rule 8 relief is not limited to the record below.

3

The County contends that plaintiffs could have submitted the Declarations with plaintiffs' emergency motion for a TRO and a preliminary injunction filed December 6, 2022. But the County's motion to strike, perhaps unintentionally, makes it clear why the material in the Declarations was unavailable at that time: it was hard to do, and time was short on an emergency motion. Co. Motion at 5 ("It is not surprising that Carlin-Weber required assistance from others to research and draft his 32-page report."). Plaintiffs simply did not have the resources or the time to investigate the techniques publicly available to produce such a declaration at the time the motion for emergency relief was filed. MSI is an "all-volunteer," non-profit organization. Its leadership has "day jobs" as do the individual plaintiffs. That plaintiffs have been able to marshal the necessary resources subsequently is no reason to exclude the results on a Rule 8 motion where such materials are expressly contemplated by the Rule and permitted by the case law.

The provision of new materials and refined argument under circumstances that necessitate a Rule 8 motion is an unavoidable practical reality obviously contemplated by the Rule itself. For example, in *Mock v. Garland*, 2023 WL 2711630 (N.D. Texas March 31, 2023), the district court, like the district court in this case, misapplied *Bruen* and denied a motion for a preliminary injunction. On appeal, the plaintiffs in *Mock* moved for—and were granted—an emergency injunction pending appeal. *Mock v. Garland*, No. 23-10319, Dkt #52-2 (5th Cir. May

4

23, 2023). The Rule 8 motion in *Mock* was supported by arguments and assertions that relied on specific facts that were "subject to dispute" within the meaning of Rule 8. *See id.*, Dkt # 25-1.

In this case, the Carlin-Weber Declaration is hardly even "subject to dispute" as it reflects an indisputable reality that Bill 21-22E creates thousands of 100-yard exclusionary zones and that those zones effectively prevent a permit holder from carrying in and through the County. Indeed, the County has never seriously disputed that point and does not dispute it in its motion to strike. As noted in plaintiffs' motion (P.Motion at 10), the County itself states that Bill 21-22E creates 100-yard exclusionary zones as to over a *thousand* childcare facilities in the County and that is just *one* type of location covered by Bill 21-22E. The amount of acreage covered by the ban on carry within 100 yards of a childcare facility pales in comparison to the acreage covered by the County's bans on carry within 100 yards of all public park lands, not to mention all the rest of the places included as "places of public assembly" defined by Section 57-1 of the Chapter 57 of the County Code. All the Carlin-Weber Declaration really does is create graphic images of that reality to illustrate the point.

## B. The Carlin-Weber Declaration

The County takes great issue with the Carlin-Weber Declaration, to wit, the County decries it as "the most egregious example of Plaintiffs' attempt to offer

5

supplemental evidence." (Co.Mot. at 5). As plaintiffs have demonstrated, new evidence—specifically declarations—is contemplated by Rule 8. While the County expresses umbrage at the length of the Declaration, it points to no rule that the Declaration violates.

Most curiously, the County speaks from both sides of its mouth when it complains about the purported expert nature of the Carlin-Weber Declaration. In one sentence, it argues that "[t]he Methodology Section of [the] Declaration is five pages long", and then, in another sentence, the County asserts that the Declaration contains "conclusory and unvetted scientific and legal opinions." (Co.Mot. at 5-6). Yet, the methodology was purposefully laid out in the Declaration in such detail so that *any reasonably capable person* with a modicum of computer experience could duplicate those steps and come to the same result: a map showing the areas where the County criminalizes carry.

The Declaration creates maps generated **solely** from identified publicly available data used by the State and the public alike every day, something the County can easily verify if it wanted to. The County does not assert that it is unable to take these steps or that the required minimal ability is somehow beyond the grasp of a unit of local government that has a **6.3-billion**-dollar budget for fiscal 2023. See https://moco360.media/2022/05/26/county-council-approves-6-3-billion-operating-

6

budget/. The Declaration gives the County a detailed methodological road map, but the County has not even tried to follow it.

The County asserts that Mr. Carlin-Weber must be viewed as an expert, but any reasonably computer-literate layperson can perform the tasks set forth in the Declaration if they take the time. Doing so does not take "scientific, technical or other specialized knowledge" of the type covered by Rule 702(a), Federal Rules of Evidence. The Declaration sets forth facts, not opinions (expert or otherwise). The County cannot be taken seriously when it professes not to understand what the term "queries" means. Co.Mot. at 5. But to be clear, a "query" is a simple request for information from a database, as any dictionary would inform the County and as the term is obviously used in context by the Declaration. A person need not be an expert to perform a query. Every user of PACER, Westlaw or LEXIS poses a "query" when that user performs a search on a legal database.

But even assuming *arguendo* that Mr. Carlin-Weber is an "expert" of sorts (he is undoubtedly computer-literate), the County does not fault any aspect of the methodology employed in the Declaration. Under *Daubert*, a court acts as a gatekeeper but in performing that role, "the focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993). Thus, "[t]o determine whether an opinion of an expert witness satisfies *Daubert* scrutiny, courts may not

7

evaluate the expert witness' conclusion itself, but only the opinion's underlying methodology." *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 195 (4th Cir. 2017). The County understandably does not like Mr. Carlin-Weber's conclusions, but it has not challenged his methodology and thus has forfeited any such challenge.

Indeed, the County does not seriously question the results and conclusion reached in the Declaration, complaining only that the maps do not consider that possession and carry is allowed by the County's law in the home and, much more limitedly, in businesses under the exceptions for these locations set forth in Section 57-11(b). Co.Mot. at 7. That objection misses the point because even if one takes those sites into account, it will not affect the scope or reach of the thousands of 100-yard exclusionary zones created by Bill 21-22E. It would, at most, merely create small holes in the 100-yard circles of prohibited zones. As plaintiffs explain in the motion, the homes of several of the plaintiffs fall within one or more of these exclusionary zones and thus these plaintiffs are effectively barred from using their permits to step outside their homes while armed. P.Motion at 11-12. The County does not dispute that such carry outside the home by these plaintiffs would otherwise be perfectly permissible under State law.

The Declaration, its maps, and references, are exemplary and do not contain an iota of legal argument. The County cannot defend a strict liability law that provides it with the means to criminally charge permit holders for straying into a

8

100-yard exclusionary zone and, at the same time, object to maps that detail the all-encompassing and legally absurd scope of such zones. The only "legal conclusion" the County points to is Mr. Carin-Weber's observation of how much of the County's surface area is covered by the areas proscribed by Bill 21-22E. That conclusion is not legal, it is mathematical. The County is presumably perfectly capable of doing the math if it so chooses. The Carlin-Weber Declaration merely identifies the locations of the myriad buildings, grounds, and exclusionary zones in which carry is banned by the law here at issue.

The County further ignores the context of the Carlin-Weber Declaration, which is a Second Amendment complaint that focuses on the "the general right to publicly carry arms for self-defense" as recognized in *NYSRPA v. Bruen*, 142 S.Ct. 2111, 2134 (2022). The County's argument that an individual can "transport the weapon in a locked case, separate from its ammunition" (Co.Mot. at 7), is nothing but a concession that it is effectively *impossible*, under the County's law, for a permit holder to legally travel through or in the County and carry a loaded firearm for armed self-defense. That reality extinguishes the constitutional right recognized in *Bruen*. Full stop. That result is no accident. See P.Motion at 4. The County does not dispute that Bill 21-22E was passed for the express and singular purpose of restricting the "general right" sustained in *Bruen*.

The threat of criminal liability under Chapter 57 is akin to the proverbial "Sword of Damocles" in that it hangs over the heads of plaintiffs and MSI members who live throughout the State, creating a continuing *in terrorem* effect. See *United States v. Bilodeau*, 24 F.4th 705, 713-14 (1st Cir. 2022) (likening the possibility of prosecution to the Sword of Damocles and rejecting the government's reliance on prosecutorial discretion). No permit holder in the State is safe from Chapter 57 unless they forgo their constitutional right of armed self-defense or stay completely outside of the County. The latter option is not available to the named individual plaintiffs who reside or work in the County. Permit holders residing elsewhere in the State (including many MSI members) may not constitutionally be banned from exercising their Second Amendment rights in the County.

### C. The Allan Barall Declaration

The County's motion to strike the Second Supplemental Declaration of Allan D. Barall is likewise dependent on *dmarcain*'s mistaken analysis. As articulated *supra*, there is no "back-filling" attendant to new evidence on a Rule 8 motion. Particularly baseless is the County's suggestion that "Mr. Barrall's use[d] Google Maps to render legal conclusions about the County Firearms Law." *Id*. Using a Google Maps tool to measure a 100-yard boundary around a synagogue is easily done by any layperson who need only navigate to Google Maps in any web browser and "right-click" on any location on the screen to access the measurement tool. The

actual measurement is not a legal conclusion. The County does not dispute that the synagogues identified by Mr. Barall are "places of worship" subject to the County's bans and that they exist at those locations. The County does not assert that Mr. Barall somehow has misused the Google Maps measurement tool or measured the distance mistakenly.

### D. Defendant's Jurisdictional Arguments Are Without Merit

Defendant, again relying on *dmarcian*'s erroneous jurisdictional holding, argues that jurisdiction "generally passes to the appellate court after an appeal has been taken, and *arguments* that were not advanced or properly preserved in the district court are typically considered to have been waived on appeal." Co.Mot. at 4 (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003) (emphasis added). That rule might have some purchase if the plaintiffs' Rule 8 motion actually sought review of a district court order but as explained above, it does not. *A. Philip Randolph Inst.*, 907 F.3d at 917. Moreover, and in any event, plaintiffs' Rule 8 motion does not advance a single new argument. Nor has the County identified any such argument. Plaintiffs have consistently alleged and argued that the County's law effectively has banned carry because of the scope of the 100-yard exclusionary zones it creates, a point the County does not dispute. See Reply in Support of Plaintiffs Motion, filed herewith.

Finally, the County oddly argues that "[n]one of Plaintiffs' 'new' factual allegations contain any 'new' information" (Co.Mot. at 3), but as the County's fury and embarrassment demonstrates, that is obviously wrong. The Carlin-Weber Declaration presents new "information" in the form of graphics and written factual descriptions of geographic features of the County that make clear the extreme effect the County's law has on the right to carry recognized in *Bruen*. The Barall Declaration adds new information on how the County's law affects this individual MSI member. It is all relevant and material to the Rule 8 motion. No more is required.

## CONCLUSION

For the aforementioned reasons, the County's motion to strike should be denied in its entirety.

/s/ Mark W. Pennak

_____
MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd, Ste, C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
Bar No. 21033

/s/ Matthew Larosiere

_____

Matthew Larosiere*
The Law Office of Matthew Larosiere
6964 Houlton Cir

12

                                                                                               Lake Worth, FL 33467
                                                                                          larosieremm@gmail.com
                                                                                          Phone: (561) 452-7575
                                                                                          *Counsel for Plaintiffs*

Dated: July 26, 2023

*Application for admission to this circuit forthcoming.

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 27(d) and Rule 32(g)(1) of the Federal Rules of Appellate Procedure, the undersigned counsel here certifies that the forgoing Memorandum in Opposition to Defendant's Motion to Strike contains 2,728 words, not counting those items which may be excluded under Rule 32(f), and uses a 14 point, Times New Roman proportional font.

*/s/ Mark W. Pennak*

Mark W. Pennak,
*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on July 26, 2023, the forgoing "Memorandum in Opposition to Defendant's Motion to Strike" were served on opposing counsel listed below via ECF service:

Edward B. Lattner
101 Monroe St.
Rockville, MD    20850

Erin Jeanne Asbarry
101 Monroe St.
Rockville, MD 20850

Matthew Hoyt Johnson
101 Monroe St.
Rockville, MD 20850

*s/ Mark W. Pennak*
_____
MARK W. PENNAK
*Counsel for Plaintiffs-Appellants*

Dated: July 26, 2023