IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, | ) ) ) |
| *Plaintiffs*, | ) ) ) No. 23-1719 |
| v. | ) ) ) |
| MONTGOMERY COUNTY, MD, | ) ) |
| *Defendant*. | |

*Corrected* **REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A RULE 8 INJUNCTION PENDING APPEAL**

Pursuant to Rule 8(a)(1)(C) and Rule 27 of the Federal Rules of Appellate Procedure, plaintiffs respectfully submit this Reply in support of Plaintiffs' Emergency Motion for a Rule 8 Injunction Pending Appeal, filed July 17, 2023, and in response to the Opposition filed on July 24, 2023, by the appellee, Montgomery County, Maryland ("the County"). For the reasons set forth below and in the original motion, plaintiffs' request for emergency relief should be granted.

**ARGUMENT**

**I.  RULE 8 ALLOWS THE SUBMISSION OF EVIDENCE**

The County asserts (Co.Mem. at 3) that plaintiffs improperly submitted the declarations of Daniel Carlin-Weber and Allan Barall because these declarations were not filed in district court. But as explained in plaintiffs' motion (but ignored by

1

the County), a Rule 8 motion is addressed to *this* Court's equitable discretion. P.Motion at 9. As stated in *Priorities USA v. Nessel*, 978 F.3d 976, 982 (6th Cir. 2020), "[w]e consider the [Rule 8] motion de novo because 'we are not reviewing any district court decision or order.'" (Citation omitted). The Court may, of course, consider that the underlying appeal is from a denial of a preliminary injunction, *Does 1-3 v. Mills,* 39 F.4th 20, 24 (1st Cir. 2022), but that does not change the *de novo* standard or preclude new evidence on the motion. *Id*. Indeed, Rule 8(a)(2)(B) requires that "[t]he motion must also include (ii) originals or copies of affidavits or other sworn statements supporting facts subject to dispute; **and** (iii) relevant parts of the record." (Emphasis added). The "supporting" material for the motion is thus **not** limited to "relevant parts of the record."[1]

The County cites *dmarcian, Inc. v. dmarcian Europe BV*, 2021 WL 3561182 (W.D.N.C. 2021), as support for its contention that plaintiffs are "backfilling" the appellate record. But the district court there mistakenly thought Rule 8 evidence was barred in district court where a notice of appeal had been filed. Slip op. at *3. The court's holding that it lacked jurisdiction once a notice of appeal was filed is at odds with the court's further holding that it would consider new evidence if "it was not

---

[1] These points are also fatal to the County's motion to strike the supplemental declarations of Daniel Carlin-Weber and Allan Barall, as more fully set out in plaintiffs' response to that motion, filed contemporaneously herewith. That response is incorporated by reference.

2

available to the parties for presentation … at the time of the preliminary injunction hearing." *Id*. Here, as more fully set forth in plaintiffs' opposition to the County's motion to strike, plaintiffs did not have the time or resources to produce the Carlin-Weber declaration at the time of the February 9, 2023, hearing in this case. But whether MSI had the resources or not is irrelevant because parties are entitled to submit evidence with a Rule 8 motion, as explained above.

## II.   SECTION 57-10 IS PART OF THIS CASE

Next the County erroneously argues that the motion is overbroad because it seeks relief as to Section 57-10 of the County Code, incorrectly contending that such relief "is beyond the scope" of "all three iterations of the lawsuit." Co.Mem. at 6. Count VII of the Second Amended Complaint (the only complaint now at issue) specifically alleges that "[t]he County may not enact or enforce firearms or ammunition regulations for any location or place beyond the five, specific locations that were specified as presumptively appropriate in *Bruen* [*NYSRPA v. Bruen*, 142 S.Ct. 2111, 2134 (2022)] and *Heller* [*District of Columbia v. Heller,* 554 U.S. 570 (2008)], without identifying and proving that 'a well-established and representative historical analogue' for any such regulation exists." SAC ¶ 149. That allegation necessarily includes the areas regulated by Section 57-10.

The Second Amended Complaint also alleges that "**Chapter 57** is facially unconstitutional under the Second Amendment to the extent that it purports to

3

impose any regulatory restrictions on the possession, transfer, sale or transport of firearms and ammunition in or at any place other than in the five specific locations specified in *Bruen* and *Heller*." SAC ¶ 152 (emphasis added). Section 57-10 is, of course, part of "Chapter 57."

In the Prayer for Relief of the Second Amended Complaint, plaintiffs seek declaratory and injunctive relief holding that "**Chapter 57**, as amended by Bill 4-21and Bill 21-22E," is "unconstitutional under the Second Amendment, as more fully set forth in Counts VII and VIII." (Emphasis added). As explained in the Motion (at 6 n.1), the bans imposed by Section 57-10 are brought into play by Bill 21-22E, because Bill 21-22E eliminated the express exemption for carry permit holders found in Section 57-11(b). That elimination destroyed the ability of permit holders to be on a "lawful mission" under Section 57-10. The County does not dispute that point. The County's objection concerning Section 57-10 is thus pointless.

The County also errs in asserting (Co.Mem. at 8), that the motion is defective because plaintiffs focused on the 100-yard exclusionary zones imposed by Section 57-11(a) in seeking permission from the district court to file a Rule 8 motion under the court's case management order and did not mention Section 57-10 or places of worship. But such a letter is limited to three pages and need only "contain sufficient information" to demonstrate that it is premised on colorable, good-faith arguments

4

and is not frivolous or brought for any improper purpose, Fed. R. Civ. P. 11, *but need not contain more.*" Order at II.A.2 (emphasis added). The County misleadingly quotes the order by using ellipses to omit the part emphasized above. (Co.Mem. at 8). A party is not estopped from advancing additional arguments by the minimal requirements imposed by the order.

In any event, the district court *never allowed plaintiffs to file the motion* and thus "failed to afford the relief requested" within the meaning of Rule 8(a)(2)(A)(ii). The district court has also still not acted on a letter filed by the County seeking leave to file a motion for summary judgment. Dkt. #81, filed July 3, 2023. Speculating as to what the district court would have done on a motion that the court did not permit is pointless. Nothing in Rule 8 requires the district court to rule on a Rule 8 motion. And even if the district court had issued a ruling, a Rule 8 motion to *this* Court would still lie and would still be considered *de novo*.

The County argues that the district court's order denying the preliminary injunction never mentions Section 57-10 and thus there are no findings to review. But the district court's failures are hardly dispositive. In district court plaintiffs argued "[t]he **bans imposed by Chapter 57** are not supported by any showing that they are "consistent with this Nation's historical tradition of firearm regulation." Supporting Mem. at 13 Dkt. #53 (emphasis added). Plaintiffs likewise argued that "the County may not enact firearms or ammunition bans for any place beyond these

5

five, specific locations [mentioned in *Bruen*] without identifying and proving that "a well-established and representative historical analogue" for any such regulation exists." *Id*. at 19. These arguments encompass every part of "Chapter 57," including Section 57-10. Indeed, the district court likewise ignored plaintiffs' Response to the Everytown Amicus Br. 5-13 (Dkt. #70) (noting "the cumulative effect" of the County's bans and making clear that the Founding Era controlled the historical inquiry). That the district court ignored plaintiffs' arguments just confirms that the court erred; it does not insulate the court's order from review.

Finally, plaintiffs' motion for a preliminary injunction sought an order that enjoined the County "from enforcing Section 57-11(a) of Chapter 57 of the Montgomery County Code, as amended by County Bill 21-22E against persons who have been issued a wear and carry permit by the Maryland State Police pursuant to MD Code, Public Safety, § 5-306." Motion at 1 (Dkt. # 52). As explained above, that relief would have likewise encompassed relief under Section 57-10 as permit holders could then make use of the "lawful mission" exception found in Section 57-10. There has been no waiver or forfeit.

### III.  CHAPTER 57 "EFFECTIVELY" BANS CARRY COUNTY-WIDE

The County next contends that plaintiffs "overstate grossly the reach of the County's Firearms Law," arguing that the County's law allows possession in the home, limited possession in a business, by security guards and retired law

6

enforcement officers and transport in a vehicle if it is unloaded and locked in case separate from the ammunition. Co.Mem. at 11. That argument just proves plaintiffs' point. Prior to the enactment of Bill 21-22E carry permit holders were allowed by County law and State law to wear, carry and transport *fully loaded* firearms *wherever* they could otherwise go armed in public under State law. Bill 21-22E bans such carry by repealing the prior exception for permit holders.

The County's bans effectively ban carry everywhere in the County because no permit holder can drive (or even walk in downtown areas) very far carrying a loaded firearm for self-defense without rapidly coming within one the County's myriad 100-yard exclusionary zones, a reality that the County does not dispute. *Bruen* holds that that the Second Amendment protects "the general right to publicly carry arms for self-defense," 142 S.Ct. at 2134. The right extends to ordinary citizens with a carry permit (not just security guards and retired officers) to carry in "public" (not just in homes and by owners at businesses) and obviously embodies more than the carry of an unloaded firearm locked in a case separated from the ammunition, a form of transport that renders the firearm useless for self-defense. Likewise, the "general right" to carry in public cannot be limited to possession at isolated locations from which movement while carrying is banned by thousands of interlocking exclusionary zones affecting every major thoroughfare and many side roads in the

7

County. See Declaration of Daniel Carlin-Weber. The County's suggestion that its narrow exceptions are consistent with *Bruen* is ridiculous.

When it finally gets around to the merits, the County fails to engage with the reality that the County's 100-yard exclusionary zones effectively ban carry in the County. The County offers no response, much less a rebuttal, to plaintiffs' point (P.Motion at 12) that the County may not "effectively" ban carry County-wide any more than New York was permitted "to effectively declare the island of Manhattan a 'sensitive place.'" *Bruen*, 142 S.Ct. at 2134. Instead, the County, like the district court, focuses on specific locations banned by Section 57-11(a) and ignores the practical effect of the County's exclusionary zones.

Plaintiffs' motion to this Court seeks relief only insofar as the County bans the possession and transport of firearms within the County's 100-yard exclusionary zones, the bans imposed by Section 57-10, and in houses of worship. The County has no response to plaintiffs' point that the Third Circuit has refused to stay a district court order that enjoined enforcement of New Jersey's presumptive ban on carry by permit holders on private property, N.J.S.A. § 2C:58-4.6(a)(24), an unconstitutional restriction *less* draconian than the County's law. P.Motion at 14. Carry by permit holders *within* all the other specific locations will be addressed in the appeal from the district court's denial of preliminary relief. This Court's motions panel need not address the County's arguments concerning these other locations.

8

As to places of worship, the County relies on a few Reconstruction Era statutes primarily from the same jurisdictions whose laws were specifically rejected in *Bruen*.[2] The County concedes that point in a footnote (Co.Mem. at 20 n.17) but boldly argues that *Bruen's* rejection of these laws does not apply to bans on carry in "sensitive places" which, according to the County, includes places where "people…congregate." Co.Mem. at 21. Such a broad definition of "sensitive places" as including "places of public congregation" was *expressly* rejected in *Bruen*, because it would impermissibly ban the exercise of the right in "cities," which is what the County's law does. 142 S.Ct. at 2134. And *Bruen* rejected the statutes on which the County relies because they were outliers *on the right to carry* and thus did not establish a national "consensus" over the scope of the right. 142 S.Ct. at 2146. The County likewise inappropriately relies on local ordinances from *two* municipalities, Columbia and Huntsville, Missouri. Co.Mem. at 19. The 1900 Census estimated that there were 10,602 incorporated cities, towns, villages, and

---

[2] Specifically, *Bruen* rejected New York's reliance on three colonial statutes (1686 East New Jersey, 1692 Massachusetts, 1699 New Hampshire), 142 S.Ct. at 2142–44, three late-18th-century and early-19th-century state laws that "parallel[] the colonial statutes" (1786 Virginia, 1795 Massachusetts, 1801 Tennessee), id. at 2144–45, three additional 19th-century state laws (1821 Tennessee, 1871 Texas, 1887 West Virginia), id. at 2147, 2153, five late-19th-century regulations from the Western Territories (1869 New Mexico, 1875 Wyoming, 1889 Idaho, 1889 Arizona, 1890 Oklahoma), id. at 2154–55, and one 19th-century Western State law (1881 Kansas), id. at 2155–56.

9

boroughs in the United States. See Census Bulletin No. 65, U.S. Census Bureau (June 8, 1901), https://bit.ly/3GkuFnm.

A "historical tradition," 142 S.Ct. at 2149, 2154, or "an enduring American tradition," id. at 2155, cannot be based on the regulations of two municipalities and a few outliers from the Reconstruction Era, the late 19th century and early 20th century. In no case did these statutes effectively ban carry throughout any area as large or as encompassing as the 506 square miles occupied by Montgomery County, Maryland. The County also does not address *Hirschfeld v. ATF*, 5 F.4th 407, 419 (4th Cir. 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021), which held that 1791 is the "critical year" for these determinations. P.Motion at 13. The County offers no response to plaintiffs' point (*id.* at 15) that the Second Circuit specifically declined to stay lower court orders enjoining New York's ban on carry in houses of worship if the person was tasked with providing security, like plaintiffs' declarants here.

## IV.  THE EQUITIES FAVOR PLAINTIFFS

Nothing in the County's discussion of equitable considerations addresses the points made by plaintiffs. For example, the County ignores that the General Assembly's assessment of the "public interest" as expressed in Senate Bill 1 is far different than that of the County's. P.Motion at 21. The County asserts that the "passage of time" (Co.Mem. at 21) means that plaintiffs are not harmed, but that "passage of time" occurred only because the district court took months to rule on an

10

"emergency" TRO and Preliminary Injunction motion filed December 6, 2022, on a complaint filed November 30, 2022, on a law enacted November 28, 2022. The district court refused to consider a TRO in this case (Feb. 6, 2023, Hearing Transcript at 13) ("The Court: We're not doing a TRO; we're just doing a preliminary injunction here. I'm not going to do this twice."). That delay is not a reason to allow the irreparable harm to *continue* unabated for *more* months while the case is pending in this Court.

The County says it has a strong interest in "preventing gun violence" (*id*.) but does not dispute that thoroughly vetted permit holders are not the cause for the recent rise in violent crime in the County. If anything, the rise in violent crimes, like armed carjacking, makes it more imperative that trained and vetted permit holders have the ability to defend themselves and their families. See https://www.fox5dc.com/news/carjackings-driving-crime-increase-in-montgomery-county. *Bruen* abolished interest balancing and thus the County's mechanistic and rote invocation of "public safety" no longer suffices.

## CONCLUSION

The motion for an injunction pending appeal should be granted.

/s/ Mark W. Pennak

_____
MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd, Ste, C #1015

11

>Baltimore, MD 21234-21502
>mpennak@marylandshallissue.org
>Phone: (301) 873-3671
>Bar No. 21033
>*Counsel for Plaintiffs*

Dated: July 26, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 27(d) and Rule 32(g)(1) of the Federal Rules of Appellate Procedure, the undersigned counsel here certifies that the forgoing Reply In Support Of Plaintiffs' Emergency Motion For A Rule 8 Injunction Pending Appeal" contains 2595 words, not counting those items which may be excluded under Rule 32(f), and uses a 14 point, Times New Roman proportional font.

*/s/ Mark W. Pennak*

Mark W. Pennak,
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on July 26, 2023, the forgoing "Reply In Support Of Plaintiff's Emergency Motion For A Rule 8 Injunction Pending Appeal" was served on opposing counsel listed below via ECF service:

Edward B. Lattner
101 Monroe St.
Rockville, MD    20850

Erin Jeanne Asbarry
101 Monroe St.
Rockville, MD 20850

Matthew Hoyt Johnson
101 Monroe St.
Rockville, MD 20850

*s/ Mark W. Pennak*
_____
MARK W. PENNAK
*Counsel for Plaintiffs-Appellants*

Dated: July 26, 2023