## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARYLAND SHALL ISSUE, INC., *et al.*,   *

                                    *

    Plaintiffs-Appellants        *

                                      *    No. 23-1719

v.                                *

                                      *

MONTGOMERY COUNTY, MARYLAND*

                                      *

    Defendant-Appellee         *

## DEFENDANT-APPELLEE'S RESPONSE TO PLAINTIFFS-APPELLANTS' RENEWAL MOTION FOR AN INJUNCTION PENDING APPEAL

      Defendant Montgomery County, Maryland ("the County"), by and through its undersigned counsel, requests that this Court deny Plaintiffs' renewal of its Emergency Motion for a Rule 8 Injunction Pending Appeal ("Emergency Motion")[1] because: (1) its scope is beyond the scope of the allegations in the Second Amended Complaint and the relief requested from the District Court; (2) it presents argument beyond what Plaintiffs described, and the District Court subsequently permitted, in their Notice of Intent to File a Motion ("Notice of Intent"); (3) it improperly seeks to introduce new factual allegations and expert opinions; and (4) Plaintiffs have not meet the high burden of demonstrating they are entitled to injunctive relief pending appeal.

---

[1] "ECF" refers to docket entries in the underlying district court litigation and "Doc." refers to docket entries in this interlocutory appeal.

## INTRODUCTION

Count VII of the Second Amended Complaint alleges that Chapter 57 of the Montgomery Cnty. Code (MCC), as amended by County Bills 4-12 and 21-22E (the "County Firearms Law"), violates Plaintiffs' Second Amendment rights.

On July 6, 2023, the District Court denied the Plaintiffs' Emergency Motion for Temporary Restraining Order/Preliminary Injunction ("Denied Motion") on Count VII. (ECF 82, 83). The Denied Motion sought to enjoin the County from enforcing MCC § 57-11(a) (generally prohibiting the possession of a firearm in and within a 100-yard buffer zone around of a defined place of public assembly, with various exceptions) (hereafter the "100-yard buffer zone") against persons who have a wear and carry gun permit by the Maryland State Police. (ECF 54).

On July 7, 2023, Plaintiffs noted this interlocutory appeal from the District Court's Order. On July 8, 2023, pursuant to the District Court's Case Management Order ("CMO") (ECF 11), Plaintiffs filed of Notice of Intent to file a motion for injunction pending appeal under Fed. R. App. P. 8 to challenge "**only**" (emphasis in original) the County's firearms restriction in 100-yard buffer zones under § 57-11(a). (ECF 87).

On July 17, 2023, before any response from the District Court, Plaintiffs filed an Emergency Motion with this Court on July 17, 2023. (Doc. 10-1) That Emergency Motion sought an injunction pending appeal with respect to State permit holders not

2

only as to the 100-yard buffer zone, but also as to County restrictions on: (1) keeping guns on persons or in vehicles under MCC § 57-10; and (2) possession of firearms in houses of worship. (Doc. 10-1 at 8). The latter two requests for relief were beyond the scope of relief sought in the Notice of Intent.

On August 3, 2023, this Court denied Plaintiff's Emergency Motion "without prejudice to consideration of a future, timely motion." (Doc. 21). On August 25, 2023, this Court issued a clarification and "defer[red] consideration of the [Emergency Motion] in order to permit Appellants to seek clarification from the district court regarding the status of the proceedings." (Doc. 31).

The following day, Plaintiffs filed a Motion for Clarification regarding the status of the proceedings in the District Court. (ECF 91). On August 29, 2023, the District Court by Order granted the Plaintiffs' request to file an emergency motion for injunction pending appeal, and specified any request for relief must be limited to the motion described in their Notice of Intent. (ECF 92)

On August 30, 2023, Plaintiffs filed an Emergency Motion for Injunction Pending Appeal in the District Court (ECF 93), which the County opposed. (ECF 95). Plaintiffs again sought injunctive relief as to houses of worship, which was beyond the scope of their Notice of Intent.

On September 12, 2023, the District Court issued an order (the "District Court Order") denying the Emergency Motion for Injunction Pending Appeal because

"Plaintiffs had not established a likelihood of success on the merits of the claims at issue, **including the claim relating to buffer zones that form the basis of the proposed injunction pending appeal**." (ECF 97 at 2, emphasis added). The District Court Order highlighted the United States Supreme Court's decision "distinguishing the standards applicable to requests for stays pending appeal and for injunctions pending appeal" with the latter "demand[ing] a significantly higher justification than a request for a stay, because unlike a stay, an injunction does not simply suspend judicial alternation of the status quo but grants judicial intervention that has been withheld by lower courts." *Id*. at 1-2 citing *Maine PAC v. McKee*, 562 U.S. 996, 996 (2010) (internal citations and quotations omitted). The District Court found that Plaintiffs did not meet the burden for granting either a stay or injunction pending appeal. *Id*. at 2.

On September 12, 2023, Plaintiffs filed their second Emergency Motion with this Court for an Injunction Pending Appeal, renewing the first Emergency Motion they filed in this Court on July 17, 2023.

## SUMMARY OF ARGUMENT

This Court should deny Plaintiffs' Emergency Motion on both procedural and substantive grounds. The Emergency Motion should be denied on procedural grounds for the following reasons:

- The injunction sought in the Emergency Motion is broader than the relief

4

sought by Plaintiffs in the Second Amended Complaint and the Denied Motion and thus beyond the scope of both the District Court's Memorandum Opinion denying the Denied Motion (ECF 82) and the District Court's Order (ECF 97).

- The Emergency Motion does not comply with the CMO (ECF 11) or the District Court's August 29 Order. (ECF 93). Plaintiffs continue to challenge areas beyond the 100-yard buffer zone (places of worship and guns in vehicles), which they told the District Court would be their sole area for relief in an injunction pending appeal.

- The Emergency Motion improperly attempts to include new factual allegations, an expert report, supplemental declarations, and maps that should be stricken. (ECF 93 at 15-18); ECF 93-1; ECF 93-2).

The Emergency Motion should be denied on substantive grounds because Plaintiffs have not met the heavy burden of showing they are entitled to the extraordinary remedy of an injunction pending appeal.

## STANDARD OF REVIEW

As stated in the District Court Order, a request for an injunction pending appeal under Fed. R. App. P. 8 "[d]emands a significantly higher justification" than a request for a stay, because unlike a stay, an injunction "does not simply suspend judicial alteration of the status quo but grants judicial intervention…" (ECF 97 at 2, *citing Respect Maine PAC* 562 at 996).

The "**demanding**" four-part test for evaluating a Rule 8 request for injunction articulated by the U.S. Supreme Court is: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 433-434 (2009) (citation omitted); *Grimmett v. Freeman*, No. 22-1844, 2022 U.S. App. LEXIS 24124, at *1 (4th Cir. Aug. 23, 2022) (*per curiam*) (emphasis added). The first two factors of this standard are the most critical, and it is not enough to show some "possibility of irreparable injury" or that the chance of success on the merits be "better than negligible." *Nken*, 556 U.S. at 434-35 (citations omitted); *Protect Our Parks, Inc. v. Buttigieg*, 10 F.4th 758, 763 (7th Cir. 2021) ("the mere possibility of success is not enough; [a plaintiff] must make a "strong" showing on the merits.")

Preliminary injunctions are "extraordinary remed[ies] involving the exercise of very far-reaching power," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Direx Isr., Ltd. v. Breakthrough Med Corp.,* 952 F.2d 802, 811 (4th Cir. 1992).

This Court should deny the Emergency Motion because it does not meet the "demanding" four-part test for an injunction pending appeal.

## ARGUMENT

### I.  The Emergency Motion Exceeds the Scope of Relief sought in Plaintiffs' Pleadings and Motions.

The Emergency Motion seeks to enjoin the County's restriction on keeping guns on persons or in vehicles under MCC § 57-10. (Doc. 10-1 at 8). Plaintiffs are not entitled to injunctive relief on MCC § 57-10 because it is beyond the scope of the Second Amended Complaint, the Denied Motion, and the District Court CMO.

First, none of the three complaints filed by Plaintiffs since April 2021 even reference Section 57-10. **Ex. 1** (original Complaint filed in state court without attachments); **Ex. 2** (First Amended Complaint without attachments); and **Ex. 3** (Second Amended Complaint without attachments) (ECF 49).

Second, the Denied Motion did not seek to enjoin County enforcement of Section 57-10. Plaintiffs' Denied Motion sought to enjoin the County "from enforcing Section 57-11(a) of [the County Firearms Law] against persons who have been issued a wear and carry permit…" (ECF 54 at 1); (ECF 54-8, 54-9) (Plaintiffs' proposed orders confirm their requested relief was limited to enforcement of Section 57-11(a)). Despite failing to raise any argument regarding Section 57-10 in the Denied Motion, the Emergency Motion, for the first time, seeks an emergency preliminary injunction as to "bans imposed by Section [MCC] 57-10" which pertains to "Keeping guns on person or in vehicles." This Court should summarily deny the Emergency Motion as to Section 57-10, and need not reach the merits of this

argument, because it is beyond the scope of Plaintiffs' pleadings and the Denied Motion.

Fed. R. App. P. 8(a)(1)(C) precludes Plaintiffs from seeking injunctive relief from this Court without first seeking that injunctive relief from the District Court, absent extraordinary circumstances. *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 603 (4th Cir. 2004) ("Absent exceptional circumstances, of course, [appellate courts] do not consider issues raised for the first time on appeal." Rather, "[appellate courts] consider such issues on appeal only when the failure to do so would result in a miscarriage of justice."). The Emergency Motion does not argue that exceptional circumstances justifying departure from the general rule are present here. *See Robinson v. Equifax Info.* Servs., LLC, 560 F.3d 235, 242, (4th Cir. 2009).

After the County's original response to the Emergency Motion (Doc 15-1 at 6-7) established that Plaintiffs' new complaints about MCC § 57-10 were beyond the scope of the Second Amended Complaint and Denied Motion, Plaintiffs dropped the issue in the District Court. Specifically, Plaintiffs' District Court motion for emergency injunctive relief pending appeal wisely abandoned any argument as to MCC § 57-10. (ECF 93 at 6). Therefore, the Emergency Motion before this Court seeks additional relief of an injunction as to MCC § 57-10 **beyond what was requested in the District Court**. (Doc. 10-1 at 8).

Fed R. App. P. 8(a)(2)(A)(ii) requires that a moving party must state in its motion to a court of appeals that "the district court denied the motion or failed to afford the relief requested…" Here, Plaintiffs are unable to comply with the requirements of Fed R. App. P. 8(a)(2)(A)(ii) as to MCC § 57-10 because it is outside the scope of relief requested from the District Court. Accordingly, this Court should summarily deny the relief sought in the Emergency Motion pertaining to the County's restriction of firearms in vehicles under MCC § 57-10.

## II.    The Emergency Motion Does Not Comply with The District Court's Previous Orders.

The CMO requires that a Notice of Intent contain "a brief description of the motion sought to be filed, a brief summary of the particularized factual and legal support for the motion [and] … shall contain sufficient information to demonstrate that it is premised on colorable, good-faith arguments and is not frivolous or brought for any improper purpose…" (ECF 11 at 2-3).

Plaintiffs did file a Notice of Intent, but they requested permission to seek "an injunction pending appeal **only** with respect to the County's bans on possession and transport of firearms in the County's 100-yard exclusionary zones." (ECF 87 at 1) (emphasis in original). Plaintiffs' Notice of Intent goes on to promise that their "Rule 8 motion thus **will not seek relief** as to whether the County may ban possession of all firearms within the specific locations identified by the County's definition of a 'place of public assembly.'" (ECF 87 at 3) (emphasis added).

9

In its August 29, 2023 Order, the District Court specifically instructed Plaintiffs that any motion for injunction pending appeal must be limited to the motion Plaintiffs described in their Notice of Intent and comply with the CMO. (ECF 92) ("All briefs must … directly address the relief sought by Plaintiffs from this Court, as opposed to the relief sought from the United States Court of Appeals...") (ECF 92).

In direct contradiction to the Letter of Intent and the District Court's August 29, 2023, Order, Plaintiffs' emergency motion for injunction pending appeal sought to enjoin the County's firearms restrictions within a place of worship. (ECF 93). In further direct contradiction to the District Court's orders and Fed R. App. P. 8(a)(2)(A)(ii), the Emergency Motion again seeks to enjoin the County's firearms restrictions: (1) within a place of worship; and (2) on keeping guns on persons or in vehicles under MCC § 57-10. (Doc. 10-1 at 8-9)[2]

Accordingly, this Court should summarily deny the relief sought in the Emergency Motion pertaining to the County's restriction of firearms in places of worship under MCC § 57-11 and MCC § 57-10 because it is beyond the relief requested in the District Court.

_____

[2] This Court deferred action on Plaintiffs' earlier Emergency Motion so they could first pursue it in the District Court before returning to this Court. (Doc. 31). The District Court's Order suggests that it only considered Plaintiffs' request for an injunction pending appeal as to the 100-yard buffer zone, as Plaintiffs described in their Notice of Intent, and not houses of worship. (ECF 97).

## III.   This Court Should Strike Plaintiffs' New Factual Allegations and Exhibits.

The Emergency Motion improperly attempts to introduce before this Court new factual allegations and an expert report not offered in conjunction with their Denied Motion which is the subject of their interlocutory appeal. (ECF 93 at 15-18), (ECF 93-1), and (ECF 93-2).

As set forth in the County's Motion to Strike filed concurrently with this Response, and adopted and incorporated herein, this Court should strike Plaintiff's improper attempt to "back-fill" the record by introducing new factual allegations and expert opinions, which were all available to Plaintiffs when they filed the Denied Motion. *Dmarcian, Inc. v. Dmarcian Eur. BV*, 2021 U.S. Dist. LEXIS 150517, *7) (W.D.N.C., August 11, 2021).

## IV.   This Court Should Deny Plaintiffs' Request for Emergency Injunctive Relief.

### A.   The Limitations in Chapter 57 Are Not What Plaintiffs Would Have This Court Believe Them to be.

Plaintiffs overstate grossly the reach of the County Firearms Law. They characterize the County's restrictions on public carry as banning the ability to carry a firearm throughout the County, including private property. This is simply not true. The County's law restricts firearms in places of public assembly, and that restriction does **not** apply to:

11

- possession of a firearm or ammunition in a person's home;[3]

- possession of a firearm and its ammunition at a business by its owner or an authorized employee of the business;[4]

- a law enforcement officer or a licensed security guard;[5]

- a retired law enforcement officer;[6] and

- the transport of a firearm in a vehicle when it is locked in a case, separate from its ammunition.[7]

Plaintiffs' newfound maps, which as noted above should not even be considered by this Court, fail to show the private residence or business exceptions where a gun may be kept. Contrary to Plaintiffs' assertions, it is possible to carry a weapon anywhere outside of one's home in the County, as a person can transport the weapon in a locked case, separate from its ammunition. Plaintiffs' maps are therefore inaccurate and misleading.

---

[3] *See* MCC § 57-11(b)(3). This exception does not include ghost guns and undetectable guns. *See id.*

[4] *See* MCC § 57-(b)(4). Both the business owner and employee must have State-issued wear-and-carry permits. *See id.*

[5] *See* MCC § 57-11(b)(2).

[6] The Law Enforcement Officers Safety Act permits a qualified law enforcement officer or a qualified retired or separate law enforcement officer to carry a concealed weapon regardless of state or local laws. *See* 18 U.S.C. §§ 926B, 926C.

[7] *See* MCC § 57-11(b)(5)(A). This exception does not include ghost guns and undetectable guns. *See id.*

The County's restrictions are not the totalitarian hand of government reaching into Plaintiffs' homes and private property as Plaintiffs' breathless hyperbole would have this Court believe.

**B.     The District Court Correctly Concluded That Plaintiffs Are Not likely to Succeed on the Merits.**

Under *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), if the Second Amendment applies to the conduct regulated by the government, there is only one step for a court to consider: whether the government can justify its regulation by demonstrating it is "[c]onsistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

*Bruen* identified five[8] "sensitive places" where firearms historically could be prohibited: schools, government buildings, legislative assemblies, polling places, and courthouses. *See id.* at 2133. The Court instructed courts to "use analogies to those historical regulations of 'sensitive places' to determine [whether] modern regulations prohibiting the carry of firearms in **new** and analogous sensitive places are constitutionally permissible." *Id.* at 2133 (emphasis in original).

The five sensitive places in *Bruen* are not exhaustive, and a government may justify its regulation by identifying other "relevantly similar" historical regulations.

---

[8] Plaintiffs' Emergency Motion omits schools and government buildings from their list, incorrectly asserting that *Bruen* identified only three locations where firearms may be banned. (Doc 10-1 at 7.)

*See id.* at 2132. *Bruen* listed two metrics for courts for a "relevantly similar" analysis: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. The historical analogue analysis therefore should review "[w]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133.

The "how" and "why" metrics are central to the analysis, but they are not the only metrics for a court to review. *See id.* at 2132. In addition to the "how" and "why" metrics, the task of analogue analysis can be a "straightforward" assessment if the challenged law "addresses a general societal problem that has persisted since 18th century." *Id.* at 2131. The absence of a similar law addressing the ongoing historical problem is relevant evidence that the new law is unconstitutional. *See id.* at 2131. But for laws that implicate "unprecedented societal concerns or dramatic technological changes," a more "nuanced" approach may be required, as "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 **or the Reconstruction generation in 1868**." *Id.* at 2132 (emphasis added).

To that end, the analogue analysis as "[n]either a straightjacket nor a regulatory blank check." *Id.* at 2133. Analogical reasoning only requires that the government "[i]dentify a well-established and representative historical **analogue**,

not a historical **twin**." *Id.* at 2133 (emphasis in original). Even if a challenged law is not a "[d]ead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 2133.

*Bruen* acknowledged the debate between whether the laws at the time of the Second Amendment's adoption (1791) or the ratification of the Fourteenth Amendment (1868) are more instructive. *See Bruen* at 2138. But the Court **expressly** did not weigh in on which era is definitive. *See id.* Rather, the Court stated the laws in both eras supported its conclusion that New York's law requiring "proper cause" to carry in public did not pass constitutional muster. *See id.*[9]

Many courts, both prior to *Bruen*[10] and after,[11] considered Reconstruction Era laws as pertinent to Second Amendment challenges to government regulations. As noted by the District Court, the Second Amendment originally applied only to the

---

[9] *See Bruen* at 2150 (stating the Reconstruction era as "useful" in understanding meaning of Second Amendment's right to public carry for self-defense). *Bruen* at 2150. Per the County's response brief (Doc. 40), the post-*Bruen* Seventh and Ninth Circuit decisions cited by Plaintiffs that relied upon the Founding Era are inapt here. *See* Doc. 40 at 23, n. 28.

[10] *See Gould v. Morgan*, 907 F.3d 659, 669 (1st Cir. 2018); *Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012).

[11] *See Goldstein v. Hochul*, No. 22-CV-8300 (VSB), 2023 U.S. Dist. LEXIS 111124, at *30-31 (S.D.N.Y. June 28, 2023); *Frey v. Nigrelli,* No. 21-CV-05334 (NSR), 2023 U.S. Dist LEXIS 42067 at *39, *48-49 (S.D.N.Y. March 13, 2023).

Federal Government. *See McDonald v. City of Chicago*, 561 U.S. 742, 754 (2010); *Barron ex Rel. Tiernan v. Mayor of Balt.*, 32 U.S. (7 Pet.) 243, 250-51 (1833). Thus, sources from the time of the Fourteenth Amendment's ratification are "equally if not more probative of" the scope of the Second Amendment's right to bear arms. *See* ECF 82 at 18.[12]

Contrary to Plaintiffs' assertion of broad rights of armed confrontation, the Second Amendment right to bear arms is not a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The Second Amendment right to bear arms for purposes of self-defense is most acute in one's own home. *See Heller*, 554 U.S. at 628. And an individual's Second Amendment right to possess a firearm for self-defense is not limitless and is appropriately subject to government regulation. *See Bruen* at 2162 (Kavanaugh, J., concurring) ("[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations" (quotation omitted)); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (noting that it is "important to keep in mind" that *Heller* did not cast doubt on certain "longstanding regulatory measures" in connection with firearms); *Heller*, 554 U.S. at 595 (2008) (the right to keep and bear arms is "not unlimited").

---

[12] Indeed, the Second Amendment was made applicable to the States via the Fourteenth Amendment only 13 years ago. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

As discussed below, under *Bruen*'s analysis, the County's Firearms Law is constitutional.[13]

### 1.   The County Identified Multiple Historical Analogues for its Prohibition Against Firearms in a 100-Yard Buffer Zone Around Places of Public Assembly.

Precedent for a buffer zone[14] around various areas, activities, and populations can be found in many historical laws.

Maryland prohibited guns within one mile of polling places on election days in Calvert County (1886 and 1888) and in Kent, Queen Anne's, and Montgomery Counties (1874). **Exs. 4, 5, 6.** Louisiana in 1870 similarly prohibited guns within "one-half mile of any place of registration" for elections. **Ex. 7.**

To protect water fowl, Somerset County in 1837 banned guns in or within 50 yards of any water fowl blind on Smith Island. **Ex. 8.**

Many localities (Philadelphia; St. Paul; Pittsburgh; Reading, Pennsylvania; Trenton, New Jersey) banned guns within 50 or 100 yards of their parks, squares, or common areas between 1868 and 1903. **Exs. 9, 10, 12, 12, 13, 14.**

New Mexico, in 1887 when it was still a Territory, prohibited the unlawful

---

[13] The County's recently filed brief sets out a fuller argument as to the constitutionality of its Firearms Law under *Bruen*.

[14] The State statute authorizing the County's Firearms Law provides that the County may regulate firearms "within 100 yards of or in a park, church, school, public building, and other place of public assembly" *See* Md. Code Ann., Crim. Law § 4-209(b) (2021).

brandishing of a weapon within a "settlement," defined to mean "any point within three hundred yards of any inhabited house." **Ex. 15.**

Mississippi prohibited the concealed carry of weapons within two miles of a university, college, or school in 1892. **Ex. 16.** And Connecticut in 1859 banned the sale of liquor "within one mile of any military parade-ground, muster-field, or encampment." **Ex. 17.**

These historical laws *expressly* prohibit weapons in buffer zones around sensitive areas. If Maryland historically protected water fowl with a buffer zone, certainly human life in areas of public assembly can be protected by a buffer zone. The County's regulation of firearms within 100 yards of places of public assembly is consistent with historical firearm regulation and is constitutional.[15]

### 2. The County Identified Many "Twin" or "Dead Ringer" Laws Prohibiting Guns in Places of Worship.

As noted above, Plaintiffs failed to identify in their Notice of Intent the County's Firearms Law's prohibition in places of worship as grounds for an injunction pending appeal.

Assuming this Court elects to reach this issue despite that procedural

---

[15] Three federal circuits found firearm bans in government buildings included the parking lots and property surrounding those buildings. *See U.S. v. Class*, 930 F.3d 460, 464 (D.C. Cir. 2019); *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1123, 1124-25 (10th Cir. 2015); *U.S. v. Dorosan*, 350 Fed. Appx. 874, 875-76 (5th Cir. 2009). These decisions predated *Bruen*, but all relied heavily upon the *Heller* court's discussion of "sensitive locations," which *Bruen* augmented.

deficiency, there are many historical analogues to support the County's ban on guns in places of worship. Georgia in 1870 and 1882 prohibited the carrying of a "pistol or revolver, or any kind of deadly weapon, to any…place of public worship." **Exs. 18, 19.** The 1882 law excepted law enforcement. *See* Ex. 19. In 1870 and 1879, Texas prohibited any person from going into "any church or religious assembly" with a gun. **Exs. 20, 21.** The Texas laws did not apply, however, to law enforcement. *See id.*

Missouri in 1875, 1879, and 1883 prohibited firearms in any church or place where people assembled for religious worship, except for law enforcement. **Exs. 22, 23, 24.** Virginia prohibited pistols or other dangerous weapons in 1877 in "any place of worship while a meeting for religious purposes is being held at such a place, or without good or sufficient cause therefor." **Ex. 25.**

Arizona, while still a territory in 1889, prohibited the carry of "a pistol or other firearm" in "any church or religious assembly." **Ex. 26 § 3.** This prohibition did not apply to law enforcement. *See id. § 4.*

In 1890, Columbia, Missouri prohibited anyone other than police officers from carrying dangerous weapons "into any church, or place where people have assembled for religious worship." **Ex. 27.**

When it was still a territory, Oklahoma, in 1890 and 1893, prohibited the carry of firearms by anyone other than a peace officer into "any church or religious

assembly." **Ex. 28, 29.**

In 1894, Huntsville, Missouri, prohibited the carry of a deadly or dangerous weapon in "any church or place where people have assembled for religious worship." This prohibition did not apply to police officers. **Ex. 30.**

These historical precursors are exact matches of the County's prohibition of guns in places of worship. Like these laws, the County's law does not apply to law enforcement officers or security guards.

In addition to these historical statutory precursors, several courts in the 1870s viewed churches or places of worship as no place for firearms. *See Hill v. State*, 53 Ga. 472, 475 (Ga. 1874) (carrying arms at places of worship improper and not protected by constitution); *English v. State*, 35 Tex. 473, 478-79 (Tex. 1872) (finding it "[l]ittle short of ridiculous" that anyone should claim right to carry weapon into a peaceful public assembly such as church); *Andrews v. State*, 50 Tenn. 165, 182 (Tenn. 1871) (observing it is not appropriate to carry arms to church and such practice may be prohibited).[16]

Given the "twin" historical analogues above, as well as the historical views of courts on the impropriety of firearms in places of worship, the County's gun

---

[16] While *Bruen* distinguished the *English* decision and some statutes relied upon by the County, it did so only in the context of assessing the "proper cause" requirement in in New York's public carry law, not in the context of a "sensitive places" analysis required in this appeal. *See Bruen* at 2133-34.

restriction in places of worship is constitutional.

**C.    The District Court Properly Found No Irreparable Harm to Plaintiffs.**

The County's removal of the ability of State wear-and-carry permit holders in places of public assembly via Bill 21-22E has been in effect since November 28, 2022, for over ten months. Plaintiffs' assertions of exigency and irreparable injury ring hollow given this passage of time.

**D.    The District Court Properly Held That the Balance of Equities and the Public Interest Weigh in Favor of the County.**

When a temporary restraining order is sought against the government, "the government's interest is the public's interest," and the third and fourth elements necessary for an injunction – the balance of the equities and the public interest – merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Staying enforcement of Bills 4-21 and 21-22E will undermine the public's strong interest in preventing gun violence in areas where people, especially vulnerable populations, congregate. The County Council enacted the Bills in direct response to (a) an increase in ghost guns in the community[17] (including one high school student shooting another student with a ghost gun at school in the middle of

---

[17] The number of guns, excluding ghost guns, confiscated by County Police increased 51% in 2021. *See* Montgomery County, Maryland, Office of Legislative Oversight, Memorandum Report No. 2022-13 at 13 (2022), https://www.montgomerycountymd.gov/OLO/Resources/Files/2022_reports/OLO Report2022-13.pdf.

the school day[18]), (b) an increase in gun violence in the country[19] and the County,[20] and (c) an increase the number of gun permit applications in Maryland following *Bruen*.[21] With these unquestioned facts, the Council enacted the laws it believed necessary for the safety and welfare of its residents. Enjoining the County's law will strip residents of these protections in this atmosphere of heightened gun violence.

The balance of the equities and the public interest weigh in favor of the County, which enacted the challenged law in response to the rise of gun violence, and to protect the safety of the public when exercising their constitutional right to assemble.

---

[18] Darcy Spencer, *Maryland Teenager Sentenced to 18 Years for Shooting Student at Magruder High,* NBCwashington.com, December 22, 2022, https://www.nbcwashington.com/news/local/maryland-teenager-sentenced-to-18-years-for-shooting-student-at-magruder-high/3239939/.

[19] In 2020, 45,222 people died from gun-related injuries in the United States—the most in any year recorded. *See* Doc. 10-12 at 21. Gun deaths are now the leading cause of death for children, teens, and young adults in the country. *See Bruen* at 2165.

[20] As of July 2022, nonfatal shootings were up 75% in the County, and noncontact shootings increased 29% compared to the same period in 2021. *See* Dan Morse, *Gun violence rises sharply in Montgomery County, police chief says*, The Washington Post, July 11, 2022, https://www.washingtonpost.com/dc-md-va/2022/07/11/montgomery-county-gun-violence-double/.

[21] *See* Fredrick Kunkle, *Supreme Court ruling sets off rush for concealed gun permits in Maryland,* The Washington Post (July 25, 2022) *https://www.washingtonpost.com/dc-md-va/2022/07/15/concealed-carry-maryland-guns-hogan/*.

## CONCLUSION

This Court need not reach two-thirds of Plaintiffs' arguments for the reasons noted above.

For the sole issue that is only arguably properly before this Court—the challenge to the County's 100-yard buffer zone—Plaintiffs failed to meet the demanding standard for obtaining an injunction. Plaintiffs' Emergency Motion should be denied, and new and improper evidence struck.

Respectfully submitted,

JOHN P. MARKOVS
COUNTY ATTORNEY

_____/s/_____

Edward B. Lattner, Deputy County Attorney
edward.lattner@montgomerycountymd.gov
Bar No. 03871

_____/s/_____

Erin J. Ashbarry
Associate County Attorney
erin.ashbarry@montgomerycountymd.gov
Bar No. 26298

_____/s/_____

Matthew H. Johnson
Associate County Attorney
matthew.johnson3@montgomerycountymd.gov
Bar No. 17678

Attorneys for Defendant/Appellee
Montgomery County, Maryland
101 Monroe Street, Third Floor
Rockville, Maryland 20850-2540
(240) 777-6700
(240) 777-6705 Fax

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. R. 32(g)**

1.    This brief complies with the length limitation of Fed. R. App. P. 27(d)(2)(A) because this brief contains 5,170 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

/s/
Erin J. Ashbarry

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 20, 2023, a copy of the foregoing

was filed to be transmitted via this Court's CM/ECF Electronic Document Filing

System to:

> Mark W. Pennak
> Maryland Shall Issue, Inc.
> 9613 Harford Rd., Ste C #1015
> Baltimore, Maryland 21234-21502
> mpennak@marylandshallissue.org
> *Attorney for Plaintiffs-Appellants*
>
> David H. Thompson
> Peter A. Patterson
> Cooper & Kirk, PLLC
> 1523 New Hampshire Avenue, N.W.
> Washington, D.C. 20036
> dthompson@cooperkirk.com
> ppatterson@cooperkirk.com
> *Attorneys for Plaintiff-Appellant MSI*
>
> Matthew Larosiere
> Law Office of Matthew Larosiere
> 6464 Houlton Circle
> Lake Worth, Florida 33467
> larosieremm@gmail.com
> *Attorney for Plaintiffs-Appellants*

                                        /s/
                                   _____
                                   Erin J. Ashbarry