# IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**MARYLAND SHALL ISSUE, INC.**
**9613 Harford Rd., Ste C #1015**
**Baltimore, Maryland 21234-2150**

**ENGAGE ARMAMENT LLC**
**701 E. Gude Dr., Ste 101,**
**Rockville, Maryland 20850**

**ANDREW RAYMOND**                     Case No.: 485899V
**14819 Poplar Hill Rd**
**Darnestown MD 20874**

**CARLOS RABANALES**
**7727 Green Valley Rd,**
**Frederick, Maryland 21701**          **JURY DEMANDED**

**BRANDON FERRELL**
**40 Mountain Laurel Court**
**Gaithersburg, Maryland 20879**

**DERYCK WEAVER**
**8712 Lowell Street**
**Bethesda, Maryland 20817**

**JOSHUA EDGAR**
**8416 Flower Hill Terr.**
**Gaithersburg Maryland 20879**

**I.C.E. FIREARMS & DEFENSIVE**
 **TRAINING, LLC,**
**24129 Pecan Grove Lane**
**Gaithersburg, Maryland 20882**

**RONALD DAVID**
**24129 Pecan Grove Lane**
**Gaithersburg, Maryland 20882**

**NANCY DAVID**
**24129 Pecan Grove Lane**
**Gaithersburg, Maryland 20882**

 *Plaintiffs,*

**EXHIBIT
2**

1

**v.**

**MONTGOMERY COUNTY,**
**MARYLAND**
**101 Monroe Street**
**Rockville, Maryland 20850**

*Defendant.*

---

**FIRST AMENDED**
**VERIFIED COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF**
**AND FOR COMPENSATORY DAMAGES, NOMINAL DAMAGES AND**
**ATTORNEY'S FEES AND COSTS**

COME NOW, the Plaintiffs, through counsel, and sue the Defendant, and for cause state as follows:

**INTRODUCTION**

1.      On April 16, 2021, the Defendant, Montgomery County, Maryland ("the County") signed into law Bill 4-21, a copy of which is attached to this complaint as Exhibit A. Bill 4-21 becomes effective on July 16, 2021. Through the enactment of County ordinance 4-21, the County has unlawfully exceeded its powers and jurisdiction to criminally regulate the possession and transfer of lawfully owned firearms in a way that is in direct conflict with Article XI–A, § 3 and Article XI–A, § 6 of the Maryland Constitution and in a manner that is inconsistent with multiple existing Maryland statutes. The restrictions enacted by Bill 4-21 violate the Maryland Takings Clause, Article III § 40 and the Due Process Clause of Article 24 of the Maryland Declaration of Rights by depriving plaintiffs of their vested property rights in the personal property regulated by Bill 4-21. The hopelessly vague

2

provisions violate the Due Process Clause of the Fourteenth Amendment and the Due Process Clause of Article 24 of the Maryland Declaration of Rights. Maryland County Code § 57-11, as amended by Bill 4-21 violates the Second Amendment to the Constitution in so far as it purports to regulate or ban the sale, transfer, possession or transport of any firearm or any ammunition with 100 yards of a place of public assembly as that term is defined by Bill 4-21. To the extent that Maryland Code, Criminal Law § 4-209(b) purports to authorize the regulations imposed by Bill 4-21, it is likewise unconstitutional under the Second Amendment. Pursuant to 42 U.S.C. § 1983, Plaintiffs seek declaratory and injunctive relief and compensatory damages, including nominal damages, for the violations of their Federal constitutional rights vague language adopted by Bill 4-21, as alleged below. Plaintiffs further seek an award of attorneys' fees under 42 U.S.C. § 1988, in an amount to be determined, for the violations of their Federal constitutional rights, as alleged below. Plaintiffs seek declaratory and injunctive relief on their State Constitutional and statutory law claims.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this matter pursuant to MD Code, Courts and Judicial Proceedings, § 1-501, and MD Code, Courts and Judicial Proceedings, § 3-403, as this complaint seeks prospective declaratory and injunctive relief damages, attorneys' fees pursuant to 42 U.S.C. § 1988, and other relief afforded by 42 U.S.C. § 1983. This complaint raises both state law claims as well as claims arising under the United States Constitution. This declaratory judgment action is brought pursuant to MD Code, Courts and Judicial Proceedings § 3-406, and MD Code, Courts and Judicial Proceedings, § 3-409, for the purpose of determining questions of actual controversy between the parties and terminating uncertainty and controversy giving rise to this proceeding. Plaintiffs request a speedy hearing of this action in accordance with MD Code, Courts and Judicial Proceedings, § 3-409(e).

3.      Venue is properly in this Court in this matter pursuant to MD Code, Courts and Judicial Proceedings, § 6-201, as the defendant resides, carries on a regular business and maintains its principal offices in Montgomery County, Maryland. Montgomery County is named as a defendant and is a necessary party to this action under MD Code, Courts and Judicial Proceedings, § 3-405(b).

**MONTGOMERY COUNTY BILL 4-21**

4.      In relevant part, Bill 4-21 amends several sections of Chapter 57 of the Montgomery County Code ("County Code"). Specifically, Bill 4-21 amends Section 57-1, to broaden the definition of a "gun or firearm" to include "**a ghost gun**" and, in addition, to provide the following new definitions (additions enacted by Bill 4-21 are **bolded**, portions of existing law that are deleted by Bill 4-21 are in *brackets and italics*):

a. A "**3D printing process**" is defined as "**a process of making a three-dimensional, solid object using a computer code or program, including any process in which material is joined or solidified under computer control to create a three-dimensional object**;"

b. A "**ghost gun**" is defined as "**a firearm, including an unfinished frame or receiver, that lacks a unique serial number engraved or cased in metal alloy on the frame or receiver by a licensed manufacturer, maker or importer under federal law or markings in accordance with 27 C.F.R. § 479.102. It does not include a firearm that has been rendered permanently inoperable, or a firearm that is not required to have a serial number in accordance with the Federal Gun Control Act of 1968**;"

c. The term "**Undetectable gun**" is defined as:

**(A) a firearm that, after the removal of all its parts other than a major component, is not detectable by walk-through metal detectors commonly used at airports or other public buildings;**

4

**(B) a major component that, if subjected to inspection by the types of detection devices commonly used at airports or other public buildings for security screening, would not generate an image that accurately depicts the shape of the component; or**

**C) a firearm manufactured wholly of plastic, fiberglass, or through a 3D printing process.**

d. A "**Major component**" is defined as "**with respect to a firearm: (1) the slide or cylinder or the frame or receiver; and (2) in the case of a rifle or shotgun, the barrel**;"

e. A "Place of public assembly" is defined as **a place where the public may assemble, whether the place is publicly or privately owned, including** a *[government owned]* park *[identified by the Maryland-National Capital Park and Planning Commission]*; place of worship; [elementary or secondary] school; *[public]* library; *[government-owned or -operated]* recreational facility; **hospital**; **community health center; long-term facility**; or multipurpose exhibition facility, such as a fairgrounds or conference center. A place of public assembly includes all property associated with the place, such as a parking lot or grounds of a building.

5. Bill 4-21 amends Section 57-7 of the County Code to provide (new additions in bold):

**(c) A person must not give, sell, rent, lend, or otherwise transfer to a minor:**

**(1) a ghost gun or major component of a ghost gun;**

**(2) an undetectable gun or major component of an undetectable gun; or**

**(3) a computer code or program to make a gun through a 3D printing process.**

**(d) A person must not purchase, sell, transfer, possess, or transfer a ghost gun, including a gun through a 3D printing process, in the presence of a minor.**

**(e) A person must not store or leave a ghost gun, an undetectable gun, or a**

5

**major component of a ghost gun or an undetectable gun, in a location**

**that the person knows or should know is accessible to a minor.**

6.      Bill 4-21 also amends 57-11 of the County Code to provide (new provisions added by Bill 4-21 are in **bold**, portions deleted by Bill 4-21 are in *brackets* and *italics*):

(a) [A] **In or within 100 yards of a place of public assembly, a** person must not:

(1) sell, transfer, possess, or transport **a ghost gun, undetectable gun,** handgun, rifle, or shotgun, or ammunition **or major component** for these firearms*[, in or within 100 yards of a place of public assembly]*; **or**

(2) **sell, transfer, possess, transport a firearm created through a 3D printing process.**

(b) This section does not:

* * * *;

(3) apply to the possession of a firearm or ammunition, **other than a ghost gun or an undetectable gun**, in the person's own home;

(4) apply to the possession of one firearm, and ammunition for the firearm, at a business by either the owner **who has a permit to carry the firearm**, or one authorized employee of the business **who has a permit to carry the firearm**;

(5) apply to the possession of a handgun by a person who has received a permit to carry the handgun under State law; or

(A) transported in an enclosed case or in a locked firearms rack on a motor vehicle, **unless the firearm is a ghost gun or an undetectable gun**; or

6

\* \* \* \*

7.      Bill 4-21 leaves unaltered the penalties for a violation of Chapter 57 of the County Code. Under Section 57-15 of the County Code, with an exception for violations of Section 5-8 not applicable here: "Any violation of this Chapter or a condition of an approval certificate issued under this Chapter is a Class A violation to which the maximum penalties for a Class A violation apply." Under Section 1-19 of the County Code, the maximum penalties applicable for a violation of the offenses created by Bill 4-21 are criminal penalties of a $1,000 fine and 6 months in jail. Under Section 1-20(c) of the County Code, "[e]ach day any violation of County law continues is a separate offense."

### STATE AND FEDERAL FIREARMS LAW

8.      Under Federal law, a person may legally manufacture a firearm for his own personal use. See 18 U.S.C. § 922(a). See *Defense Distributed v. Department of State*, 838 F.3d 451 (5th Cir. 2016). Under Maryland law, a person is likewise permitted to manufacture a firearm for her own personal use. Firearms manufactured for personal use are not required to be serialized or engraved with a serial number under Federal law or Maryland law.

9.      Under Federal law, 18 U.S.C. § 921(a)(3), "[t]he term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."

10.      Similarly, under Maryland law, MD Code, Public Safety, § 5-101(h)(1), a "firearm" is defined as "(i) a weapon that expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive; or (ii) the frame or receiver of such a weapon." Maryland law

7

does not define "frame or receiver." Maryland law does not define or regulate the possession, sale or transfer of "major components" for firearms. Fully finished receivers are commonly sold with serial numbers already engraved in compliance with Federal law and such fully finished receivers may be lawfully assembled by law-abiding persons for personal use by obtaining other components that lawfully available and sold throughout the United States.

11.    Since 1968, the Federal Bureau of Alcohol, Tobacco and Firearms ("ATF") has defined a "receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." See 27 C.F.R. § 478.11; 33 Fed. Reg. 18558 (1968). Under ATF Guidance, an unfinished receiver that has not yet had "machining of any kind performed in the area of the trigger/hammer (fire-control) recess (or cavity)," is not considered to be a receiver and is thus not considered to be a firearm. ATF Firearms Technology Branch Technical Bulletin 14-01. Such firearms are sometimes informally called "80% receivers," depending on the extent to which milling has already occurred. While Bill 4-21 purports to regulate "major components" of firearms and defines major components to mean "(1) the slide or cylinder or the frame or receiver; and (2) in the case of a rifle or shotgun, the barrel," Bill 4-21 does not attempt to define "frame or receiver." Federal law does not require the manufacturer place any serial number on the slide or cylinder, or barrel, but rather requires that "an individual serial number" be placed on the "frame or receiver." 27 C.F.R. § 478.92(a)(1)(i). See also 27 C.F.R. § 479.102. Maryland law does not regulate the placement of serial numbers. A receiver that has been serialized by a federally regulated firearms manufacturer is treated as a "firearm" under Federal law and is thus subject to the full panoply of Federal regulation, including the performance of a background check otherwise required by Federal law. These definitions were modified and

8

updated by ATF regulations published on April 26, 2022. See *Definition of ''Frame or Receiver'' and Identification of Firearms*, 87 Fed. Reg. 24651 (April 26, 2022).

12.     Persons otherwise prohibited from owning firearms are still legally barred from the manufacture, transfer, or possession of modern firearms or modern ammunition, regardless of the method of manufacture. Such possession, actual or constructive, is a violation of 18 U.S.C. § 922(g), which is punishable by up to 10 years imprisonment under Federal law. See 18 U.S.C. § 924(a)(2). Possession of a firearm by a prohibited person is likewise a serious crime under Maryland law. See MD Code, Public Safety, § 5-101(g)(3), § 5-133(b)(1), § 5-205(b)(1).

13.     Under current Federal law, it is unlawful to "manufacture, import, sell, ship, deliver, possess, transfer, or receive" any firearm that is not "detectable" by a "Security Exemplar" or any "major component" of which does not show up accurately on airport x-ray machines. 18 U.S.C. § 922(p). A knowing violation of that prohibition is a Federal felony, punishable by five years of imprisonment and a fine. See 18 U.S.C. § 924(f). For these purposes, Federal law provides that "the term "Security Exemplar" means an object, to be fabricated at the direction of the Attorney General, that is-- (i) constructed of, during the 12-month period beginning on the date of the enactment of this subsection, 3.7 ounces of material type 17-4 PH stainless steel in a shape resembling a handgun; and (ii) suitable for testing and calibrating metal detectors." 18 U.S.C. § 922(p)(2)(C).

14.     Law-abiding Americans, including hobbyists, have lawfully manufactured firearms for personal use since before the Revolutionary War and that practice continues up to the present day. While there is no definitive count of such personal-use firearms, the total number of such firearms manufactured for personal use is undoubtedly in the hundreds of thousands and are in common use within the United States and Maryland. Such firearms manufactured for personal use include rifles and pistols and all such firearms successfully manufactured for personal use may be used for

legitimate lawful purposes, including self-defense in the home. The Second Amendment to the United States Constitution guarantees a right to use firearms "for the core lawful purpose of self-defense." *District of Columbia v. Heller*, 554 U.S. 570, 630 (2008). The Second Amendment protects arms that are "typically possessed by law-abiding citizens for lawful purposes." (Id. at 625).

15.     Under MD Code, Criminal Law, § 4-203(b)(3), Maryland law expressly permits a person to transport a handgun "on the person or in a vehicle while the person is transporting the handgun to or from the place of legal purchase or sale, or to or from a bona fide repair shop, or between bona fide residences of the person, or between the bona fide residence and place of business of the person, if the business is operated and owned substantially by the person if each handgun is unloaded and carried in an enclosed case or an enclosed holster." Such transport and carriage of long guns, such as rifles and shotguns, are permitted under Maryland law without restriction.

16.     Under MD Code, Criminal Law, § 4-203(b)(5), Maryland law expressly permits "the moving by a bona fide gun collector of part or all of the collector's gun collection from place to place for public or private exhibition if each handgun is unloaded and carried in an enclosed case or an enclosed holster." Such transport and carriage of long guns, such as rifles and shotguns, are permitted under Maryland law without restriction.

17.     Under MD Code, Criminal Law, § 4-203(b)(6), Maryland law expressly permits "the wearing, carrying, or transporting of a handgun by a person on real estate that the person owns or leases or where the person resides or within the confines of a business establishment that the person owns or leases." Such persons are not required to possess or obtain a Maryland carry permit under MD Code, Public Safety, § 5-306. There is no limitation on the number of handguns or types of ammunition that may be possessed, worn, carried or transported under this provision of Section 4-

10

203(b)(6). Such transport, wear and carriage of rifles and shotguns in a person's residence or business are permitted under Maryland law without restriction.

18.    Under MD Code, Criminal Law, § 4-203(b)(7), Maryland law expressly permits "the wearing, carrying, or transporting of a handgun by a supervisory employee: (i) in the course of employment; (ii) within the confines of the business establishment in which the supervisory employee is employed; and (iii) when so authorized by the owner or manager of the business establishment." Such persons are not required to possess or obtain a Maryland carry permit under MD Code, Public Safety, § 5-306. There is no limitation on the number of handguns or ammunition that may be possessed, worn, carried or transported under this provision of Section 4-203(b)(7). There is no limitation on the number of supervisory employees whom the employer may authorize to carry a firearm under this section. Such transport, wear and carriage of rifles and shotguns by business employees are permitted under Maryland law without restriction.

19.    Under MD Code, Public Safety, § 5-133(d)(2)(i), a person under the age of 21 may temporarily transfer and possess a regulated firearm, including a handgun, if the person is "1. under the supervision of another who is at least 21 years old and who is not prohibited by State or Federal law from possessing a firearm; and 2. acting with the permission of the parent or legal guardian of the transferee or person in possession." Under MD Code, Public Safety, § 5-133(d)(2)(iv), a person under the age of 21 may temporarily transfer or possess a regulated firearm, including a handgun, if the person is "1. participating in marksmanship training of a recognized organization; and 2. under the supervision of a qualified instructor."

20.    MD Code, Criminal Law, § 4-104, expressly permits a minor child under the age of 16 to have access to any firearm if that access "is supervised by an individual at least 18 years old" or if the minor child under the age of 16 has a certificate of firearm and hunter safety issued under § 10-

301.1 of the Natural Resources Article. By necessary implication, access to a firearm by a minor child between the ages of 16 and 18 is permitted by Section 4-104 without restriction.

21.     The regulation of unserialized firearms is a matter of significant state-wide and national interest. In the 2021 General Assembly, ghost guns were addressed in three bills. Two bills, House Bill 638 and Senate Bill 624, would have imposed extensive regulation on the possession and transfer of ghost guns, but would have also afforded a path for existing owners to retain possession of their existing, unserialized firearms that they had lawfully manufactured for personal use. One bill, House Bill 1291, would have banned unserialized firearms manufactured for personal use completely. Similar legislation was proposed in the 2020 General Assembly session, with House Bill 910 and Senate Bill 958, and in the 2019 General Assembly session, with House Bill 740 and Senate Bill 882. House Bill 740 passed the House of Delegates in 2019, and it instructed the Maryland State Police to "develop a plan for a system in the State for the registration of firearms not imprinted with a serial number issued by a federally licensed firearms manufacturer or importer and submit a report describing the system . . . ." In the 2021 Session, provisions of House Bill 638 were incorporated into other legislation that had passed the Senate (Senate Bill 190), and that bill, as amended, passed the House Judiciary Committee and was reported to the floor of the House of Delegates, where it was further amended. That bill ultimately did not pass the House.

22.     On May 7, 2021, the Attorney General announced that the Department of Justice, the Bureau of Alcohol, Tobacco and Firearms, would engage in new rule-making proceedings for the purpose of regulating the manufacture and transfer of "ghost guns." See Press Release, Justice Department Proposes New Regulation to Update Firearm Definitions Proposed Rule Seeks to Close "Ghost Gun" Loophole (available at https://bit.ly/3wceMr3). These proposed regulations have been published in the Federal Register. 86 Fed. Reg. 27720-01, 2021 WL 2012830 (May 21, 2021). The

proposed regulations would regulate manufacturers and dealers but would not limit or regulate the possession of unserialized firearms lawfully built by individuals for their own personal use. These proposed regulations do not limit or regulate the sale or possession of receivers that are otherwise serialized in accordance with existing Federal law.

**MARYLAND CONSTITUTIONAL AND STATUTORY PREEMPTION PROVISIONS**

23.     Maryland law contains several preemption statutes that broadly preempt local jurisdictions from regulating firearms:

a. MD Code, Public Safety, § 5-104, provides that "[t]his subtitle supersedes any restriction that a local jurisdiction in the State imposes on a sale of a regulated firearm, and the State preempts the right of any local jurisdiction to regulate the sale of a regulated firearm."

b. MD Code, Public Safety, § 5-133(a), provides that "[t]his section supersedes any restriction that a local jurisdiction in the State imposes on the possession by a private party of a regulated firearm, and the State preempts the right of any local jurisdiction to regulate the possession of a regulated firearm."

c. MD Code, Public Safety, § 5-134(a), provides that "[t]his section supersedes any restriction that a local jurisdiction in the State imposes on the transfer by a private party of a regulated firearm, and the State preempts the right of any local jurisdiction to regulate the transfer of a regulated firearm."

d. MD Code, Public Safety, § 5-207(a), enacted into law in 2021 as part of House Bill 4, provides that "[t]his section supersedes any restriction that a local jurisdiction in the State imposes on the transfer by a private party of a rifle or shotgun, and the State preempts the right of any local jurisdiction to regulate the transfer of a rifle or shotgun."

e. MD Code, Criminal Law, § 4-209, provides:

13

(a) Except as otherwise provided in this section, the State preempts the right of a county, municipal corporation, or special taxing district to regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation of:

(1) a handgun, rifle, or shotgun; and
(2) ammunition for and components of a handgun, rifle, or shotgun.

Exceptions

(b)(1) A county, municipal corporation, or special taxing district may regulate the purchase, sale, transfer, ownership, possession, and transportation of the items listed in subsection (a) of this section:

(i) with respect to minors;
(ii) with respect to law enforcement officials of the subdivision; and
(iii) except as provided in paragraph (2) of this subsection, within 100 yards of or in a park, church, school, public building, and other place of public assembly.

(2) A county, municipal corporation, or special taxing district may not prohibit the teaching of or training in firearms safety, or other educational or sporting use of the items listed in subsection (a) of this section.

For purposes of these preemption provisions, a "regulated firearm" includes any handgun. MD Code, Public Safety, § 5-101(r)(1). For purposes of these preemption provisions, the terms "handgun," "rifle," and "shotgun" are defined in MD Code, Criminal Law, § 4-201.

24.     Section 6 of Chapter 13, of the 1972 Sessions Laws of Maryland provides: "That all restrictions imposed by the law, ordinances, or regulations of the political subdivisions on the wearing, carrying, or transporting of handguns are superseded by this Act, and the State of Maryland hereby preempts the right of the political subdivisions to regulate said matters." https://bit.ly/2SvsRkJ. This provision has been held to preclude the County from regulating the sale of ammunition in the County. See *Montgomery County v. Atlantic Guns, Inc.,* 302 Md. 540, 489 A.2d 1114 (1985).

25.     Montgomery County has chartered home rule under Section 3 of Article XI-A of the Maryland Constitution and, under that provision, the County is empowered to enact "local laws." Such local laws are "subject to the Constitution and Public General Laws of this State." (Id.). Article

14

XI–A, § 6, of the Maryland Constitution provides further that "this Article shall not be construed to authorize the exercise of any powers in excess of those conferred by the Legislature upon said Counties or City as this Article sets forth." Under these provisions, Montgomery County is not empowered to enact "general laws." Under Maryland law, a general law "deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." *Steimel v. Board*, 278 Md. 1, 5, 357 A.2d 386, 388 (1976). Thus, "some statutes, local in form, have been held to be general laws, since they affect the interest of the whole state." *Cole v. Secretary of State*, 249 Md. 425, 434, 240 A.2d 272, 278 (1968). Similarly, "[a] law may be local in the sense that it operates only within a limited area, but general in so far as it affects the rights of persons without the area to carry on a business or to do the work incident to a trade, profession, or other calling within the area." *Dasch v. Jackson*, 170 Md. 251, 261, 183 A. 534, 538 (1936).

26.     Under the Maryland Express Powers Act, MD Code, Local Government, § 10-202(a), a "[a] county may enact local laws and may repeal or amend any local law enacted by the General Assembly on any matter covered by the express powers in this title." However, MD Code, Local Government, §10-206(a), provides that a county may pass an ordinance, resolution, or bylaw only if such laws are "not inconsistent with State law." Similarly, MD Code, Local Government, §10-206(b), provides that "[a] county may exercise the powers provided under this title only to the extent that the powers are not preempted by or in conflict with public general law." Under binding precedent, a local law is inconsistent with State law when the local law prohibits an activity which is permitted by State law, or permits an activity prohibited by state law. See *City of Baltimore v. Sitnick*, 254 Md. 303, 317, 255 A.2d 376, 382 (1969) ("a political subdivision may not prohibit what the State by general public law has permitted").

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

16

**PARTIES**

**Plaintiffs:**

27.    Plaintiff Maryland Shall Issue, Inc. ("MSI") is a Maryland corporation, located at 9613 Harford Rd., Ste C #1015, Baltimore, MD 21234-2150. MSI is an Internal Revenue Service certified Section 501(c)(4), non-profit membership organization with approximately 2000 members statewide. MSI is an all-volunteer, non-partisan organization dedicated to the preservation and advancement of gun owners' rights in Maryland. It seeks to educate the community about the right of self-protection, the safe handling of firearms, and the responsibility that goes with carrying a firearm in public. The purposes of MSI include promoting the exercise of the right to keep and bear arms; and education, research, and legal action focusing on the constitutional right to privately own, possess and carry firearms. MSI has one or more members who live and/or work in Montgomery County, and who possess "ghost guns" in their homes and/or in their businesses and engage in other conduct regulated by Bill 4-21. MSI has one or more members who live outside of Montgomery County, but who travel to and/or work within Montgomery County. MSI has one or more members who lives in Montgomery County, but who do not have a Maryland carry permit. MSI has one or more members who travels in or through Montgomery County, but who do not have a Maryland carry permit.  Each of the individual plaintiffs identified below are members of MSI. Among the membership of MSI are "qualified instructors" who engage in firearms training, including firearms instruction of minors.

28.    MSI filed extensive comments with Montgomery County, objecting to Bill 4-21 prior to its enactment. A true and correct copy of those comments are attached to this Complaint as Exhibit B. These comments were ignored by the County in enacting Bill 4-21 and omitted as part of the legislative packet made public by the County. As a participant in this process, MSI has a specialized interest in the subject matter addressed by Bill 4-21. The Bill, as enacted, burdens the ability of MSI

17

members to keep and bear arms within Montgomery County, including firearms that are otherwise lawful in Maryland, but nonetheless are banned or restricted by Bill 4-21. MSI is thus aggrieved by the passage of Bill 4-21. MSI has representational standing to sue on behalf its members who live in Montgomery County or who travel through Montgomery County or who otherwise are adversely affected by the County's unlawful actions.

29.    Plaintiff ENGAGE ARMAMENT LLC ("Engage"), is a Maryland corporation, and is located at 701 E. Gude Dr., Ste 101, Rockville, MD 20850, within Montgomery County. Pursuant to 18 U.S.C. § 923, Engage is a Type I and Type VII and Type X Federally licensed dealer and manufacturer of firearms and explosive devices at its current location. See 27 C.F.R. § 478.41 *et seq.* Pursuant to MD Code, Public Safety, § 5-106, Engage is a Maryland State licensed firearms dealer and is thus authorized by State law to engage "in the business of selling, renting or transferring regulated firearms." As part of its business, Engage manufactures firearm components, including receivers, and then assembles such components into finished firearms which it then sells, all in full compliance with Federal and State law. Engage is a dealer for machines and computer code for the manufacture of firearms by individuals for personal use. It regularly demonstrates such computer code to potential purchasers. From time to time, Engage stocks and sells unserialized items, which are not receivers under Federal law, but which can be lawfully machined and built into firearms by the purchaser for personal use. These otherwise lawful items are banned as "ghost guns" by Bill 4-21. As part of its business, Engage may transfer firearms in the presence of a minor who is accompanied by a parent. The business location of Engage is arguably within 100 yards of a "place of public assembly" as defined by Bill 4-21.

30.    Plaintiff Andrew Raymond is an individual co-owner of Engage, and resides in Montgomery County, Maryland. His residence in Darnestown, Maryland is within 100 yards of a

public street. Plaintiff Raymond regularly conducts the business activities of Engage. He is the father of two minor children who reside with him at his residence in Montgomery County. He assembles firearms in the presence of his children in his residence. He possesses in his home computer code which may be used to manufacture firearms within the meaning of Bill 4-21. He possesses one or more ghost guns at his residence and at his place of employment at Engage. As co-owner of Engage, he has authorized more than one supervisory employee at Engage to wear and carry loaded firearms within the business confines of Engage for their self-protection and for the protection of the business. At Engage, he possesses more than one firearm for the protection of himself and his business. He possesses computer code of the type regulated by Bill 4-21

31.    Plaintiff Carlos Rabanales is an individual co-owner of Engage. He resides in Frederick County, Maryland and regularly conducts the business activities of Engage. As co-owner of Engage, he has authorized more than one supervisory employee at Engage to carry firearms within the business confines of Engage for their self-protection and for the protection of the business. At Engage, he possesses more than one firearm for the protection of himself and his business. He may transport unserialized firearm parts and components to and from Engage as part of the business of Engage.

32.    Plaintiff Brandon Ferrell is an individual supervisory employee of Engage, and resides in Montgomery County, Maryland. His residence in Gaithersburg is arguably within 100 yards of a place of public assembly, as defined by Bill 4-21. Pursuant to MD Code, Criminal Law, 4-203(b)(7), he is considered to be a supervisory employee at Engage and wears and carries a fully loaded handgun in the course of his employment at Engage, "within the confines of a business establishment" as "authorized" by the owners of Engage. He possesses one or more "ghost guns" at his residence and at his place of employment at Engage. He possesses computer code of the type regulated by Bill 4-

21. Pursuant to MD Code, Criminal Law, 4-203(b)(7), he wears and carries a fully loaded handgun in the course of his employment at Engage, "within the confines of a business establishment" as "authorized" by the owners of Engage. He does not possess a wear and carry permit.

33.     Plaintiff Deryck Weaver is an individual supervisory employee of Engage, and resides in Bethesda, Maryland. His residence is arguably within 100 yards of a "place of public assembly" as that term is defined in Bill 4-21. He is the father of one minor child who lives with him at his residence. He is a qualified handgun instructor within the meaning of MD Code, Public Safety, §5-101(q), as well as a National Rifle Association-certified handgun instructor and National Rifle Association-certified Chief Range Safety Officer. He possesses within his home one or more "ghost guns," including a rifle and a pistol "ghost gun." From time to time, he assembles a firearm in the presence of his minor child for the purposes of instruction. Pursuant to MD Code, Criminal Law, 4-203(b)(7), he wears and carries a fully loaded handgun in the course of his employment at Engage, "within the confines of a business establishment" as "authorized" by the owners of Engage.

34.     Plaintiff Joshua Edgar works as a contractor at Engage, and resides in Gaithersburg, Maryland. His residence is arguably within 100 yards of a place of public assembly as that term is defined in Bill 4-21. He possesses within his home one or more "ghost guns," including a rifle and a pistol "ghost gun." From time to time, he assembles a firearm in the presence of a minor child for purposes of instruction. He does not possess a wear and carry permit.

35.     Plaintiff I.C.E. FIREARMS & DEFENSIVE TRAINING, LLC, ("ICE Firearms") is a Maryland corporation located at 24129 Pecan Grove Lane, Gaithersburg, Maryland. ICE Firearms provides firearm training to individuals with handguns, rifles and shotguns. ICE Firearms possesses computer code of the type regulated by Bill 4-21. ICE Firearms likewise possesses parts of firearms that are banned by Bill 4-21, including "unfinished receivers" arguably banned by Bill 4-21. ICE

20

Firearms is arguably located within 100 yards of a "place of public assembly" as that term is defined in Bill 4-21. ICE Firearms provides instruction in the safe use of firearms.

36.     Plaintiff Ronald David is the owner and operator of ICE Firearms. He resides in Gaithersburg, Maryland and his home is arguably within 100 yards of a "place of public assembly" as that term is defined by Bill 4-21. He possesses computer code of the type regulated by Bill 4-21. He likewise possesses one or more receivers as defined and banned by Bill 4-21 as a "ghost gun." He is a "qualified handgun instructor" within the meaning of MD Code, Public Safety, § 5-101(q), and a National Rifle Association-certified Training Counselor in every shooting discipline.

37.     Plaintiff Nancy David resides in Gaithersburg, Maryland and her home is arguably within 100 yards of a "place of public assembly" as that term is defined by Bill 4-21. She possesses computer code of the type regulated by Bill 4-21. She is a "qualified handgun instructor" within the meaning of MD Code, Public Safety, § 5-101(q).

**Defendant:**

38.     The Defendant is Montgomery County, Maryland, with its principal place and seat located in Rockville, Maryland. Montgomery County is a "person" for purposes of the relief sought by this suit within the meaning of MD Code, Courts and Judicial Proceedings, § 3-401.

### COUNT I – VIOLATIONS OF THE MARYLAND CONSTITUTION

39.     The Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this complaint.

40.     Bill 4-21 regulates "matters of significant interest to the entire state." *Cole v. Secretary of State*, 249 Md. 425, 434, 240 A.2d 272, 278 (1968). Bill 4-21 "affects the rights of persons without the area to carry on a business or to do the work incident to a trade, profession, or other calling within the area." *Steimel v. Board,* 278 Md. 1, 5, 357 A.2d 386, 388 (1976).

41. The General Assembly has repeatedly debated and introduced legislation, in both the House of Delegates and in the Senate, attempting to address the subject matters regulated by Bill 4-21. One such bill, House Bill 740, passed the House of Delegates in 2019. More recently, the General Assembly has enacted into law Senate Bill 387 and House Bill 425. Senate Bill 387 was enacted under Article II, Section 17(b) of the Maryland Constitution as Chapter 19. House Bill 425 was enacted under Article II, Section 17(b) of the Maryland Constitution as Chapter 18. This legislative activity is strong evidence that the matter is of general, state-wide interest, thereby demonstrating that Bill 4-21 is not a "local law" within the meaning of Article XI–A, § 3 of the Maryland Constitution and is thus *ultra vires*. See *Allied Vending, Inc. v. City of Bowie*, 332 Md. 279, 631 A.2d 77 (1993).

42. Bill 4-21 has redefined the "place of public assembly" to include "a place where the public may assemble, whether the place is publicly or privately owned, including a park; place of worship; school; library; recreational facility; hospital; community health center; long-term facility; or multipurpose exhibition facility, such as a fairgrounds or conference center." Such "place of public assembly includes all property associated with the place, such as a parking lot or grounds of a building."

43. Bill 4-21's definition of a "place of public assembly arguably encompasses every sidewalk, every restaurant, every coffee shop, and every private business in the entire County as all such locales may be places where the public "may" assemble either in the present or in the future. The term may even include private homes in so far as such homes "may" be used by two or more of the public from time to time in the present or in the future to "assemble." Bill 4-21 regulates the totality of Montgomery County. It would be, as a practical matter, impossible for any person to travel through Montgomery County without passing through an area within 100 yards of such locales now regulated by Bill 4-21. Allowing county governments to expand their regulatory powers in this

manner will create a nightmarish hodgepodge of local laws that vary from county to county, from city to city and from town to town, all of which could impose criminal penalties of the sort imposed by Montgomery County under Bill 4-21. Bill 4-21 directly and adversely affects the rights of non-residents of Montgomery County "to carry on a business or to do the work incident to a trade, profession, or other calling within the area." *Dasch v. Jackson*, 170 Md. 251, 261, 183 A. 534, 538 (1936). By regulating and criminalizing conduct that takes place within 100 yards of such locations, Montgomery County has exceeded its authority beyond that allowed by MD Code, Criminal Law, § 4-209. Through the enactment of Bill 4-21, the County has effectively nullified the preemption provisions of Section 4-209 as well as the preemption provisions of MD Code, Public Safety, § 5-134(a), MD Code, Public Safety, § 5-207(a).

44.    Bill 4-21 is not a "local law" within the meaning of Article XI–A, § 3 of the Maryland Constitution because it regulates "matters of significant interest to the entire state" and "deals with" a matter "which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." *Cole v. Secretary of State*, 249 Md. 425, 434, 240 A.2d 272 (1968). Bill 4-21 also "affects the rights of persons without the area to carry on a business or to do the work incident to a trade, profession, or other calling within the area." *Steimel v. Board*, 278 Md. 1, 5, 357 A.2d 386, 388 (1976).  Bill 4-21 is thus unconstitutional under Article XI–A, § 3 of the Maryland Constitution.

45.    Under Section 3 of Article XI-A of the Maryland Constitution, all laws passed by the County are "subject to the Constitution and Public General Laws of this State." As more fully set forth in Count II, below, Bill 4-21 conflicts and is inconsistent with "General Laws" passed by the General Assembly and is thus in violation of Article XI–A, § 3 of the Maryland Constitution for this additional reason.

23

46.     Under Section 6 of Article XI-A of the Maryland Constitution, the home rule powers conferred on the County by Article XI-A "shall not be construed to authorize the exercise of any powers in excess of those conferred by the Legislature upon said Counties or City as this Article sets forth." Under Section 6 of Article XI-A, the County's home rule powers thus do not include the power to pass any law that is in conflict or inconsistent with "General Laws" passed by the General Assembly as otherwise specified in Section 3 of Article XI-A of the Maryland Constitution. Bill 4-21 conflicts and is inconsistent with "General Laws" in violation of Section 3 of Article XI-A and thus is unconstitutional and *ultra vires* under Section 6 of Article XI-A as well.

### COUNT II – VIOLATION OF THE EXPRESS POWERS ACT

47.     Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this complaint.

48.     Under the Express Powers Act, MD Code, Local Government, § 10-206, Montgomery County laws must be "not inconsistent with State law" and the County is barred from enacting laws that are "preempted by or in conflict with public general law." Under Section 3 of Article XI-A of the Maryland Constitution, all laws passed by the County are "subject to the Constitution and Public General Laws of this State."

49.     Bill 4-21 violates these provisions of the Express Powers Act and Section 3 of Article XI-A in multiple ways:

*a.* MD Code, Criminal Law, § 4-209(a) preempts the County regulation of the "purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation" of all firearms, but allows the County to regulate such matters "within 100 yards of or in a park, church, school, public building, and other place of public assembly." By redefining a "place of public assembly" to include all places where the public "may assemble" at the present or at some unspecified

24

date in the future and expressly including ordinary private property within that definition, the County has vastly and illegally expanded the scope of its authority provided by Section 4-209 beyond the bounds permitted by the language of Section 4-209. To the extent Bill 4-21 purports to apply to these expanded areas, it is expressly preempted by the preemption provisions of Section 4-209(a).

   *b.* Bill 4-21 bans the "transfer" of all firearms within 100 yards of the County's illegally redefined "place of public assembly." In so far as Bill 4-21's ban on such transfers includes regulated firearms and to the extent Bill 4-21 purports to apply to expanded areas beyond those areas permitted by Section 4-209, that ban is separately preempted by MD Code, Public Safety, § 5-134(a), which provides that "[t]his section supersedes any restriction that a local jurisdiction in the State imposes on the transfer by a private party of a regulated firearm, and the State preempts the right of any local jurisdiction to regulate the transfer of a regulated firearm."

   *c.* Bill 4-21 bans the "sale" of all firearms within 100 yards of the County's illegally redefined "place of public assembly." In so far as Bill 4-21's ban on such sales includes rifles and shotguns, and to the extent Bill 4-21 purports to apply to expanded areas beyond those areas permitted by Section 4-209, that ban is preempted by MD Code, Public Safety, § 5-207(a), which provides that "[t]his section supersedes any restriction that a local jurisdiction in the State imposes on the transfer by a private party of a rifle or shotgun, and the State preempts the right of any local jurisdiction to regulate the transfer of a rifle or shotgun."

   *d.* Bill 4-21 bans the "possession" of all firearms within 100 yards of the County's illegally redefined "place of public assembly." In so far as Bill 4-21's ban on such sales includes regulated firearms, including handguns, and to the extent Bill 4-21 purports to apply to expanded areas beyond those areas permitted by Section 4-209, that ban is preempted by MD Code, Public Safety, § 5-133(a) which provides that "[t]his section supersedes any restriction that a local

25

jurisdiction in the State imposes on the possession by a private party of a regulated firearm, and the State preempts the right of any local jurisdiction to regulate the possession of a regulated firearm.

*e.* Bill 4-21 expressly precludes any person, including a parent, from giving, lending or otherwise transferring to a minor a "ghost gun or a major component of a ghost gun." In so far as this provision regulates the temporary transfer of a regulated firearm, it illegally bans an activity that is expressly permitted by MD Code, Public Safety, § 5-133(d), which allows a minor to transfer and possess a regulated firearm under the active supervision of an adult with a parent's permission. Such transfers often include instruction in the use of firearms. To the extent that Bill 4-21 burdens such instruction, Bill 4-21 is preempted by MD Code, Criminal Law, § 4-209(b)(2), which provides that "[a] county, municipal corporation, or special taxing district may not prohibit the teaching of or training in firearms safety, or other educational or sporting use of the items listed in subsection (a) of this section." These provisions fully apply to instruction in the use of unserialized regulated firearms lawfully manufactured for personal use.

*f.* Bill 4-21 expressly precludes any person, including a parent, from giving, lending or otherwise transferring to a minor a "ghost gun or a major component of a ghost gun," including the slide of a handgun or a barrel of a rifle. MD Code, Criminal Law, § 4-104, expressly permits a minor child under the age of 16 to have access to any firearm if that access "is supervised by an individual at least 18 years old" or if the minor child under the age of 16 has a certificate of firearm and hunter safety issued under § 10-301.1 of the Natural Resources Article. By necessary implication, access to a firearm by a minor child between the ages of 16 and 18 is likewise permitted by Section 4-104 without any restriction. These provisions fully apply to the transfer of unserialized firearms lawfully manufactured by an individual for personal use. Bill 4-21's ban on lending, giving, or transferring a ghost gun to a minor is inconsistent with these provisions.

26

*g.* Bill 4-21 provides that a "person must not store or leave a ghost gun, an undetectable gun, or a major component of a ghost gun or an undetectable gun, in a location that the person knows or should know is accessible to a minor." MD Code, Criminal Law, § 4-104, expressly permits a minor child under the age of 16 to have access to any firearm if that access "is supervised by an individual at least 18 years old" or if the minor child under the age of 16 has a certificate of firearm and hunter safety issued under § 10-301.1 of the Natural Resources Article. By necessary implication, access to a firearm by a minor child between the ages of 16 and 18 is permitted by Section 4-104 without restriction. In so far as these provisions limit access to a ghost guns or components of ghost guns to a minor in a manner that Section 4-104 permits, Bill 4-21 is inconsistent with Section 4-104.

*h.* Bill 4-21 expressly bans the transport, in a vehicle and otherwise, of a "ghost gun," within 100 yards of the County's illegally expanded "place of public assembly." This ban on transport is inconsistent with MD Code, Criminal Law, § 4-203(b)(3), which provides that a person is permitted to transport a handgun "on the person or in a vehicle while the person is transporting the handgun to or from the place of legal purchase or sale, or to or from a bona fide repair shop, or between bona fide residences of the person, or between the bona fide residence and place of business of the person, if the business is operated and owned substantially by the person if each handgun is unloaded and carried in an enclosed case or an enclosed holster." Transport of unloaded rifles and shotguns, including unserialized rifles and shotguns, is permitted under Maryland law without restriction.

*i.* Bill 4-21 expressly bans the "transport," in a vehicle and/or otherwise, of a "ghost gun" within 100 yards of the County's illegally expanded "place of public assembly." This ban is inconsistent with MD Code, Criminal Law, § 4-203(b)(5), which expressly permits "the moving by a bona fide gun collector of part or all of the collector's gun collection from place to place for public or private exhibition if each handgun is unloaded and carried in an enclosed case or an enclosed holster."

Such transport and carriage of unloaded rifles and shotguns, including unserialized rifles and shotguns, are permitted under Maryland law without restriction.

*j.* Bill 4-21 expressly bans the sale, transfer, possession or transport of a firearm, including a "ghost gun" or a "major component" of any firearm, within 100 yards of the County's illegally expanded "place of public assembly." These bans are inconsistent with and preempted by § 6 of Ch. 13, of Session Laws of 1972 of Maryland, which expressly preempts all local law restrictions on the wearing, carrying, or transporting of handguns in the following language:

"SEC. 6. Be it further enacted, That all restrictions imposed by the law, ordinances, or regulations of the political subdivisions on the wearing, carrying, or transporting of handguns are superseded by this Act, and the State of Maryland hereby preempts the right of the political subdivisions to regulate said matters." See *Montgomery County v. Atlantic Guns, Inc*., 302 Md. 540, 543-44, 489 A.2d 1114, 1115-16 (1985).

*k.* Bill 4-21expressly bans the mere possession in the home of a "ghost gun" if the home is within 100 yards of the County's illegally expanded "place of public assembly." As thus defined, this ban on home possession will extend to thousands of homes within 100 yards of Bill 4-21's newly defined and illegally expanded "place of public assembly." This ban on home possession is inconsistent with MD Code, Criminal Law, § 4-203(b)(6), which expressly permits "the wearing, carrying, or transporting of a handgun by a person on real estate that the person owns or leases or where the person resides…." Home possession of unserialized handguns, rifles and shotguns lawfully manufactured for personal use is permitted under Maryland law without restriction.

*l.* Bill 4-21 bans possession of a firearm or ammunition by a business, if the business is within 100 yards of the County's illegally expanded "place of public assembly." However, Bill 4-21 provides that the bans otherwise imposed by Section 57-11 of the County Code do not "apply to

28

the possession of one firearm, and ammunition for the firearm, at a business by either the owner who has a permit to carry the firearm, or one authorized employee of the business who has a permit to carry the firearm." The requirement that the owner must have "a permit to carry the firearm" is inconsistent with MD Code, Criminal Law, § 4-203(b)(6), which permits "the wearing, carrying, or transporting of a handgun by a person . . . within the confines of a business establishment that the person owns or leases." Such persons are not required to possess or obtain a Maryland carry permit. Bill 4-21's limitation to possession of "one" firearm by the owner is likewise inconsistent with Section 4-203(b)(6), as that section imposes no limitation on the number of handguns that may be possessed, worn, carried or transported under this provision of Section 4-203(b)(6). Transport, wear, carriage and possession of rifles and shotguns, including unserialized rifles and shotguns, in a person's business are permitted under Maryland law without restriction.

   *m*. Bill 4-21 bans possession of a firearm or ammunition, if the business is within 100 yards of the County's illegally expanded "place of public assembly." However, Bill 4-21 provides that the bans otherwise imposed by Section 57-11 of the County Code do not "apply to the possession of one firearm, and ammunition for the firearm, at a business by … one authorized employee of the business who has a permit to carry the firearm." The requirement that the "authorized employee" must have "a permit to carry the firearm" is inconsistent with MD Code, Criminal Law, § 4-203(b)(7), which expressly permits "the wearing, carrying, or transporting of a handgun by a supervisory employee: (i) in the course of employment; (ii) within the confines of the business establishment in which the supervisory employee is employed; and (iii) when so authorized by the owner or manager of the business establishment." Such authorized persons covered by Section 4-203(b)(7) are not required to possess or obtain a Maryland carry permit to carry within the business confines of the employer's business. Bill 4-21's limitation to possession of "one" firearm by "one" authorized

29

employee is likewise inconsistent with Section 4-203(b)(7), as that section imposes no limitation on the number of handguns or ammunition that may be possessed, worn, carried or transported under this provision of Section 4-203(b)(7), and imposes no limitation on the number of employees who may be "authorized" by the employer under Section 4-203(b)(7). Transport, wear, carriage and possession of rifles and shotguns, including unserialized rifles and shotguns, by business employees are permitted under Maryland law without restriction.

*n.* Bill 4-21 defines "ghost gun" to include "an unfinished receiver." Section 4-209 permits the County to regulate "ammunition for and components of a handgun, rifle, or shotgun," but it does not empower the County to redefine such "components" to include an "unfinished receiver." An unfinished frame or receiver that is not a "firearm" under Federal law is not a firearm under Maryland law and thus an "unfinished receiver" is fully legal in under Maryland law if such a receiver is sufficiently "unfinished" as to not constitute a "firearm." By defining a "ghost gun" to include any "unfinished receiver," Bill 4-21 has gone beyond the scope allowed for local regulation by Section 4-209 and is thus preempted by Section 4-209 and inconsistent with existing Maryland law.

*o.* Bill 4-21 regulates "ghost guns" in Montgomery County in a multitude of ways that are in direct conflict and inconsistent with the State-wide regulation of unserialized firearms imposed by Senate Bill 387, 2022 Session Laws, Chapter 19 and House Bill 425, 2022 Session Laws, Chapter 18, as more fully set forth in plaintiffs' April 14, 2022, Supplemental Memorandum and in plaintiffs' May 16, 2022, Memorandum In Response To Defendant's Submission Concerning HB 425 and SB 387, as filed with this Court. The April 14, 2022 and May 16, 2022 memoranda are incorporated herein by reference.

30

**COUNT III – VIOLATION OF THE MARYLAND TAKINGS CLAUSE AND**

**DUE PROCESS CLAUSE**

50.     Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this complaint. This Count arises under the Maryland Takings Clause, Article III, § 40 of the Maryland Constitution, and the Due Process Clause, Article 24 of the Maryland Declaration of Rights.

51.     Personal property interests of Maryland residents are protected by both the Maryland Takings Clause, Article III, § 40 of the Maryland Constitution, and the Due Process Clause, Article 24 of the Maryland Declaration of Rights. These provisions are interpreted *in pari materia* with the Fifth Amendment of the United States Constitution, fully encompass personal property and may afford more protection than the Fifth Amendment. *Dua v. Comcast Cable*, 370 Md. 604, 805 A.2d 1061, 1070-72 (2002).

52.     Maryland's Taking Clause and Due Process Clause are violated "[w]henever a property owner is deprived of the beneficial use of his property or restraints are imposed that materially affect the property's value, without legal process or compensation." S*erio v. Baltimore County*, 384 Md. 373, 863 A.2d 952, 967 (2004).

53.     Maryland's Taking Clause and Due Process Clause govern retrospective laws. "Retrospective statutes are those 'acts which operate on transactions which have occurred or rights and obligations which existed before passage of the act." *Muskin v. State Dept. of Assessments and Taxation*, 422 Md. 544, 30 A.3d 962, 969 (2011).

54.     Under the Maryland's Taking Clause and Due Process Clause, "[n]o matter how 'rational' under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking one person's property and giving it to someone else." *Dua v. Comcast Cable of Maryland, Inc*., 370 Md. 604, 623, 805 A.2d 1061 (2002).

55.     The property adversely affected by the provisions of Bill 4-21 constitute protected personal property within the meaning of the Maryland Takings Clause and Due Process Clause as the term property for these purposes "embraces 'everything which has exchangeable value or goes to make up a man's wealth." *Dodds v. Shamer*, 339 Md. 540, 663 A.2d 1318, 1322 (1995). The personal property regulated by Bill 4-21 has exchangeable value. Plaintiffs have vested property rights in the continued possession and use of the property regulated by Bill 4-21.

56.     Bill 4-21 is a retrospective ordinance as it will deprive the plaintiffs of the beneficial use and possession of their lawful vested property rights and property that was lawfully acquired and possessed prior to the County's enactment of Bill 4-21. The restraints and bans that are imposed by Bill 4-21 materially affect the value of this previously lawfully acquired and possessed property, all without legal process or compensation.

57.     Bill 4-21 violates Maryland Takings Clause, Article III, § 40, and the Due Process Clause, Article 24 of the Maryland Declaration of Rights. Under Maryland law, a court may enjoin a statute that violates Article 40 "unless and until condemnation proceedings in accordance with law be had, and just compensation awarded and paid for tendered." *Department of Natural Resources v. Welsh*, 308 Md. 54, 65, 521 A.2d 313, 318 (1986). Plaintiffs are entitled to declaratory and equitable relief for the unconstitutional taking of their vested property rights by Bill 4-21.

## COUNT IV – THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND ARTICLE 24 OF THE MARYLAND DECLARATION OF RIGHTS

58.     Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this complaint. This Count for violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution is brought pursuant to and arises under 42 U.S.C. § 1983. For purposes of this Count, defendant Montgomery County has acted under "color of state law" within the meaning

32

of Section 1983 in enacting Bill 4-21. This Count also arises under Article 24 of the Maryland Declaration of Rights.

59.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Article 24 of the Maryland Declaration of Rights provides that "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

60.     The Due Process Clause of the Fourteenth Amendment prohibits the enactment or enforcement of vague legislation. *Sessions v. Dimaya*, 138 S.Ct. 1204, 1212 (2018) ("the prohibition of vagueness in criminal statutes…is an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law"). A penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "[A] vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

61.     Such a statute need not be vague in all possible applications in order to be void for vagueness. *Johnson v. United States*, 576 U.S. 591, 602 (2015) ("our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp"). "*Johnson* made clear that our decisions 'squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp.'" *Dimaya*, 138 S.Ct. at 1214 n.3. A court "cannot construe a criminal statute on the assumption that the Government will use it responsibly," *United States v. Stevens,* 559 U.S.

33

460, 480 (2010), and "cannot find clarity in a wholly ambiguous statute simply by relying on the benevolence or good faith of those enforcing it." *Wollschlaeger v. Governor, Fla*., 848F.3d 1293, 1322 (11th Cir. 2017) (en banc).

62.   Article 24 of the Maryland Declaration of Rights prohibits the enactment or enforcement of vague legislation. *Galloway v. State*, 365 Md. 599, 614, 781 A.2d 851 (2001) ("The void-for-vagueness doctrine as applied to the analysis of penal statutes requires that the statute be "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties."). Under Article 24, a statute must provide "legally fixed standards and adequate guidelines for police ... and others whose obligation it is to enforce, apply, and administer [it]" and "must eschew arbitrary enforcement in addition to being intelligible to the reasonable person." (Id. at 615).

63.   Bill 4-21 is a penal statute as a violation of Bill 4-21 is a Class A violation that can result in a criminal fine and up to six months imprisonment for each day in which the violation continues. Bill 4-21 contains no *mens rea* requirement of any type and thus these punishments may be imposed without regard to the defendant's intent or knowledge. Under the Due Process Clause of the Fourteenth Amendment, plaintiffs may bring a pre-enforcement action challenging Bill 4-21 as they are not required "to risk criminal prosecution to determine the proper scope of regulation." *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965). Maryland law is in accord for purposes of allowing a pre-enforcement action arising under Article 24 of the Maryland Declaration of Rights. *Pizza di Joey, LLC v. Mayor of Baltimore*, 470 Md. 308, 343-44, 235 A.3d 873 (2020) (collecting cases).

64.   Bill 4-21 criminally punishes conduct that takes place within 100 yards of "a place of public assembly," which is defined as "a place where the public may assemble, whether the place is publicly or privately owned." Such places include, but are not limited to, "a park; place of worship;

34

school; library; recreational facility; hospital; community health center; long-term facility; or multipurpose exhibition facility, such as a fairgrounds or conference center." Bill 4-21 includes within these places "all property associated with the place, such as a parking lot or grounds of a building."

65. Bill 4-21 does not define "public," and that term could arguably be read to include any person who may be present in Montgomery County for any reason. Bill 4-21 does not define "may assemble," and thus that term could be read to include a meeting of two or more people in one place for any reason, including for every-day activities such as lunch. By enlarging the ordinance to reach into places where the public "may" assemble," Bill 4-21 may be arguably read to encompass any location where it is possible for two or more members of the public to meet, either in the present or sometime in the undefined future. Bill 4-21 fails to provide any notice of the actual location of such places and it is impossible to predict or know where two or more members of the "public" "may" meet. These terms could change in their application from day to day. Plaintiffs are thus left to guess at where two or more members of "public" "may assemble."

66. Bill 4-21 bans conduct taking place within 100 yards of a "library," but includes no definition of "library." Bill 4-21 deleted the statute's former definition of "library" as limited to a "public" library and expressly covers places regardless of "whether the place is publicly or privately owned." The term "library" could thus be arguably read to include any "library" of any type or size, regardless of whether the library is in the home or private building if, at any time in the present or the future, two or more members of the undefined public "may" assemble in that library. Plaintiffs are left to guess as to the locations of such "libraries."

67. Bill 4-21 does not define "recreational facility," but it does delete the statute's former limitation to "government-owned or operated" recreational facility and thus the term "recreational facility" could be arguably read to include a backyard swing set or private playground or other place

35

where "recreation" may take place. Bill 4-21 adds to statute's preexisting scope to include a "community health center" and "long-term facility," but provides no definition for either type of facility. Bill 4-21 does not define "school," but does delete the statute's former limitation to "elementary or secondary" school, thereby arguably regulating within 100 yards of any "school" of any size and of any type, private or public, including locations where any organization, of any type, may present instruction of any kind. Plaintiffs are left to guess as to the locations encompassed within the vague use of these terms.

68.     Bill 4-21 does not define "park" but it does delete the ordinance's former definition of "park" as including only a "government owned" park that was "identified by the Maryland-National Capital Park and Planning Commission." The term "park" thus could be arguably read to include any grassy spot, a commercial "park" or a tract of private land attached to a country house if it possible for two or more members of the public to "assemble" in that privately owned "park." Plaintiffs are left to guess as to the locations encompassed within the vague use of "park."

69.     Bill 4-21 defines "ghost gun" to include "an unfinished receiver." Bill 4-21 then purports, to ban the sale, rental, lending or the giving of an "unfinished receiver" to a minor or affording access to an "unfinished receiver" to a minor. Bill 4-21 also bans, within 100 yards of a "place of public assembly," as illegally expanded by Bill 4-21, the sale, transfer, manufacture, assembly, possession or transport of an unfinished receiver, including possession of an unfinished receiver in the home. Bill 4-21 does not define "unfinished receiver." An unfinished receiver that is not a "receiver" under Federal law is not a receiver under Maryland law and thus there is no definition for "unfinished receiver" that could be applied to Bill 4-21. Plaintiffs are left to guess as to the meaning of "unfinished receiver" as used in Bill 4-21.

70.    Bill 4-21 defines "major component" of a firearm to include "the slide or cylinder" and, in the case of a rifle or shotgun, the "barrel." Bill 4-21 then purports, to ban the sale, rental, lending or the giving of a "major component" of a ghost gun to a minor or affording access to a "major component" to a minor. Bill 4-21 also bans, within 100 yards of its illegally defined place of "public assembly," the sale, transfer, possession, or transport of a "major component." A "major component" of a firearm, as defined by Bill 4-21, is not a firearm under Federal or Maryland law and a "major component" as thus defined can be lawfully obtained, transferred and transported without restrictions under Federal and Maryland law. A "major component," as thus defined by Bill 4-21, can be lawfully used to build a fully *serialized* firearm for personal use. There is no practical way to distinguish a "major component" that can be used to build *a non-serialized* firearm from a major component that can be used to build *a serialized* firearm. Bill 4-21 thus arguably can be read as banning the building of *any serialized* firearm, including a firearm that is not a "ghost gun" under the Bill 4-21's own definition of a "ghost gun." Bill 4-21 is self-contradictory, vague and leaves enforcement of this provision to the arbitrary and discriminatory discretion of law enforcement officials.

71.    Bill 4-21's regulation of places where two or more members of the "public" "may" assemble in the present or unknowable future provides no reasonable notice of the actual locations that are criminally regulated by Bill 4-21. Bill 4-21's use of vague and undefined terms deprives ordinary people, including plaintiffs, of the ability to understand what conduct is prohibited and what conduct is not. Bill 4-21's use of vague terms, including its reach into the home and other private property, permits and encourages arbitrary and discriminatory enforcement of its provisions in the sanctity of the home and other places protected by the Fourth Amendment of the United States Constitution. Bill 4-21 provides no standards for enforcement by law enforcement personnel or by other officials of the County who may be charged with its enforcement. Rather, Bill 4-21 hands off

"to unelected prosecutors and judges," the duty of defining criminal behavior thorough *ad hoc* discretionary enforcement decisions. *Davis*, 139 S.Ct. at 2323. Bill 4-21 is accordingly void for vagueness under the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, both facially and as applied to one or more of the individual plaintiffs.

72.     Each of the plaintiffs has engaged and intends to engage in conduct arguably regulated by the unconstitutionally vague provisions of Bill 4-21, including the actual or constructive possession of firearms, major components and "unfinished receivers." Each of the plaintiffs is and has been chilled in the actions they may take by the prospect of enforcement of Bill 4-21's unconstitutionally vague provisions. Each of the plaintiffs and MSI's members are hindered or chilled in their right to live or work in Montgomery County or to otherwise travel through Montgomery County by the threat of arbitrary or discriminatory enforcement of the unconstitutionally vague provisions of Bill 4-21. Each of the plaintiffs has been harmed and is imminently threatened with future harm by the prospect of enforcement of the unconstitutionally vague provisions of Bill 4-21.

73.     Pursuant to 42 U.S.C. § 1983, plaintiffs are entitled to declaratory and equitable relief and compensatory damages, including nominal damages, for the foregoing violations of their Due Process rights under the Fourteenth Amendment. *Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021). Plaintiffs are likewise entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, for the foregoing violations of their Due Process rights under the Fourteenth Amendment. Plaintiffs are entitled to declaratory and equitable relief for their claims arising under Article 24 of the Maryland Declaration of Rights.

## COUNT V -- SECOND AMENDMENT

74.    The Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this complaint.

75.    The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Supreme Court has squarely held that the Second Amendment bestows an individual right to keep and bear arms and that right may be exercised by all responsible, law-abiding Americans. *District of Columbia v. Heller,* 554 U.S. 570 (2008). The Second Amendment is applicable to the States as incorporated through the Due Process Clause of Fourteenth Amendment and is a fundamental right. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

76.    On June 23, 2022, the Supreme Court decided *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). In *Bruen*, the Supreme Court held that the Second Amendment right to bear arms means "a State may not prevent law-abiding citizens from publicly carrying handguns because they have not demonstrated a special need for self-defense." Slip op. at 24-25 n.8. This holding abrogates the holding of the Maryland Court of Appeals in *Williams v. State*, 417 Md. 479, 496, 10 A.3d 1167 (2011), that the Second Amendment does not apply outside the home. Under *Bruen*, "the Second Amendment guarantees a general right to public carry." *Bruen*, slip op. at 24.

77.    The *Bruen* Court struck down as unconstitutional New York's "proper cause" requirement for issuance of a permit to carry a handgun in public. The Court went on to reject the "means-end," two-step, intermediate scrutiny analysis used by the lower courts to sustain gun regulations, holding that "[d]espite the popularity of this two-step approach, it is one step too many." *Bruen*, slip op. at 10. The Court ruled that "the standard for applying the Second Amendment is as

39

follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, slip op. at 15.

78.     The historical analogue required by *Bruen* to justify a firearms regulation looks to 1791 or, at the latest, 1868, when the 14th Amendment was adopted. See *Bruen*, slip op. at 25-26. That is because "'Constitutional rights are enshrined with the scope they were understood to have when the people adopted them.'" *Bruen*, slip op. at 25, quoting *District of Columbia v. Heller*, 554 U.S. 570, 634–635 (2008). 20th century and late 19th century statutes and regulations do "not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, slip op. at 58 n.28. Under *Bruen*, the historical analogue necessary to justify regulation must be "a well-established and representative historical analogue." *Bruen*, slip op. at 21. Historical "outlier" requirements of a few jurisdictions are to be disregarded. *Bruen*, slip op. at 46 n.22, 57, 62. This historical analysis is a legal inquiry and does not require fact-finding by a court. *Bruen*, slip op. at 24-25 n.8.

79.     *Bruen* holds that governments may regulate the public possession of firearms at "legislative assemblies, polling places, and courthouses" and notes that governments may also regulate firearms "in" schools and government buildings. *Bruen*, slip op. at 21, citing *Heller*, 554 U.S. at 599. *Bruen* states that "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." (Id.). The *Bruen* Court rejected New York's "attempt to characterize New York's proper-cause requirement as "a 'sensitive-place' law," ruling that "expanding the category of 'sensitive places' simply to all places of public congregation that are not

40

isolated from law enforcement defines the category of 'sensitive places' far too broadly." Slip op. at 22. As the Court explained, "[p]ut simply, there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." (Id.).

80.     The government bears the burden of proof to show the historical presence of such "well-established and representative" historical analogue regulations. See *Bruen*. at 52 ("we are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").  Public safety concerns are not part of the analysis and cannot be used to justify any statute or regulation that restricts the general right to carry arms in public. Under *Bruen*, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Slip op. at 8. A government "may not simply posit that the regulation promotes an important interest," but rather "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." Id.

81.     The text of the Second Amendment, as construed by the Supreme Court and lower courts, indisputably covers the "possession, sale, transport, and transfer" of firearms and ammunition, as regulated by Bill 4-21 and Section 57-11 of the County Code. Bill 4-21 and County Code Section 57-11 are not supported by any showing that the regulatory burdens on possession, transport, transfer or sale of firearms and/or ammunition that these regulatory provisions inflict are "consistent with this Nation's historical tradition of firearm regulation." Nothing in *Bruen* can be read to allow a State (or a municipality) to regulate or ban firearms at every location where the "public may assemble" regardless of whether the place is "publicly or privately owned," in the manner specified by Bill 4-21.

41

82.     There is no appropriate historical analogue that would permit the County to ban all possession, sale, transfer or transport of firearms or ammunition in or at a church or a park, much less in any "other place of public assembly" as vastly defined by the County to include any place where the public "may assemble" regardless of whether such place is on public or private land. Nor is there any appropriate historical analogue for any such regulation within 100 yards of such locations. Montgomery County is no more a "sensitive place" than is Manhattan.

83.     Under the Second Amendment, the County may presumptively enact otherwise lawful firearms and ammunition regulations for the five, specific locations identified in *Bruen* and *Heller,* *viz,* "in" schools, public buildings, polling places, courthouses and legislative assemblies, to the extent such regulations are otherwise authorized by State law. The County may not enact or enforce any provision of the County Code that operates in such a way as to "deny ordinary citizens their right to public carry." *Bruen*, slip op. at 30 n.9. The County may not enact or enforce firearms or ammunition regulations for any location or place *beyond* the five, specific locations identified in *Bruen* and *Heller, viz,* "in" schools, public buildings, polling places, courthouses and legislative assemblies, without proving that "a well-established and representative historical analogue" for any such regulation exists. The County has not done so with respect to the locations regulated by Bill 4-21 and County Code Section 57-11.

84.     Bill 4-21 and Section 57-11 of the County Code are *facially* unconstitutional under the Second Amendment to the extent that Bill 4-21 and County Code Section 57-11 purport to impose any regulatory restrictions on the possession, transfer, sale or transport of firearms and ammunition in or at any place other than the five specific locations specified in *Bruen* and *Heller*. Bill 4-21 and Section 57-11 of the County Code are *facially* unconstitutional under the Second Amendment to the extent that Bill 4-21 and County Code Section 57-11 purport to impose any regulatory restrictions on

42

the possession, transfer, sale or transport of firearms and ammunition in or at any place within 100 yards of *any* location.

85.    Bill 4-21 and Section 57-11 of the County Code are unconstitutional under the Second Amendment *as applied* to the named plaintiffs and to any member of plaintiff MSI to the extent that Bill 4-21 and Section 57-11 purport to impose any regulatory restrictions on the possession, transfer, sale or transport of firearms or ammunition in or at any place other than the five specific locations specified in *Bruen* and *Heller*. Bill 4-21 and Section 57-11 of the County Code are unconstitutional under the Second Amendment *as applied* to the named plaintiffs and to any member of plaintiff MSI to the extent that Bill 4-21 and County Code Section 57-11 purport to impose any regulatory restrictions on the possession, transfer, sale or transport of firearms or ammunition in or at any place within 100 yards of *any* location.

86.    To the extent that MD Code, Criminal Law, § 4-209(b) purports to authorize County or local regulation for areas other than the five locations, or in any manner or scope beyond the manner or scope permitted in *Heller* and *Bruen*, it is likewise unconstitutional under the Second Amendment and thus cannot legally or constitutionally authorize such local regulation. To the extent that MD Code, Criminal Law, § 4-209(b) purports to authorize County or local regulation on the possession, transfer, sale or transport of firearms or ammunition in or at any place within 100 yards of *any* location it is likewise unconstitutional under the Second Amendment and thus cannot legally or constitutionally authorize any such local regulation.

87.    Pursuant to 42 U.S.C. § 1983, plaintiffs are entitled to declaratory and equitable relief and compensatory damages, including nominal damages, for the foregoing violations of their Second Amendment rights. *Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021).  Plaintiffs are likewise entitled

to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, for the foregoing violations of their Second Amendment rights.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request:

A. That this Court issue a declaratory judgment that Bill 4-21 is not a "local law," and is in conflict and inconsistent with the "General Law" as enacted by the General Assembly is thus unconstitutional under Article XI–A, § 3 and Article XI–A, § 6, of the Maryland Constitution, as more fully set forth in Count I above;

B. That this Court issue a declaratory judgment that Bill 4-21 violates the Express Powers Act, MD Code, Local Government, § 10-206, in that it is in conflict or inconsistent with, and/or preempted by, Maryland statutes, as more fully set forth in Count II, above;

C. That this Court issue a declaratory judgment that Bill 4-21 violates the Maryland Takings Clause, Article III § 40, and the Due Process Clause of Article 24 of the Maryland Declaration of Rights, in so far as it deprives plaintiffs and MSI members of the beneficial use of their lawfully acquired, vested property rights, as more fully set forth in Count III above, enjoin enforcement of Bill 4-21 until compensation is paid, calculate the amount of compensation due, and order the County to pay such compensation;

D. That this Court issue a declaratory judgment that Bill 4-21 is void for vagueness under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights, as more fully set forth in Count IV above;

E.  That this Court issue a declaratory judgment that Bill 4-21 and County Code Section 57-11 are unconstitutional under the Second Amendment, as more fully set forth in Count V above.

44

F. That this Court find that all plaintiffs have been and/or will be irreparably harmed by the conduct of defendant challenged in Counts I, II, III, IV and V, and enter a preliminary and permanent injunction barring the County from enforcing Bill 4-21 and County Code Section 57-11 against plaintiffs and the members of MSI;

G. That this Court award plaintiffs compensatory damages for the County's violations of the plaintiffs' Fourteenth Amendment constitutional rights, including without limitation, nominal damages, as authorized by 42 U.S.C. § 1983;

H. That this Court award attorney's fees and costs against defendant, as authorized by 42 U.S.C. § 1988;

I. That this Court award the plaintiffs such other and further relief as in law and justice they may be entitled to receive.

### JURY DEMAND

COME NOW the Plaintiffs, by and through counsel, demand a trial by jury as to all issues triable by jury in this matter.

Respectfully submitted,

*Mark W. Pennak*

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd
Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
MD Atty No. 1905150005

Date: July 22, 2022                    *Counsel for Plaintiffs*

45