## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| **MARYLAND SHALL ISSUE, INC.,** *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | **No. 23-1719** |
| **v.** | ) ) | |
| **MONTGOMERY COUNTY, MD,** | ) ) ) | |
| *Defendant*. | | |

### REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A RULE 8 INJUNCTION PENDING APPEAL

Pursuant to Rule 8(a)(1)(C) and Rule 27 of the Federal Rules of Appellate Procedure, Plaintiffs respectfully submit this Reply in support of their Emergency Motion for a Rule 8 Injunction Pending Appeal, filed July 17, 2023, and in response to the Opposition filed on September 20, 2023, by the appellee, Montgomery County, Maryland ("the County"). For the reasons set forth below and in the original motion and reply, Plaintiffs' request for emergency relief should be granted.

### ARGUMENT

The County's arguments filed in response to Plaintiffs' renewed motion for a Rule 8 injunction pending appeal largely parrot the arguments the County previously advanced on Plaintiffs' original motion for an junction pending appeal as filed with this Court. ECF # 10, filed July 17, 2023. Plaintiffs' previously filed reply (ECF #

18, filed July 26, 2023), and opposition to the County's motion to strike (ECF # 17, filed July 26, 2023), refuted those contentions and those pleadings are incorporated herein by reference. Plaintiffs likewise incorporate by reference their response, filed herewith, to the County's renewed Motion to Strike, ECF # 43, filed Sept. 20, 2023. This Reply is thus limited to addressing a few points raised by the County.

## I.    RULE 8 ALLOWS THE SUBMISSION OF EVIDENCE

The County previously objected to Plaintiffs' submission of the declarations of Daniel Carlin-Weber and Allan Barall on grounds that these declarations had not been filed in district court. Likewise, the County asserted that Plaintiffs did not comply with the district court's case management order because the Plaintiffs' motion is broader than merely the 100-yard exclusionary zones imposed by County Code Section 57-11(a). But, after prompting from this Court in its August 25, 2023, order, the district court **finally** allowed Plaintiffs to file a Rule 8 motion in district court. These same declarations were filed with that motion. These County objections are thus moot.

More generally, the County made the **same** objections in district court that the County raises in its latest Motion and the district court simply ignored them, undoubtedly because the objections are without merit for the reasons previously set forth in Plaintiffs' Reply (ECF # 26, filed July 26, 2023) and opposition (ECF # 15, filed July 24, 2023) to the County's motion to strike filed with this Court. EFC # 14,

2

filed July 24, 2023. Once again, the County fails to grasp that a Rule 8 motion filed with this Court is reviewed *de novo* because such a motion is addressed to this Court's equitable discretion *ab initio* and is not an "appeal" from any district court order. *Priorities USA v. Nessel*, 978 F.3d 976, 982 (6th Cir. 2020), *Does 1-3 v. Mills,* 39 F.4th 20, 24 (1st Cir. 2022). Rule 8 thus expressly allows this Court to review new declarations and evidence *in addition to* "relevant parts of the record." See Rule 8(a)(2)(b)(ii),(iii).

The County once again argues that Plaintiffs are not entitled to seek relief as to County Code Section 57-10 but does not dispute Plaintiffs' previously made point that all of Chapter 57, as amended by Bill 4-21 and Bill 21-22E, is challenged in Count VII of the Second Amended Complaint. See P.Reply ECF # 18 at 3-4, filed July 26, 2023. Section 57-10 broadly bans the carry of a firearm on the person or in a vehicle, county-wide, and those bans are not limited to any 100-yard zones. The bans imposed by Section 57-10 fall within these allegations because Section 57-10 is part of "Chapter 57," and the application of Section 57-10 was dramatically altered by the enactment of Bill 4-21 and Bill 21-22E. That is because Section 57-10 contains an exception for persons on a "lawful mission" and Bill 21-22E eliminated the ability of a permit holder to be on a "lawful mission" by repealing the prior exception for permit holders. *Id*. at 3-6. The County's argument with respect to Section 57-10 is thus much ado about nothing. *Id.* at 4.

3

## II.    CHAPTER 57 "EFFECTIVELY" BANS CARRY COUNTY-WIDE

The County contends once again that plaintiffs "overstate grossly the reach of the County's Firearms Law" (County Resp. at 11), and once again that argument is refuted by Plaintiffs' previously filed Reply. P.Reply at 6, ECF # 18, filed July 26, 2023. The County believes that it has complied with *NYSRPA v. Bruen*, 142 S.Ct. 2111 (2022), by allowing possession in the home and in a business and by security guards and retired law enforcement officers and transport in a vehicle if it is unloaded and locked in case separate from the ammunition. County Resp. at 11-12. That assertion is facially ridiculous. As explained, the County has effectively banned possession and transport of a loaded firearm by permit holders county-wide through its use of thousands of often interlocking 100-yard exclusionary zones. The County does not and cannot reasonably dispute that these zones have that effect. The County may not ban carry through *ipse dixit* edicts. *Range v. Att'y Gen.*, 69 F.4th 96, 105 (3d Cir. 2023) (en banc) ("[H]istorical restrictions on firearms in 'sensitive places' do not empower legislatures to designate any place 'sensitive' and then ban firearms there[.]"), citing *Bruen*, 142 S.Ct. at 2134.

The County essentially refiles its brief on the merits, including the exhibits, and focuses on the same scattered late 19th and 20th century statutes and a few local ordinances identified by the district court. But like the district court, the County ignores the county-wide effect created by the thousands of interlocking 100-yard

4

exclusionary zones that effectively ban carry by permit holders throughout the County. *Bruen* held that "there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place'" as that "would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense." 142 S.Ct. at 2134. The island of Manhattan occupies approximately 23 square miles. Montgomery County occupies over 506 square miles. Carlin-Weber Decl. at 3. If New York may not "effectively" ban carry on the island of Manhattan or in cities, the County may not "effectively" ban carry throughout the County. *Bruen* held that there is a "general right" to carry in public, 142 S.Ct. at 2135, 2134, 2135, but the County has extinguished that right, exactly as its officials intended.

Nothing in the few 19th and 20th century analogues cited by the County remotely had any such county-wide effect. Thus, this Court, in deciding Plaintiffs' motion for an injunction pending appeal, need not parse these few analogues to conclude that there is no historical analogue, either before or after 1791 or 1868 that would allow a government to effectively ban a permit holder from exercising Second Amendment rights, county-wide. The effect of these supposed analogues on the right to carry in particular places should be left to the merits panel to decide on this appeal.

## III.   PLACES OF WORSHIP

The only specific location for which relief is sought on this motion is places of worship in and around which the County has totally banned firearms. As to those locations, the County offers little in response to the point that Plaintiffs have a strong likelihood of success on the merits because the district court erroneously held (slip op. at 18-19) that late 19th and 20th century supposed analogues are "more probative" than analogues from the time the Second Amendment was adopted by "the people" in 1791. The County does not dispute that there is **no** analogue for such a ban from the Founding era. Carry at churches is fully consistent with the historical tradition at the time of the Founding. See *Koons v. Platkin*, No. 22-CV-7464, 2023 WL 3478604, at **72–73 (D.N.J. May 16, 2023). The County ignores that tradition.

The County does not address, much less dispute, that the only authority on which was the district court relied in holding that late 19th and 20th century analogues were "more probative," *NRA v. Bondi*, 61 F.4th 1317, 1322 (11th Cir. 2023), was vacated and withdrawn on a grant of rehearing en banc shortly after the district court issued its July 6, 2023, order. *NRA v. Bondi*, 72 F.4th 1346 (11th Cir. July 14, 2023). Nor does the County dispute that the Second Circuit has, on a Rule 8 motion, expressly allowed carry at places of worship by "persons who have been tasked with the duty to keep the peace at places of worship." P.Motion at 15, ECF 10-1, filed July 17, 2023. The County does not dispute that Plaintiffs' declarants

provided such security prior to enactment of Bill 21-22E by the County. Id. at 17-18. Plaintiffs seek only to restore that *status quo ante* while the case is on appeal.

The County also once again ignores that the now-vacated panel holding in *Bondi* conflicted with this Court's decision in *Hirschfeld v. ATF*, 5 F.4th 407, 419 (4th Cir. 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021), which held that 1791 is the "'critical year'" for conducting the historical inquiry required under the Second Amendment. Quoting *Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012). While *Hirschfeld* involved a challenge to a federal statute, its analysis is fully applicable to State law challenges because *Bruen* held that the Second Amendment has "the same scope" as against the States. 142 S.Ct. at 2137. *Hirschfeld* remains fully persuasive precedent.[1]

The County likewise ignores very recent court of appeals precedent from the 5th, 7th and 9th Circuits, cited in Plaintiffs' renewed motion, all of which looked to 1791 as the relevant time period. Renewed Motion at 4-5, ECF # 38-1 (filed Sept.

---

[1] *Hirschfeld* involved the federal ban on handgun sales to 18-to-20-year-olds and the decision was vacated as moot when the plaintiffs no longer fell within that age range. A decision vacated for such non-merit reasons, while non-binding, is still persuasive. See, e.g., *Rosenbloom v. Pyott*, 765 F.3d 1137, 1154 n.14 (9th Cir. 2014) ("decisions vacated for reasons unrelated to the merits may be considered for the persuasive of their reasoning"). In contrast, rehearing was sought and granted in *Bondi* **because** of the panel's holding that late 19th and early 20th century analogues were "more probative." See Pet. for Rehearing En Banc, *NRA v. Bondi*, No. 21-12314 ECF # 68-1, filed March 30, 2023. Any persuasive value of the panel decision in *Bondi* is thus much diminished, if not eliminated.

12, 2023). See, e.g., *United States v. Daniels*, 77 F.4th 337, 347 (5th Cir. 2023) ("The *Bruen* Court doubted that three colonial-era laws could suffice to show a tradition, let alone three laws passed eighty to ninety years after the Second Amendment was ratified."); *Wolford v. Lopez*, 2023 WL 5043805 at *22-*24 (D. Hawaii Aug. 8, 2023) ("respectfully disagree[ing]" with the district court's reliance on late 19th and 20th century statutes and finding the court's approach "unpersuasive"). These considerations suggest that Plaintiffs have a strong likelihood of success on appeal and thus militate in favor or returning the parties to the *status quo ante* pending appeal.

## IV.    THE EQUITIES FAVOR PLAINTIFFS

The County claims that Plaintiffs are not suffering irreparable harm because Bill 21-22E "has been in effect since November 28, 2022, for over ten months" and thus there is no "exigency or immediate harm to Plaintiffs under these circumstances." County Resp. at 21. That contention ignores the well-established principle that the loss of a constitutional right for "even minimal periods of time" constitutes irreparable harm. *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) ("It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'"), quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). See also *Leaders of a Beautiful Struggle v. Baltimore Police Department*, 12 F.4th 330,

346 (4th Cir. 2021) (*en banc*) (reversing a denial of a preliminary injunction and holding that "[b]ecause there is a likely constitutional violation, the irreparable harm factor is satisfied," citing and quoting *Mills*). Indeed, not only have Plaintiffs been irreparably harmed every day during the last ten months while the emergency motion for a TRO and a preliminary injunction was pending in district court, but Plaintiffs are also suffering continuing and ongoing harm every day that the County's law remains in effect. The district court's extraordinary delay is not a reason to allow the irreparable harm to continue unabated for many more months (perhaps years) while the case is on appeal.

In denying the motion for preliminary relief, the district court ruled that Plaintiffs had not shown "a specific incident of violence for which a firearm would be necessary for self-defense is imminent or likely." Slip op. 39. But "[t]he right to 'keep and bear Arms' historically encompassed an "individual right to possess and carry weapons in case of confrontation.'" *Bruen* 142 S.Ct. at 2176 (emphasis added) (citation omitted). The point of carry "in case of confrontation" is lost if Plaintiffs must wait until a deadly threat is "imminent or likely." The Supreme Court disallowed that sort of reasoning in *Bruen* in rejecting New York's argument the government should be allowed to "condition handgun carrying in areas 'frequented

by the general public' on a showing of a nonspeculative need for armed self-defense in those areas.'" *Id*. at 2135.

Beyond conclusory assertions and appeals to emotion (County Resp. at 21-22), the County offers no coherent response to Plaintiffs' argument that the County and the public interest are not harmed by the relief sought here. As this Court stated *en banc* in *Leaders of a Beautiful Struggle*, "the balance of the equities favors preliminary relief because '[our] precedent counsels that 'a state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction.'" 12 F.4th at 346, quoting *Centro Tepeyac v. Montgomery Co.,* 722 F.3d 184, 191 (2013) (bracket's the Court's). Second Amendment rights are entitled to the same consideration. See *Bruen*, 142 S.Ct. at 2156 ("The constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'"). (Citation omitted). The district court plainly erred in requiring any additional showing.

The County argues ( County Resp. at 22) that violent crime is on the increase in Montgomery County and indeed it is. See, e.g., https://bit.ly/3Ztbob4. But the County does not dispute that trained and thoroughly vetted permit holders are not even remotely the reason for the surge in violent crime in the County. See *Wolford*,

10

2023 WL 5043805 at *31-*32 ("Although it is possible post-*Bruen* that more conceal carry permits are eventually issued in Hawai'i, that alone does not negate Plaintiffs' position that the vast majority of conceal carry permit holders are law-abiding."). As Justice Alito pointed out in his *Bruen* concurrence, the reality of violent crime is a vitally important reason to protect the right of armed self-defense, **not** a reason to eliminate it, as the County has done here. See 142 S.Ct. at 2158-59 (Alito, J., concurring) ("Ordinary citizens frequently use firearms to protect themselves from criminal attack."). *Bruen* abolished interest balancing and thus the County's rote and unsupported invocation of "public safety" no longer suffice. *Wolford*, 2023 WL 5043805 at *32 (finding that Hawaii's professed public safety concerns insufficient especially where "the challenged provisions only affect those individuals who have been granted a permit to carry firearms"). The County has stripped away the right of self-defense from permit holders who seek to protect themselves, their families, and their places of worship from murderous rampage. The need for an injunction pending appeal returning the parties to the *status quo ante* could not be more urgent.

The County also ignores that the Maryland General Assembly's assessment of the "public interest" concerning carry by permit holders as expressed in Senate Bill 1 is far different than that of the County's. P.Mot. at 21, ECF # 10-1, filed July 17, 2023, citing 2023 Maryland Session Laws Ch. 680. That State-wide legislation

does not impose any buffer zones and does not designate places of worship as a sensitive area. The Maryland Constitution, Article XI-A, § 3, commands that "in case of any conflict between said local law and any Public General Law now or hereafter enacted the Public General Law *shall control*." (Emphasis added). See *Boulden v. Mayor and Com'rs of Town of Elkton*, 311 Md. 411, 415, 535 A.2d 477 (1988). The General Assembly's assessment of the public interest trumps that of the County. This Court should not second-guess that assessment in favor of outlier ordinances of a subordinate locality whose political leaders have chosen to defy the Supreme Court.

## CONCLUSION

The motion for an injunction pending appeal should be granted.

Respectfully submitted,

/s/ Matthew Larosiere

_____

Matthew Larosiere
The Law Office of Matthew Larosiere
6964 Houlton Cir
Lake Worth, FL 33467
larosieremm@gmail.com
Phone: (561) 452-7575
*Counsel for Plaintiffs*

/s/ Mark W. Pennak

_____

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd, Ste, C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
*Counsel for Plaintiffs*

Dated: September 21, 2023

12

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 27(d) and Rule 32(g)(1) of the Federal Rules of Appellate Procedure, the undersigned counsel here certifies that the forgoing Reply In Support Of Plaintiffs' Emergency Motion For A Rule 8 Injunction Pending Appeal" contains 2808 words, not counting those items which may be excluded under Rule 32(f), and uses a 14 point, Times New Roman proportional font.

*/s/ Mark W. Pennak*

Mark W. Pennak,
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on September 21, 2023, the forgoing "Reply In Support Of Plaintiffs' Emergency Motion For A Rule 8 Injunction Pending Appeal" was served on all counsel of record via ECF service:

*s/ Mark W. Pennak*

_____
MARK W. PENNAK
*Counsel for Plaintiffs-Appellants*

Dated: September 21, 2023

14