IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) ) |
| MONTGOMERY COUNTY, MD, | ) ) ) |
| *Defendant*. | |

No. 23-1719

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE

Pursuant to Rule 27 of the Federal Rules of Appellate Procedure, plaintiffs respectfully submit this Memorandum in opposition to appellee's motion to strike, filed on September 20, 2023, by the appellee, Montgomery County, Maryland ("the County"). For the reasons set forth below, the County's motion to strike should be denied.

### ARGUMENT

**A. Introduction**

The County's motion to strike merely parrot the same arguments the County previously advanced in its original motion to strike. See County Motion to Strike, ECF # 14, filed July 24, 2023. Plaintiffs' opposition to the County's motion to strike (ECF # 17, filed July 26, 2023), refuted those contentions and that opposition is

1

incorporated herein by reference. This Court denied the County's original motion to strike as "moot" when it denied Plaintiffs' original motion for an injunction pending appeal without prejudice in an order filed August 3, 2023. ECF # 21. Plaintiffs sought clarification as to that order and, in the alternative, resubmitted its motion for an injunction pending appeal in a motion filed August 4, 2023. ECF # 22. That motion pointed out that the district court had not acted on Plaintiffs' request to file a Rule 8 motion in that court.

In an order filed August 25, 2023, this Court deferred consideration of Plaintiffs' motion for clarification and alternative motion to accord the Plaintiffs an opportunity to seek clarification from the district court. ECF # 31. Plaintiffs sought clarification from the district court which then promptly allowed Plaintiffs to file a motion for a stay pending appeal, which Plaintiffs then filed on August 30, 2023. In an order filed September 12, 2023, the district court denied Plaintiffs' motion for Rule 8 relief for the same reasons it denied Plaintiffs' motion for a preliminary injunction. On the same day, Plaintiffs then filed their renewed motion for an injunction pending appeal with this Court. ECF # 38-1. The County has now renewed its original motion to strike.

### B. A Rule 8 Motion Is Distinct From The Merits

The County asserts (County Mot. at 3) that Plaintiffs improperly submitted the declarations of Daniel Carlin-Weber and Allan Barall because these declarations

2

were not filed with the motion for a preliminary injunction. But as explained in Plaintiffs' motion (but ignored by the County), a Rule 8 motion is addressed to this Court's equitable discretion on the entirely separate issue of whether an injunction should issue pending appeal. As stated in *Priorities USA v. Nessel*, 978 F.3d 976, 982 (6th Cir. 2020), "[w]e consider the [Rule 8] motion *de novo* because 'we are not reviewing any district court decision or order.'" (Citation omitted). The Court may, of course, consider that the underlying appeal is from a denial of a preliminary injunction, *Does 1-3 v. Mills,* 39 F.4th 20, 24 (1st Cir. 2022), but that does not change the *de novo* standard or preclude new evidence on the motion. *Id*. This Rule 8 "standard 'does not require the trial court to change its mind or conclude that its determination on the merits was erroneous.'" *Fraser v. ATF*, No. 3:22-CV-410, 2023 WL 5617894 at *2 (E.D.Va. Aug. 30, 2023), quoting *United States v. Fourteen Various Firearms*, 897 F.Supp. 271, 273 (E.D.Va. 1995) (citation and quotation marks omitted).

Rule 8(a)(2)(B) requires that "[t]he motion must also include (ii) originals or copies *of affidavits or other sworn statements supporting facts subject to dispute*; **and** (iii) relevant parts of the record." (Emphasis added). The "supporting" material for a Rule 8 motion filed with the court of appeals is thus **not** limited to "relevant parts of the record." In response, the County ignores *Priorities USA* and *Does 1-3,* cited by Plaintiffs, and argues (County Mot. at 11), that any reading of Rule 8 as

3

allowing additional evidence is "flawed" and "novel." But that's just wrong. Not only is Plaintiffs' reading of Rule 8 supported by the plain text of Rule 8 and the case law, cited above, but it is perfectly consistent with the holdings in *Priorities USA* and in *Does 1-3* that a Rule 8 motion is separate and distinct from the underlying merits and thus a motion for Rule 8 relief is considered *de novo*.

The County cites *dmarcian, Inc. v. dmarcian Europe BV*, No. 21-cv-67, 2021 WL 3561182 (W.D.N.C. Aug. 11, 2021), as support for its contention that Plaintiffs are "backfilling" the record. County Motion at 6. But the district court there mistakenly believed that it lacked jurisdiction to consider Rule 8 evidence where a notice of appeal had been filed. 2021 WL 3561182 at *3. While a notice of appeal generally does divest a district court of jurisdiction over any further review of the merits, see *Coinbase, Inc. v. Bielski*, 143 S.Ct. 1915, 1919 (2023), Rule 8 motions address a separate matter (whether an injunction pending appeal should be issued) and thus are not based on the merits. After all, the Rule expressly requires a party seeking such relief to file first in the district court. See *North Central Truck Lines, Inc. v. United States*, 384 F.Supp. 1188, 1189 n.1 (W.D. Mo. 1974) (3-judge court), citing *Long v. Robinson,* 432 F.2d 977, 979 (4th Cir. 1970).

Obviously, a district court is not divested of its authority to rule on a motion that must be filed in district court. Indeed, the court's holding in *dmarcian* that it lacked jurisdiction once a notice of appeal was filed is at odds with the court's further

4

holding that it would consider new evidence if "it was not available to the parties for presentation … at the time of the preliminary injunction hearing." *dmarcian*, 2021 WL 3561182, at *3. If a court truly lacks "jurisdiction" to consider evidence on a Rule 8 motion, then that jurisdictional disability would apply to bar any consideration of new evidence, regardless of the reason. *dmarcian* did not address, much less apply, the language of Rule 8, noted above, that expressly contemplates new evidence beyond the existing record.

This Court's August 25, 2023, Order directing Plaintiffs to seek clarification from the district court made good sense. That Order was obviously intended to accord the district court the opportunity to adjudicate Plaintiffs' motion and consider these additional materials prior to consideration by this Court. In *Ruiz v. Estelle*, 650 F.2d 555, 567 (5th Cir. 1981), the court of appeals applied Rule 8 to hold "the district court should have the opportunity to rule on the reasons and evidence presented in support of a stay, unless it clearly appears that further arguments in support of the stay would be pointless." The court then ruled that the Rule 8 movant in that case was "entitled to present" additional evidence to the district court in "a new motion to stay" an injunction pending appeal. Id. at 577.

Just as in *Ruiz*, this Court obviously desired the benefit of the district court's consideration of Plaintiffs' evidence prior to ruling on the Rule 8 motion on which this Court "deferred" a ruling in its August 25, 2023, Order. See Rule 8(a)(2)(A)(ii)

5

(requiring that a Rule 8 motion filed in the court of appeals "state any reasons given by the district court for its action"). The district court, in its order denying Rule 8 relief, did not strike or exclude this evidence, even though the County vigorously argued in district court that the evidence should be struck, just as it argues here. The district court plainly rejected the County's objections to the evidence. *Villacci v. United States*, 7 F.3d 219 (Table), 1993 WL 382183 at *1 (1st Cir. Sept. 29, 1993) ("Nor will we presume that the district court declined to consider the relevant ... evidence contained in the record.'") (citation omitted). This Court should reject the County's objections as well.

The County contends (County Mot. at 5) that Plaintiffs could have submitted the Declarations with Plaintiffs' emergency motion for a TRO and a preliminary injunction, filed December 6, 2022 (ECF # 52). Yet, the motion for a preliminary injunction was filed approximately one week after the November 28, 2022, enactment of Bill 21-22E by the County, and only then after the district court had granted leave to do so. Plaintiffs did not then have the opportunity or the resources to investigate and apply the techniques publicly available to produce such a declaration at the time the motion for emergency relief was filed. Nor did Plaintiffs see any need to do so as the breathtaking scope of Chapter 57's bans was (and is) self-evident. Only after the district court inexplicably chose to ignore the obvious did Plaintiffs undertake the effort to render this information into graphical form. In

6

any event, the reasons are irrelevant. As explained, Plaintiffs are entitled to submit new materials in support of a Rule 8 motion under the express terms of the Rule and as permitted by the case law. The graphics just make it considerably harder to ignore what has always been apparent.

The provision of new materials under the circumstances that necessitate a Rule 8 motion is an unavoidable practical reality obviously contemplated by the Rule itself. For example, in *Mock v. Garland*, No. 23-cv-95, 2023 WL 2711630 (N.D. Texas March 31, 2023), the plaintiffs moved for—and were granted—an emergency injunction pending appeal, even though the district court had denied the plaintiffs' motion for a preliminary injunction. *Mock v. Garland*, No. 23-10319, ECF #52-2 (5th Cir. May 23, 2023). See also *Mock v. Garland,* 75 F.4th 563, 576-77 (5th Cir. 2023). The Rule 8 motion in *Mock* was supported by arguments and assertions that relied on specific facts that were "subject to dispute" within the meaning of Rule 8. *See id.*, ECF # 25-1. New evidence under Rule 8 is simply not unusual.

### C. The Carlin-Weber Declaration

The Carlin-Weber Declaration reflects an indisputable reality that Bill 21-22E effectively prevents a permit holder from carrying a loaded firearm in and through the County. Indeed, the County has never seriously disputed that point and does not dispute it in merits brief, filed on September 19, 2023. The County Bill 21-22E creates literally thousands of 100-yard exclusionary zones, totaling many thousands

7

of acres, around the "places of public assembly" defined by Section 57-1 of Chapter 57 of the County Code. The County has **not** disputed the numbers and locations covered by the County's 100-yard exclusionary zones. All the Carlin-Weber Declaration does is create graphic images of that reality with additional details to illustrate the point. The argument would be the same even without the Declaration. While the graphic is new, Plaintiffs have consistently argued the same point throughout this litigation, which the County does not dispute.

The County decries the Carlin-Weber Declaration as "the most egregious example of Plaintiffs' attempt to offer supplemental evidence." County Mot. at 5. As Plaintiffs have demonstrated, new evidence—specifically declarations—is contemplated by Rule 8. While the County expresses umbrage at the length of the Declaration, it points to no rule that the Declaration violates. Curiously, the County objects that "[t]he Methodology Section of [the] Declaration is five pages long." County Mot. at 6. Yet, the methodology was purposefully laid out in the Declaration in such detail so that any reasonably capable person with a modicum of computer experience could duplicate those steps and come to the same result: a map showing the areas where the County criminalizes carry by permit holders. Mr. Carlin-Weber did all the work so that the Declaration's maps can easily be replicated.

The County does not dispute that the Declaration creates maps generated solely from identified publicly available data used by the State and the public alike

8

every day. These are "legislative facts" and the use of "legislative facts" by courts and parties is as common as rain during the monsoon season. *See, e.g., United States v. Perkins*, 67 F.4th 583, 640 (4th Cir. 2023); *Teter v. Lopez*, 76 F.4th 938, 946-47 (9th Cir. 2023); *United States v. Hunt*, 63 F.4th 1229, 1250-51 (10th Cir. 2023); *Hirschfeld v. ATF*, 5 F.4th 407, 449 (4th Cir. 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021). The County itself engages in such use in pointing out crime statistics in the County's Opposition to Plaintiffs' Rule 8 motion in this Court. See ECF # 42-2 at 21-22, filed Sept. 20, 2023.

The County does not assert that it is unable to follow the methodology set out in the Declaration or that the required minimal ability is somehow beyond the grasp of a unit of local government that has a 6.3-billion-dollar budget for fiscal 2023. See https://bit.ly/45IoZxp. The County does not dispute the Declaration's factual accuracy in identifying the locations at which firearms are banned, even though it has now possessed the Declaration since July 17, 2023, when it was first filed with this Court. The County thus has had a lengthy opportunity to examine the Declaration in depth. By failing to contest the facts set forth in the Declaration, the County has conceded them.

The County asserts that Mr. Carlin-Weber must be viewed as an expert (County Mot. at 6), but any reasonably computer-literate layperson can perform the tasks set forth in the Declaration if they take the time. Doing so does not take

9

"scientific, technical or other specialized knowledge" of the type covered by Federal Rule of Evidence 702(a). The Declaration sets forth legislative facts, not opinions (expert or otherwise). The term "query" as used in the Declaration is a simple request for information from a database. A person need not be an expert to perform a "query." Every user of PACER, Westlaw or LEXIS poses a "query" when that user performs a search on a legal database. The databases and tools used by the Declaration are identified and are publicly available. The County does not argue otherwise.

But even assuming *arguendo* that Mr. Carlin-Weber is an "expert" of sorts (he is undoubtedly computer-literate), the County does not fault any aspect of the methodology employed in the Declaration. Under *Daubert*, a court acts as a gatekeeper but in performing that role, "the focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993). Thus, "[t]o determine whether an opinion of an expert witness satisfies *Daubert* scrutiny, courts may not evaluate the expert witness' conclusion itself, but only the opinion's underlying methodology." *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 195 (4th Cir. 2017). The County understandably does not like Mr. Carlin-Weber's conclusions, but it has not challenged his methodology and thus has forfeited any such challenge.

The County complains that the maps do not take into account that possession and carry is allowed by the County's law in the home and, more limitedly, in businesses under the exceptions for these locations set forth in Section 57-11(b) of the County Code. County Mot. at 7. But the limited exceptions for businesses in Section 57-11(b) apply only to "one" gun for the owner and "one" employee, each of whom must have a carry permit. The County's law thus bars every other permit holder (the other individual Plaintiffs and MSI members with permits) from carrying in such locations if they happen to fall within one of the 100-yard exclusionary zones. Similarly, the exceptions for the home and businesses are for the **interior** of these locations, and thus even if one takes those sites into account, it will not affect the scope or reach of the thousands of 100-yard exclusionary zones created by Bill 21-22E **around** locations in which firearms are banned. These locations where limited carry is permitted merely create small holes in the 100-yard prohibited zones associated with privately or publicly owned "places of public assembly."

As Plaintiffs explain in their motion (P.Mot. at 11-12, ECF # 10-1, filed July 17, 2023), the homes of several of the Plaintiffs fall within one or more of these exclusionary zones and thus these Plaintiffs are effectively barred from using their permits to step outside their homes while armed. The physical address of each such plaintiff is on the face of the Verified Second Amended Complaint and inputting that address into Google Maps will fully identify the banned location adjacent to their

11

homes. The Second Supplemental Declaration of Allan Barall, who is also effectively confined to his home, shows how to do so. It is that easy. The County does not dispute this point.

Contrary to the County's contention (County Mot. at 6), the Declaration, with its maps and references, does not contain an **iota** of legal argument or any legal conclusion. The County may not enact a strict liability law that provides it with the means to criminally charge permit holders for straying into a 100-yard exclusionary zone and, at the same time, object to maps that detail the all-encompassing and legally absurd scope of such zones. The maps are simply a graphic rendition of the underlying data that the County has not disputed. That math and the locations of these exclusionary zones make clear that the County's law effectively bans carry throughout the County by banning carry on every thoroughfare and many sideroads, in every downtown and in many rural areas. It is legally impossible for a permit holder to enter or exit the County while armed. The Carlin-Weber Declaration merely graphically identifies the locations of the exclusionary zones in which carry is indisputably banned by the County's law.

Indeed, while the County complains about the Declaration, it does not dispute the thousands of specific locations at which possession and transport of firearms are banned, as otherwise identified by Plaintiffs in their August 30, 2023, Rule 8 motion filed in district court. The Declaration aside, the public data makes clear the banned

12

areas are vast in number. The Maryland State Department of Education website lists **1,218** childcare facilities in Montgomery County. See Child Care Inspection Search Results, MD. STATE DEP'T OF EDUC. (last visited Aug. 21, 2023), https://bit.ly/43XOwRq. According to GIS Open Data official sources, there are **1,262** public bikeways, https://bit.ly/43XYB0M, **605** houses of worship, https://bit.ly/3OLbfvG, **693** public parks, https://bit.ly/3qjHLfb, **260** private schools, https://bit.ly/3rWuj1g, **136** public elementary schools, https://bit.ly/3DKgyoV, **40** public middle schools, https://bit.ly/3KsT8bF, **25** high schools, https://bit.ly/3DJZjnK, **42** public recreation centers, https://bit.ly/457wXzA, **24** public libraries, https://bit.ly/45cUwab, **17** hospitals, https://bit.ly/3Olu9Tw, **14** County health centers, https://bit.ly/3OINW5I and **11** colleges and universities, https://bit.ly/3KvzjQK.

GIS Open Data also lists **106** local governments, https://bit.ly/47xT18H, **40** Post Offices, https://bit.ly/3DI3Ert, **38** fire stations, https://bit.ly/3YjY08F, **13** Metro stations, https://bit.ly/3OlQNjH, and **11** MARC commuter train locations, https://bit.ly/451ctsz. All these links show the address of each location and thus permit a 100-yard boundary to be drawn around each such location (starting at the edge of the grounds or parking lot as required by the County's definition of "place of public assembly" in Section 57-1) using Google Maps. Those thousands of prohibited locations only scratch the surface. Chapter 57 also prohibits any firearm

13

at or within 100 yards of "any health care facility" licensed by the Maryland Department of Health. According to the Maryland Board of Physicians, there are 4,508 active physicians practicing primarily at **1,307** unique addresses just in the cities of Bethesda, Gaithersburg, Rockville, and Silver Spring. https://bit.ly/3DKRbU8. This data also does not include many "privately owned" locations, such as "recreational facilities," "conference centers," urgent care centers," and pharmacies offering clinical services. It is impossible for the average permit holder to be aware of (much less avoid) all these locations as he or she moves about in the County.

The County further ignores the context of the Carlin-Weber Declaration, which is a Second Amendment complaint that focuses on the "the general right to publicly carry arms for self-defense" as recognized in *NYSRPA v. Bruen*, 142 S.Ct. 2111, 2134 (2022). The County's argument that an individual can "transport the weapon in a locked case, separate from its ammunition" (County Mot. at 7), is effectively a concession that it is impossible, under the County's law, for a permit holder to legally carry a loaded firearm on one's person while traveling in the County. That is the mode of carry allowed for a permit holder. An unloaded firearm locked away in a case is useless for self-defense. That reality extinguishes the general right of armed self-defense in public recognized in *Bruen*, just as the County Council intended. The County does not dispute that Bill 21-22E was passed for the

14

express and singular purpose of precluding the exercise of the "general right" sustained in *Bruen*.

The threat of criminal liability under Chapter 57 is akin to the proverbial "Sword of Damocles" in that it hangs over the heads of Plaintiffs and MSI members who live throughout the State, creating a continuing *in terrorem* effect. See *United States v. Bilodeau*, 24 F.4th 705, 713-14 (1st Cir. 2022) (likening the possibility of prosecution to the Sword of Damocles and rejecting the government's reliance on prosecutorial discretion). No law-abiding permit holder can comply with Chapter 57 unless they forgo their constitutional right of armed self-defense or stay completely outside of the County. The latter option is not available to the named individual Plaintiffs who reside or work in the County. Permit holders residing elsewhere in the State (including many MSI members) may not constitutionally be banned from exercising their Second Amendment rights in the County.

### D. The Allan Barall Declaration

The County's objection to the Second Supplemental Declaration of Allan D. Barall is likewise dependent on *dmarcain*'s mistaken analysis. As articulated *supra*, there is no "back-filling" attendant to new evidence on a Rule 8 motion. Particularly baseless is the County's suggestion that "Mr. Barrall's use[d] Google Maps to render legal conclusions about the County Firearms Law." County Mot. at 8. Using a Google Maps tool to measure a 100-yard boundary around a synagogue is easily

15

done by any computer user, including a child, who need only navigate to Google Maps in any web browser and "right-click" on any location on the screen to access the measurement tool. The actual measurement is not a legal conclusion, the measured distance appears on the screen. The County does not dispute that the synagogues identified by Mr. Barall are "places of worship" subject to the County's bans and that they exist at those locations. The County does not assert that Mr. Barall somehow has misused the Google Maps measurement tool or measured the distance mistakenly. The County does not dispute that there are 605 houses of worship in the County, including the places identified by Mr. Barall. See https://bit.ly/3OLbfvG.

## CONCLUSION

The County's motion to strike should be denied.

                                                  Respectfully submitted,

*/s/ Matthew Larosiere*                                           */s/ Mark W. Pennak*

_____       _____
Matthew Larosiere                             MARK W. PENNAK
The Law Office of Matthew Larosiere     Maryland Shall Issue, Inc.
6964 Houlton Cir                               9613 Harford Rd, Ste, C #1015
Lake Worth, FL 33467                        Baltimore, MD 21234-21502
larosieremm@gmail.com                    mpennak@marylandshallissue.org
Phone: (561) 452-7575                       Phone: (301) 873-3671
*Counsel for Plaintiffs*                            *Counsel for Plaintiffs*


Dated: September 21, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 27(d) and Rule 32(g)(1) of the Federal Rules of Appellate Procedure, the undersigned counsel here certifies that the forgoing Memorandum in Opposition to Defendant's Motion to Strike contains 3743 words, not counting those items which may be excluded under Rule 32(f), and uses a 14 point, Times New Roman proportional font.

*/s/ Mark W. Pennak*

Mark W. Pennak,
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on September 21, 2023, the forgoing "Memorandum in Opposition to Defendant's Motion to Strike" were served on all counsel listed via ECF service.

*s/ Mark W. Pennak*

_____
MARK W. PENNAK
*Counsel for Plaintiffs-Appellants*

Dated: September 21, 2023