No. 23-1719

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

MARYLAND SHALL ISSUE, INC., et al.,
PLAINTIFFS-APPELLANTS,

v.

MONTGOMERY COUNTY, MARYLAND,
DEFENDANT-APPELLEE.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---

**BRIEF FOR THE DISTRICT OF COLUMBIA AND STATES OF ILLINOIS, MARYLAND, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, HAWAII, MAINE, MASSACHUSETTS, MINNESOTA, NEW JERSEY, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, AND WASHINGTON AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE**

---

BRIAN L. SCHWALB
District of Columbia Attorney General
CAROLINE S. VAN ZILE
Solicitor General
ASHWIN P. PHATAK
Principal Deputy Solicitor General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

KWAME RAOUL
Illinois Attorney General
JANE ELINOR NOTZ
Solicitor General
SARAH A. HUNGER
Deputy Solicitor General
JOHN R. MILLIGAN
Assistant Attorney General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-5202
sarah.hunger@ilag.gov

ANTHONY G. BROWN
Attorney General of Maryland
ROBERT A. SCOTT
RYAN R. DIETRICH
Assistant Attorneys General
200 Saint Paul Place
20th Floor
Baltimore, Maryland 21202
rscott@oag.state.md.us
(410) 576-7055
(*Additional counsel on signature page*)

## TABLE OF CONTENTS

INTEREST OF AMICI CURIAE................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................2

ARGUMENT .......................................................................................4

    I.    The Second Amendment Allows States And Localities To Implement Reasonable Firearm Regulations To Promote Gun Safety And Protect Against Gun Violence............................................4

    II.    Consistent With Regulations Adopted By Other Jurisdictions, Montgomery County's Designation Of "Sensitive Places" Protects Uniquely Vulnerable Locations And Populations.................8

CONCLUSION ...................................................................................20

i

# TABLE OF AUTHORITIES

## *Cases*

*DiGiacinto v. Rector & Visitors of George Mason Univ.*,
    704 S.E.2d 365 (Va. 2011) ........................................................................ 13

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)..................................................... 1, 4, 5, 6, 7, 8, 15

*E. Diversified Props., Inc. v. Montgomery Cnty.*,
    319 Md. 45 (1990) ....................................................................................... 5

*Kolbe v. Hogan*,
    849 F.3d 114 (4th Cir. 2017) ..................................................................... 8

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010)............................................................................ 1, 4, 6, 7

*Medtronic Inc. v. Lohr*,
    518 U.S. 470 (1996)..................................................................................... 4

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022)........................................................ 1, 4, 6, 7, 8, 9, 15

*Nordyke v. King*,
    563 F.3d 439 (9th Cir. 2009) .................................................................. 13

*United States v. Class*,
    930 F.3d 460 (D.C. Cir. 2019)........................................................... 8, 15

*United States v. Morrison*,
    529 U.S. 598 (2000)..................................................................................... 5

*Voisine v. United States*,
    579 U.S. 686 (2016)......................................................................................9

## *Statutes and Regulations*

18 U.S.C. § 922 ........................................................................................... 19

18 U.S.C. § 921 ........................................................................................... 19

Cal. Code. Regs. Tit. 14, § 4313 ................................................................ 12

11 Del. Code Ann. § 1457 ....................................................................... 13

13 Vt. Stat. Ann. § 4023 ........................................................................ 14

18 Pa. Cons. Stat. Ann. § 912 ................................................................. 14

430 Ill. Comp. Stat. 66/65 ...................................................................... 14

80 Ind. Admin. Code 11-2-2 ................................................................... 12

Ala. Code § 13A-11-61.2 ....................................................................... 12

Alaska Stat. § 11.61.220 ......................................................................... 19

Ark. Code Ann. § 5-73-306 ..................................................................... 17

Cal. Penal Code § 626.9 ......................................................................... 19

D.C. Code § 7-2509.07 ........................................................................... 17

D.C. Code § 22-4502.01 ...................................................................... 13, 19

Ga. Code Ann. § 16-11-127.1 ................................................................. 14

Ga. Code Ann. § 16-11-127 ..................................................................... 17

La. Rev. Stat. § 40:1379.3 .................................................................. 12, 17

Md. Code Ann., Local Gov't §§ 10-101 to 10-330 ................................... 5

Md. Code Ann., Local Gov't § 10-206 ...................................................... 5

Md. Const. art. XI-A, § 2 ......................................................................... 4

Mich. Comp. Laws Ann. § 28.425o ...................................................... 14, 17

Minn. Stat. § 97A.091 ............................................................................. 12

Miss. Code Ann. §§ 45-9-101 ................................................................. 17

iii

Mich. Code Ann. § 45-9-171 ................................................................. 17

Mo. Rev. Stat. § 571.107 ........................................................... 14, 17, 19

Montgomery Cnty. Code § 57-11 ............................................................ 2

Montgomery Cnty. Code § 57-1 .............................................................. 2

N.C. Gen Stat. § 14-277.2 ..................................................................... 12

N.D. Cent. Code § 62.1-02-05 ........................................................ 14, 17

N.M. Stat. Ann. § 29-19-8 .................................................................... 14

N.Y. Penal Law § 265.01-e .......................................... 12, 14, 15, 17

Neb. Rev. Stat. § 28-1202.01 ......................................................... 15, 17

Ohio Rev. Code § 2923.126 .................................................................. 17

S.C. Code. Ann. § 23-31-215 ......................................................... 14, 17

Tex. Penal Code § 46.03 ............................................................ 12, 14, 19

Va. Code. Ann. § 18.2-283.2 ................................................................ 19

W. Va. Code Ann. § 61-7-11a .............................................................. 14

Wash. Rev. Code Ann. § 9.41.300 ....................................................... 15

Wyo. Stat. Ann. § 6-8-104 ................................................................... 14

### Other

Jennifer Bisram, *Thousands Pack St. Patrick's Cathedral for Christmas Eve
      Mass*, CBS New York (Dec. 25, 2022) ....................................... 10

Joseph Blocher & Reva B. Siegel, *When Guns Threaten the Public Sphere:
      A New Account of Public Safety Regulation Under* Heller,
      116 Nw. U. L. Rev. 139 (2021)..................................... 11, 15, 16

Brad J. Bushman, *Guns Automatically Prime Aggressive Thoughts, Regardless of Whether a "Good Guy" or "Bad Guy" Holds the Gun*, 9 Soc. Psych. & Personality Sci. 727 (2018)................................. 11

R. K. Campbell, *Dialing Long Distance*, Police Mag. (Oct. 31, 2003).................. 18

Faith Cmtys. Today, *Twenty Years of Congregational Change: The 2020 Faith Communities Today Overview* (2021) ................................. 12

Carina Bentata Gryting & Mark Frassetto, NYRSPA v. Bruen *and the Future of the Sensitive Places Doctrine: Rejecting the Ahistorical Government Security Approach*, 63 B.C. L. Rev. E. Supp. I.-60 (2022)......................................... 10

*House of Worship Shootings*, VOA News (last visited Sept. 14, 2023)................ 15

David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 205 (2018) .................................. 9

*Law Enforcement Officers Killed and Assaulted*, FBI, https://tinyurl.com/mr22mszd......................................................... 18

Carlie Porterfield, *10 Injured in Stampede at New York's Barclay's Center Amid Shooting Scare, Police Say*, Forbes (May 29, 2022) ........................ 10

*Profiles of Private Schools in America: 1993-94—Catholic-Parochial Schools*, Nat'l Ctr. Educ. Stat., https://tinyurl.com/5h22knjc ..................... 17

Sophie Reardon, *2 Arrested in "Targeted Shooting" Outside Pittsburgh Church During Funeral*, CBS News (Oct 29, 2022) ................................ 11

Maxim G.M. Samon, *Protecting Religious Liberties? Security Concerns at Places of Worship in Chicago*, 117 Geoforum 144 (2020)......................... 16

Secure Cmty. Network, *Firearms and the Faithful* (Jan. 2020)............................ 16

Heather A. Turner et al., *Gun Violence Exposure and Posttraumatic Symptoms Among Children and Youth*, 32 J. Traumatic Stress 881 (2019)................................................................................. 12

*Violent Extremism and Terrorism: Examining the Threat to Houses of Worship and Public Spaces: Hearing Before S. Comm. On Homeland Sec. & Gov't Affs.*, 117th Cong. 1 (March 16, 2022) (statement of Ryan T. Young, Exec. Assistant Dir. of FBI) ........................................... 16

## INTEREST OF AMICI CURIAE

Amici the District of Columbia and the States of Illinois, Maryland, California, Colorado, Connecticut, Delaware, Hawaii, Maine, Massachusetts, Minnesota, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington (collectively, "Amici States") submit this brief in support of defendant-appellee pursuant to Federal Rule of Appellate Procedure 29(a)(2).

As independent sovereigns, Amici States have a responsibility to protect the health, safety, and welfare of their communities, which includes protecting their residents from the harmful effects of gun violence and promoting the safe and responsible use of firearms. Amici States have historically fulfilled this responsibility by exercising their police powers to implement reasonable measures to regulate firearms, including by imposing location-based restrictions on carrying guns. Such regulation does not conflict with the Second Amendment. As the Supreme Court has consistently recognized, that Amendment does not encompass the "'right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose,'" leaving states with the flexibility they need to protect their communities. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2128 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008)).

Indeed, the Second Amendment permits states and localities to enact a variety of regulations to combat the misuse of firearms, making possible "solutions to social

problems that suit local needs and values." *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010). This flexibility is an essential element of our federalist system, and it ensures that firearm regulations appropriately and effectively address the specific concerns in each locality. Although Amici States have taken different approaches to regulating firearms, they share an interest in addressing gun violence in ways that are tailored to the needs of their residents. Amici States seek to maintain their authority to address firearm-related issues through legislation that is consistent with historical tradition and responsive to the unique circumstances in their communities.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Chapter 57 of the Montgomery County Code makes it unlawful to "sell, transfer, possess, or transport" firearms in any location designated as a "place of public assembly." Montgomery Cnty. Code § 57-11(a). The Code provides a list of locations that qualify as "places of public assembly," *id.* § 57-1, and establishes a buffer zone restricting firearm possession within 100 yards of such places, *id.* § 57-11(a). Plaintiffs filed suit to enjoin enforcement of Chapter 57 as to the prohibition on carrying a handgun in private schools, public institutions of higher education, childcare facilities, places of worship, libraries, parks, recreational and multipurpose exhibition facilities, hospitals, community health centers, and long-term care facilities, as well as the 100-yard buffer zone. *See* JA 88, 832. The district court denied their request for a preliminary injunction and temporary restraining order.

*See* JA 866.  Plaintiffs have now appealed that denial as to places of worship, public parks, recreational and multipurpose exhibition facilities, and the buffer zones around all locations listed as places of public assembly.  Appellants Br. 13.  Plaintiffs further seek review of the district court's decision limiting the scope of Chapter 57 to property that is open to the public and request an injunction against enforcement on private property not open to the public.  Appellants Br. 13-14.

As Montgomery County has argued, the challenged provisions fit squarely within a long tradition of constitutionally acceptable regulations designed to meet local governments' responsibilities to protect their residents and should not be enjoined.  To start, the Second Amendment permits states and localities to use their police powers to enact reasonable firearm regulations to protect against gun violence, including restrictions on carrying firearms in sensitive places.  As the Supreme Court has repeatedly recognized, such regulations may be tailored to suit local needs and values, and they need not be frozen in time.

Moreover, the sensitive places challenged by plaintiffs are consistent with the types of locations that other jurisdictions have designated as sensitive—designations that limit firearm possession in crowded spaces, around vulnerable populations, and where individuals are exercising other constitutionally protected rights.  Similarly, the creation of buffer zones around sensitive places is squarely in line with the approaches of other states and localities that have enacted reasonable, limited

constraints on the exercise of constitutional rights near certain locations. As in other jurisdictions, Montgomery County's sensitive-place designations and buffer zones protect the public from the heightened risk of gun violence in such locations.

## ARGUMENT

## I. The Second Amendment Allows States And Localities To Implement Reasonable Firearm Regulations To Promote Gun Safety And Protect Against Gun Violence.

Since the Founding, states and localities have enacted restrictions on who may bear arms, where arms may be brought, and how arms may be carried. *See Bruen*, 142 S. Ct. at 2145; *Heller*, 554 U.S. at 626-27. Chapter 57 is one in a long line of such regulations designed to make gun possession and use safer for the public, and it is a lawful exercise of Montgomery County's regulatory powers.

States have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Medtronic Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (internal quotation marks omitted). Localities also wield police power, often by delegation, to various degrees nationwide. *See, e.g.*, *McDonald*, 561 U.S. at 922 (Breyer, J., dissenting) (describing municipal regulation of private guns as the "quintessential exercise" of a state's police power).[1]

---

[1] Montgomery County, a charter county in Maryland, enacted the County Code provisions challenged in this case as an exercise of its police power. Article XI-A of the Maryland Constitution allows counties to acquire legislative home rule by adopting a county charter. Section 2 of Article XI-A requires the Maryland Legislature to "provide a grant of express powers" to charter counties, Md. Const.

Enacting measures to promote public safety—particularly those that are tailored to local circumstances—falls squarely within the reasonable exercise of state and local police powers. Indeed, there is "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *United States v. Morrison*, 529 U.S. 598, 618 (2000).

The Supreme Court has repeatedly affirmed state and local authority in this area, even as it has defined the scope and import of the rights conferred by the Second Amendment. In each of its major Second Amendment opinions—*Heller*, *McDonald*, and *Bruen*—the Court expressly acknowledged the important role that states and local governments play in setting their own policies to minimize the risk of gun violence, a role consistent with our Nation's historical tradition.

In *Heller*, the Court made clear that the Second Amendment right to keep and bear arms is "not unlimited." 554 U.S. at 626. Although states and localities may not ban the possession of handguns by responsible, law-abiding individuals or impose similarly severe burdens on the Second Amendment right, they still possess

---

art. XI-A, § 2, and the Legislature did so through the Express Powers Act, *see* Md. Code Ann., Local Gov't §§ 10-101 to 10-330. Among the powers granted is the authority to enact laws that "aid in maintaining the peace, good government, health, and welfare of the county." *Id*. § 10-206(a)(2). The Supreme Court of Maryland construes that provision "to afford wide discretion to charter counties in the good faith exercise of their police powers in the public interest." *E. Diversified Props., Inc. v. Montgomery Cnty.*, 319 Md. 45, 51 (1990).

"a variety of tools" to combat the problem of gun violence in a way that is responsive to the needs of their communities. *Id.* at 636. These jurisdictions may, for example, implement measures prohibiting certain groups of people from possessing firearms, and they may "forbid[] the carrying of firearms in sensitive places such as schools and government buildings." *Id.* at 626-27.

The Court reiterated this point in *McDonald*, emphasizing that the Second Amendment "by no means eliminates" the "ability to devise solutions to social problems that suit local needs and values." 561 U.S. at 785; *see id.* at 802 (Scalia, J., concurring) ("No fundamental right—not even the First Amendment—is absolute."). Recognizing that "conditions and problems differ from locality to locality," *id.* at 783, the Court made clear that "state and local experimentation with reasonable firearms regulations" could and should continue "under the Second Amendment," *id*. at 785 (brackets and internal quotation marks omitted).

The Court reaffirmed these principles in *Bruen*. It explicitly stated that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality" of provisions "designed to ensure only that those bearing arms . . . are, in fact, 'law-abiding, responsible citizens.'" 142 S. Ct. at 2138 n.9 (quoting *Heller*, 554 U.S. at 635). And, building on *Heller*, the Court "assume[d] it settled" that prohibiting firearms in certain sensitive locations (including "schools and government buildings," "legislative assemblies, polling places, and courthouses"), as well as

analogous "new" sensitive locations, is constitutional. *Id*. at 2133. Indeed, the Court emphasized, the Second Amendment should not be understood to protect the "'right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *Id*. at 2128 (quoting *Heller*, 554 U.S. at 626-27).

These decisions make clear that states and localities retain the power to enact laws to protect their residents and that those laws need not be uniform: each jurisdiction is free to select "solutions to social problems that suit local needs and values," ensuring that firearm regulations appropriately and effectively address their constituency's specific needs. *McDonald*, 561 U.S. at 785. In other words, as the Court stressed in *Bruen*, the Second Amendment is not a "regulatory straightjacket." 142 S. Ct. at 2133. On the contrary, states and localities are permitted to enact a wide range of firearm regulations. *See id.* at 2162 (Kavanaugh, J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations." (quoting *Heller*, 554 U.S. at 636)).

Nor must these state and local laws be frozen in time. In *Bruen*, for example, the Court instructed courts to "use analogies" to long-recognized sensitive places—such as schools and government buildings—to "determine [whether] modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." 142 S. Ct. at 2133-34; *see Heller*, 554 U.S. at 627 n.26 (list of "presumptively lawful regulatory measures," including restrictions on

firearms in schools and government buildings, contains only "examples" and is not "exhaustive").

In short, although the Supreme Court has defined the outer bounds of permissible regulations, it did not "abrogate" the states' "core responsibility" of "[p]roviding for the safety of citizens within their borders." *Kolbe v. Hogan*, 849 F.3d 114, 150 (4th Cir. 2017) (en banc) (Wilkinson, J., concurring) (quoting *Heller*, 554 U.S. at 635), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111. States and localities retain not only the freedom, but also the responsibility, to implement reasonable measures designed to respond to the needs of their communities and to protect their residents from the harms associated with gun violence.

## II.    Consistent With Regulations Adopted By Other Jurisdictions, Montgomery County's Designation Of "Sensitive Places" Protects Uniquely Vulnerable Locations And Populations.

As the Supreme Court has consistently recognized, the right to "bear" firearms in public has long been understood to permit restrictions on bearing arms in "sensitive places." *Heller*, 554 U.S. at 626; *see Bruen*, 142 S. Ct. at 2133 (reaffirming that in sensitive places, "arms carrying [can] be prohibited consistent with the Second Amendment"). Because people "can preserve an undiminished right of self-defense by not entering [such] places," *United States v. Class*, 930 F.3d 460, 465 (D.C. Cir. 2019) (internal quotation marks omitted), or by "taking an alternate route," *id.* at 466, laws restricting firearms in places identified as sensitive

"neither prohibit nor broadly frustrate any individual from generally exercising his right to bear arms," *Voisine v. United States*, 579 U.S. 686, 714 (2016) (Thomas, J., dissenting). "[S]ensitive places" thus are "in effect exempt . . . from the Second Amendment." *Bruen*, 142 S. Ct. at 2133-34; *see* David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 205, 215 (2018) ("[T]he sensitive places doctrine is an exception to the general right to bear arms.").

Montgomery County's designation of various locations—including parks, places of worship, and recreational and multipurpose exhibition facilities—as sensitive places is a reasonable and appropriate response to the heightened risk associated with the presence of firearms in such locations. Without the power to institute such restrictions, governments would be hampered in their efforts to prevent gun violence in crowded and volatile locations, around vulnerable populations, or where individuals are exercising other constitutionally protected rights, putting the public at risk. And the designation of a "buffer zone" around such locations is a reasonable—and common—method of ensuring adequate protection and safety for locations that are peculiarly vulnerable to gun violence.

*First*, governments frequently restrict the use of firearms in places where crowded and volatile conditions create special risks to health and safety. Designating areas as sensitive places helps to preserve order and diminish the risk

9

of panic in spaces holding many people. *See* Carina Bentata Gryting & Mark Frassetto, NYRSPA v. Bruen *and the Future of the Sensitive Places Doctrine: Rejecting the Ahistorical Government Security Approach*, 63 B.C. L. Rev. E. Supp. I.-60, I.-68 (2022) ("The number of potential targets" and "the increased risk of conflict all seem to be relevant in the historical determination that an area constitutes a sensitive place"). Parks and recreation centers are examples of places designed to accommodate many people at once. Likewise, religious services frequently involve large, crowded gatherings, especially around holidays, baptisms, weddings, funerals, and other communal events. *See, e.g.*, Jennifer Bisram, *Thousands Pack St. Patrick's Cathedral for Christmas Eve Mass*, CBS New York (Dec. 25, 2022).[2] In such busy locations, firearm use is likely to end in tragedy—not only for the innocent bystanders who may be shot, but also for others who may be crushed or trampled by a panicked crowd. *See, e.g.*, Carlie Porterfield, *10 Injured in Stampede at New York's Barclays Center Amid Shooting Scare, Police Say*, Forbes (May 29, 2022);[3] Sophie Reardon, *2 Arrested in "Targeted Shooting" Outside Pittsburgh Church During Funeral*, CBS News (Oct. 29, 2022) (describing individual who was injured while trying to escape the scene of a church shooting).[4] Further, given the "weapons

---

[2]    *Available at* https://tinyurl.com/9cu6x4yz.

[3]    *Available at* https://tinyurl.com/2xeuc7fj.

[4]    *Available at* https://tinyurl.com/5434vek3.

effect," wherein the presence of a weapon intended to shoot human targets primes individuals to think and act more aggressively, allowing firearms in these spaces invites violence. *See* Brad J. Bushman, *Guns Automatically Prime Aggressive Thoughts, Regardless of Whether a "Good Guy" or "Bad Guy" Holds the Gun*, 9 Soc. Psych. & Personality Sci. 727, 730-31 (2018).[5]

Permitting firearms to be carried in certain locations can also jeopardize the effective operation of those locations. The discharge of a firearm in or near a place of worship, recreation or multipurpose exhibition center, park, or similar location could cause a disruptive and inconvenient shut-down. And even the perceived risk of gun violence could cause repercussions, as individuals may be discouraged from visiting crowded or confined locations where they know others may be armed. *See* Joseph Blocher & Reva B. Siegel, *When Guns Threaten the Public Sphere: A New Account of Public Safety Regulation Under* Heller, 116 Nw. U. L. Rev. 139, 141 (2021) ("Gun laws protect people's freedom and confidence to participate in every domain of our shared life, from attending school to shopping, going to concerts, gathering for prayer, voting, assembling in peaceable debate, counting electoral votes, and participating in the inauguration of a President.").

---

[5]     *Available at* https://tinyurl.com/yzek2mcb.

11

Recognizing these dangers, many states limit firearms in public and state parks. *See, e.g.*, Cal. Code. Regs. Tit. 14, § 4313; Minn. Stat. § 97A.091, subd.1(1); N.Y. Penal Law § 265.01-e(2)(d). Other states limit firearms at locations similar to parks and recreation centers that host large gatherings and events. *See, e.g.*, Ala. Code § 13A-11-61.2(a) (school and professional athletic events); 80 Ind. Admin. Code 11-2-2(b) (fairgrounds); La. Rev. Stat. § 40:1379.3(N) (parades); N.C. Gen Stat. § 14-277.2(a) (parade routes); Tex. Penal Code § 46.03(a) (racetracks and amusement parks).

*Second*, designating parks, places of worship, recreation facilities, and similar locations as sensitive places helps protect particularly vulnerable populations, like children and the elderly. Many congregations host youth services or religious education classes, attracting large groups of children. Worship services tend also to be intergenerational, with high attendance rates among the elderly. *See* Faith Cmtys. Today, *Twenty Years of Congregational Change: The 2020 Faith Communities Today Overview* 17 (2021) (on average, 33% of surveyed congregations were over age 65).[6] Such individuals cannot easily defend themselves or escape a violent attack, should one occur. And even if they are not physically harmed by firearms, exposure to such violence can cause psychological harm. *See* Heather A. Turner et

---

[6] *Available at* https://tinyurl.com/yc3d3rtd.

al., *Gun Violence Exposure and Posttraumatic Symptoms Among Children and Youth*, 32 J. Traumatic Stress 881, 888 (2019) (indirect exposure to gun violence, including witnessing violence or hearing gunshots, can be traumatic to children).[7]

For these reasons, both federal and state courts have recognized that the regular presence of children and other vulnerable people in a particular location is a strong indication that it is properly deemed sensitive for Second Amendment purposes. *See, e.g.*, *DiGiacinto v. Rector & Visitors of George Mason Univ.*, 704 S.E.2d 365, 370 (Va. 2011) ("GMU is a 'sensitive place'" because it "is a school" with many students "under the age of 18," including "elementary and high school students" in the summer); *Nordyke v. King*, 563 F.3d 439, 459 (9th Cir. 2009), *vacated*, 611 F.3d 1015 (9th Cir. 2010) ("The [Supreme] Court listed schools and government buildings as examples[ of sensitive places], presumably because possessing firearms in such places risks harm to great numbers of defenseless people (e.g., children).").

Indeed, many states exclude firearms from other places that welcome vulnerable segments of the population, particularly children. Like Montgomery County here, other state and local governments frequently bar firearms in and around schools, *see, e.g.*, 11 Del. Code Ann. § 1457(a), (b)(1)-(2); D.C. Code § 22-

---

[7]    *Available at* https://tinyurl.com/3esj8mmz.

4502.01(a); 18 Pa. Cons. Stat. Ann. § 912; Wyo. Stat. Ann. § 6-8-104(t)(ix), and at school functions, *see, e.g.*, Ga. Code Ann. § 16-11-127.1(b)(1); N.D. Cent. Code § 62.1-02-05(1); W. Va. Code Ann. § 61-7-11a(b)(1). Some states also prohibit weapons in daycare centers and preschools, *see, e.g.*, Mich. Comp. Laws Ann. § 28.425o(1)(b); N.M. Stat. Ann. § 29-19-8(C); S.C. Code Ann. § 23-31-215(M)(6), and other sites frequented by children, *see, e.g.*, 430 Ill. Comp. Stat. 66/65(a)(12) (public playgrounds); N.Y. Penal Law § 265.01-e(2)(d) (same). Similarly, like Montgomery County, many states prohibit firearms at hospitals, nursing homes, or other health care facilities which, by their very nature, are places that serve vulnerable individuals, including the sick and disabled. *See, e.g.*, 430 Ill. Comp. Stat. 66/65(a)(7); Mo. Rev. Stat. § 571.107(17); Tex. Penal Code § 46.03(a)(11); 13 Vt. Stat. Ann. § 4023(a).

*Third*, states frequently designate locations as sensitive places to protect the exercise of other constitutional rights. The Supreme Court has recognized that areas in which constitutionally protected activities occur—such as courthouses, polling places, and legislative assemblies—are quintessential examples of sensitive places. *See Bruen*, 142 S. Ct. at 2133; *Heller*, 554 U.S. at 626-27. Firearms may be prohibited in these locations because of the risk that violence could threaten key government functions. The D.C. Circuit, for example, held that a parking lot near

14

the Capitol could be designated a sensitive place because it enabled staffers to travel safely to and from their work at the national legislature.  *See Class*, 930 F.3d at 464.

States have similarly designated as sensitive places events involving political speech, like political rallies and protests.  *See, e.g.*, Neb. Rev. Stat. § 28-1202.01(3) (restricting firearms at political rallies and fundraisers); Wash. Rev. Code Ann. § 9.41.300(2) (restricting firearms at protests or demonstrations).  The same reasoning applies to areas like parks and recreation centers in which individuals may engage in speech and political engagement.  *See, e.g.*, N.Y. Penal Law § 265.01-e(2)(d) (restricting firearms at public parks).  Not only are these locations often targets of violence, but the mere presence of firearms (and the implicit threat they communicate) could chill individuals' peaceful exercise of their speech rights.  *See* Blocher & Siegel, *supra* at 141.

Likewise, Chapter 57's designation of places of worship as sensitive places protects the exercise of religious rights and mirrors protections in other states. Locations like churches, synagogues, and mosques are the heart of many people's religious exercise.  They are also increasingly targets of gun violence.  *See House of Worship Shootings*, VOA News (last visited Sept. 14, 2023);[8] *Violent Extremism and Terrorism: Examining the Threat to Houses of Worship and Public Spaces:*

---

[8]    *Available at* https://tinyurl.com/yn9xhyua.

*Hearing Before S. Comm. On Homeland Sec. & Gov't Affs.*, 117th Cong. 1 (March 16, 2022) (statement of Ryan T. Young, Exec. Assistant Dir. of FBI) ("[T]hreats to members of faith-based communities across the United States [and] houses of worship . . . have been rising in recent years"). [9] Such violence may dissuade people from attending religious services and otherwise exercising their First Amendment rights. *See* Maxim G.M. Samon, *Protecting Religious Liberties?  Security Concerns at Places of Worship in Chicago*, 117 Geoforum 144, 150 (2020) (exploring how security concerns after high-profile attacks on places of worship have increased religious congregations' feelings of vulnerability to attack);[10] Blocher & Siegel, *supra* at 141 ("Gun laws protect people's freedom and confidence to participate in every domain of our shared life," including "gathering for prayer[.]").

Arming congregants in these spaces—when these individuals often lack expert training and may panic under pressure—could exacerbate an emergency and threaten the safety of other worshippers.  *See* Secure Cmty. Network, *Firearms and the Faithful* 17 (Jan. 2020) (armed congregants could have "added to the chaos" during a synagogue shooting).[11]  Governments may thus reasonably conclude that the protection of places of worship from gun violence is best left to law enforcement

---

[9]      *Available at* https://tinyurl.com/2umsprvy.

[10]      *Available at* https://tinyurl.com/2wnsb2wr.

[11]      *Available at* https://tinyurl.com/2p8ccd33.

and other trained individuals. *See, e.g.*, N.Y. Penal Code § 265.01-e(3) (exempting law enforcement and security guards from sensitive place restrictions).

In light of these concerns, a number of jurisdictions have designated places of worship as sensitive places. For instance, like Montgomery County, Nebraska prohibits concealed carry permitholders from carrying handguns into places of worship. *See* Neb. Rev. Stat. § 28-1202.01(3). And ten other states and the District of Columbia similarly forbid people from carrying firearms in places of worship without first obtaining formal approval from the governing body or religious authority. *See* Ark. Code Ann. § 5-73-306(15); D.C. Code § 7-2509.07(b)(2); Ga. Code Ann. § 16-11-127(b)(4); La. Rev. Stat. § 40:1379.3(N)(8); Mich. Comp. Laws § 28.425o(1)(e); Miss. Code Ann. §§ 45-9-101(13), 45-9-171(2)(a); Mo. Rev. Stat. § 571.107(1)(14); N.D. Cent. Code § 62.1-02-05(1)(b), (2)(m); N.Y. Penal Law § 265.01-e(2)(c); Ohio Rev. Code § 2923.126(B)(6); S.C. Code. Ann. § 23-31-215(M)(8).[12] Although states and localities may take slightly different approaches—tailored to the needs of their community—each of these restrictions falls within the

---

[12] In addition, many places of worship may effectively be sensitive places even in jurisdictions that have not specifically designated them as such because places of worship are often attached to parochial schools or childcare sites. *See, e.g.*, *Profiles of Private Schools in America: 1993-94—Catholic-Parochial Schools*, Nat'l Ctr. Educ. Stat. (indicating that 60% of Catholic schools were affiliated with specific parishes), https://tinyurl.com/5h22knjc.

robust historical tradition of regulating the carry of firearms in places of worship. *See* Appellee Br. 36-39.

*Fourth*, creating a buffer zone around sensitive places is a sensible policy choice designed to ensure the safety and security of these locations. For instance, to protect vulnerable populations, law enforcement must be empowered to intercept armed individuals before they reach the door of a place of worship, childcare facility, or school. Moreover, increasing the distance between an individual with a firearm and a potential victim makes good sense: for most individuals, long-distance shooting is both more difficult and less effective. *See, e.g.*, R. K. Campbell, *Dialing Long Distance*, Police Mag. (Oct. 31, 2003) ("[M]ost officers believe that shooting a pistol beyond 25 yards is futile.").[13] Indeed, in 2019, over 90% of police officers killed by firearms were shot from a range less than 50 yards. *Law Enforcement Officers Killed and Assaulted*, FBI, https://tinyurl.com/mr22mszd (tbl. 33, "Law Enforcement Officers Feloniously Killed, 2010-2019") (last visited Sept. 22, 2023). Thus, creating reasonable buffer zones around locations where individuals are peculiarly vulnerable to gunfire helps to minimize the danger from either intentional or accidental shootings.

---

[13]    *Available at* https://tinyurl.com/3p6z8akm.

Given these benefits, many jurisdictions have instituted buffer zones around sensitive places. Federal law bars carrying weapons in a "school zone," 18 U.S.C. § 922(q)(2)(A), which includes a 1,000-foot area around school grounds, *id.* § 921(a)(26)(B). Many state and local laws create similar buffer zones around schools and other places where children congregate. *See, e.g.*, Alaska Stat. § 11.61.220(a)(4)(A), (B) (restricting firearms in "parking lot[s] . . . adjacent to" schools or child-care centers); Cal. Penal Code § 626.9(e)(4) (1,000-foot buffer zone around schools); D.C. Code § 22-4502.01 (1,000-foot buffer zone around schools, child-care centers, playgrounds, and youth centers). States have likewise established buffer zones to protect other sensitive places. *See, e.g*, Mo. Rev. Stat. § 571.107(2) (25-foot buffer zone around polling places); Tex. Penal Code § 46.03(a)(6) (1,000-foot buffer around places of execution); Va. Code. Ann. § 18.2-283.2(B) (restricting carry in the entire "Capitol Square" area, including "sidewalks . . . extending 50 feet" from government-building entrances). Montgomery County's designation of a 100-yard buffer around sensitive locations like recreation centers, parks, schools, and places of worship mirrors these provisions and serves similar purposes, protecting these sensitive locations from the risk of violence.

## CONCLUSION

The Court should affirm the district court's denial of preliminary injunctive relief.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for
the District of Columbia

/s/ Caroline S. Van Zile
CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

Office of the Attorney General for the
District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

KWAME RAOUL
Attorney General for the State of
Illinois

JANE ELINOR NOTZ
Solicitor General

SARAH A. HUNGER
Deputy Solicitor General

Office of the Attorney General for the
State of Illinois
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-5202
sarah.hunger@ilag.gov

ANTHONY G. BROWN
Attorney General of Maryland

ROBERT A. SCOTT
RYAN R. DIETRICH
Assistant Attorneys General

200 Saint Paul Place
20th Floor
Baltimore, Maryland 21202
rscott@oag.state.md.us
(410) 576-7055

September 2023

ROB BONTA
*Attorney General*
*State of California*
1300 I Street
Sacramento, CA 95814

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
Ralph L. Carr Judicial Building
1300 Broadway, 10th Floor
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

ANNE E. LOPEZ
*Attorney General*
*State of Hawaii*
425 Queen Street
Honolulu, HI 96813

AARON M. FREY
*Attorney General of Maine*
6 State House Station
Augusta, ME 04333

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther
King Jr. Blvd.
St. Paul, MN 55155

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
Richard J. Hughes
Justice Complex
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty St.
New York, NY 10005

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

MICHELLE A. HENRY
*Attorney General*
*State of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA  17120

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

**CERTIFICATE OF COMPLIANCE**

I certify that:

1. This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) because the brief contains 4,318 words, excluding exempted parts.

2. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Caroline S. Van Zile
CAROLINE S. VAN ZILE

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on September 26, 2023, an electronic copy of the foregoing was filed with the Clerk of Court using the ECF system and thereby served upon all counsel appearing in this case.

/s/ Caroline S. Van Zile
CAROLINE S. VAN ZILE