UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC.,
ENGAGE ARMAMENT, LLC,
ANDREW RAYMOND,
CARLOS RABANALES,
BRANDON FERRELL,
DERYCK WEAVER,
JOSHUA EDGAR,
I.C.E. FIREARMS & DEFENSIVE
TRAINING, LLC,
RONALD DAVID,
NANCY DAVID and
ELIYAHU SHEMONY,

    Plaintiffs,

    v.

MONTGOMERY COUNTY, MARYLAND,

    Defendant.

Civil Action No. TDC-21-1736

**MEMORANDUM OPINION**

Plaintiffs Maryland Shall Issue, Inc. ("MSI"), Engage Armament, LLC, I.C.E. Firearms & Defensive Training, LLC, and eight individuals have filed suit against Defendant Montgomery County, Maryland ("the County") challenging under both federal and state law recently enacted firearms restrictions contained in Chapter 57 of the Montgomery County Code. Pending before the Court is the County's Motion to Remand Counts I, II, and III and Stay Counts IV through VIII ("the Motion to Remand"), which is fully briefed. On February 6, 2023, the Court held a hearing on the Motion. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

**EXHIBIT B**

**BACKGROUND**

Prior relevant factual background and procedural history is set forth in the Court's February 7, 2022 Memorandum Opinion on Plaintiffs' Motion to Sever and Remand All State Law Claims and to Hold in Abeyance, which is incorporated by reference. *Md. Shall Issue, Inc. v. Montgomery Cnty.* ("*MSI I*"), No. TDC-21-1736, 2022 WL 375461 (D. Md. Feb. 7, 2022). Additional facts and procedural history are provided below as necessary.

On May 28, 2021, Plaintiffs filed the original Complaint in this case in the Circuit Court for Montgomery County, Maryland ("the Circuit Court") challenging Bill No. 4-21, a provision passed by the Montgomery County Council in April 2021 to amend Chapter 57 of the Montgomery County Code, which includes regulations and restrictions on weapons, including firearms. Among other amendments, Bill No. 4-21 added provisions to regulate ghost guns, undetectable guns, 3D-printed guns, and major components of such guns and also expanded the definition of "place of public assembly" used in identifying locations in which the carrying of firearms is prohibited. Bill No. 4-21 at 2–6, Second Am. Compl. ("SAC") Ex. A, ECF No. 49-1. Plaintiffs alleged four counts, numbered as follows: (I) that by expanding the "place of public assembly" definition, the County exceeded its authority under Article XI-E of the Maryland Constitution to enact local laws; (II) that Bill No. 4-21's amendments are inconsistent with and preempted by existing state law, in violation of the Maryland Express Powers Act, Md. Code Ann., Local Gov't § 10–206 (LexisNexis 2013); (III) that Bill No. 4-21 violates the Takings Clause of the Maryland Constitution, Md. Const. art. III, § 40 ("the Maryland Takings Clause"), and the Due Process Clause in Article 24 of the Maryland Declaration of Rights ("the Maryland Due Process Clause") by depriving gun owners of property without legal process or compensation; and (IV) that Bill No. 4-21's definitions of "place of public assembly," "ghost gun," "major component," and other terms are

unconstitutionally vague, in violation of the Maryland Due Process Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

On July 12, 2021, the County removed the case to this Court. On August 4, 2021, Plaintiffs filed a Motion to Remand and Stay, requesting that the state law claims, consisting of Counts I, II, and III, be remanded to the Circuit Court and that Count IV, the sole federal claim, be held in abeyance pending completion of the state law proceedings in the Circuit Court. On February 7, 2022, the Court granted the motion in that it declined to exercise supplemental jurisdiction over, and remanded, the state law claims and stayed Count IV. *MSI I*, 2022 WL 375461, at *6.

In the Circuit Court, the County filed a Motion to Dismiss, or Alternatively, for Summary Judgment on the state law claims ("the State Dispositive Motion") on February 22, 2022. That motion was fully briefed. On June 23, 2022, the United States Supreme Court issued its opinion in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), which found unconstitutional a New York statute requiring a showing of a special need to obtain a license to carry firearms. *Id.* at 2122. On July 19, 2022, the Circuit Court held a hearing on the State Dispositive Motion. However, three days later, on July 22, 2022, Plaintiffs filed in the Circuit Court a First Amended Complaint, which added Count V, a claim in which they alleged that, in light of *Bruen*, the provisions of Chapter 57 restricting the carrying of firearms in places of public assembly violate the Second Amendment to the United States Constitution. On August 8, 2022, before the Circuit Court ruled on the State Dispositive Motion, the County removed the First Amended Complaint to this Court, which was docketed as Civil Action No. 22-1967. On September 1, 2022, this Court consolidated that newly removed case with the original case, No. 21-1736, which remained with this Court for resolution of the federal claim.

3

On November 15, 2022, in response to *Bruen*, the Montgomery County Council passed Bill No. 21-22E, signed into law by the County Executive on November 28, 2022, which further amended Chapter 57's firearms restrictions that were the subject of the original Complaint. Specifically, Bill No. 21-22E added government buildings, polling places, courthouses, legislative assemblies, childcare facilities, and gatherings of individuals "to collectively express their constitutional right to protest or assemble" to the definition of "places of public assembly" at or near which firearms are prohibited. Bill No. 21-22E at 3–4, SAC Ex. B, ECF No. 49-2. Bill No. 21-22E also expanded the definition of community health centers, already identified as "places of public assembly," to include "any health care facility or community-based program licensed by the Maryland Department of Health," and it included "any licensed nursing home, group home, or care home" in the definition of "long-term facilities." *Id.* In light of *Bruen*'s holding that state firearm permits generally must be issued without requiring a showing of "special need," *see Bruen*, 142 S. Ct. at 2138, which effectively invalidated Maryland's prior permit regime requiring applicants to make such a showing, *see* Md. Code Ann., Pub. Safety § 5–306(a)(6)(ii) (LexisNexis 2018), Bill No. 21-22E removed an exemption that had previously allowed individuals who had received a Maryland permit to carry a handgun to possess such a firearm within 100 yards of places of public assembly. Bill No. 21-22E also adjusted the definitions of a "ghost gun" and an "undetectable gun." Bill No. 21-22E at 2–3. The effective date of Bill No. 21-22E was November 28, 2022.

On November 29, 2022, Plaintiffs filed a Second Amended Complaint in the present case to add challenges to the provisions of Bill No. 21-22E. Generally, Counts I, II, and III continue to assert the same state law claims as in the earlier complaints, consisting of challenges under the

4

Maryland Constitution, the Express Powers Act, and the Maryland Takings Clause and Maryland Due Process Clause, respectively, but expanded to apply also to the provisions of Bill No. 21-22E.

The Second Amended Complaint splits the due process challenge in Count IV of the original Complaint into two separate counts. Count IV of the Second Amended Complaint asserts that certain terms used in Chapter 57's definition of "place of public assembly," including the terms "library," "recreational facility," "community health center," "school," "park," and "long-term facility," are unconstitutionally vague in violation of the federal and state constitutional rights to due process of law. Count V alleges that the restrictions relating to "major components" of firearms violate due process rights because they are arbitrary, irrational, and fail to serve a legitimate governmental objective.

Finally, the Second Amended Complaint adds three new federal claims. Count VI asserts that the provisions in Bill No. 4-21 and Bill No. 21-22E which restrict individuals from giving, selling, or transferring to minors ghost guns, undetectable guns, major components of those kinds of guns, or computer code or programs to make guns through a 3D printing process; prohibit individuals from purchasing, selling, transferring, possessing, or transporting ghost guns in the presence of minors; and prohibit individuals from storing or leaving ghost guns, undetectable guns, or major components of those kinds of guns in a location that the individual knows or should know is accessible to minors, violate the due process rights of parents of minor children to care for their children and to instruct them in the safe use and handling of firearms and components, in violation of the Fourteenth Amendment and the Maryland Due Process Clause. Count VII alleges that the restrictions in Bill No. 4-21 and Bill No. 21-22E, particularly those prohibiting the carrying of firearms in or near places of public assembly, unconstitutionally infringe on the Second Amendment right to armed self-defense in public as articulated in *Bruen*. Finally, Count VIII

asserts that the restrictions on ghost guns and privately made firearms and components infringe on Plaintiffs' Second Amendment rights.

## DISCUSSION

In the Motion to Remand, the County requests that the state law claims in Counts I, II, and III again be remanded to state court and that the federal claims be stayed and held in abeyance. Plaintiffs oppose the Motion. The County has stated that if the Court declines to stay the federal claims, it then would prefer not to have the state law claims remanded.

**I.    Remand**

As discussed in *MSI I*, a federal district court "may decline to exercise supplemental jurisdiction over a claim" if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (2018). Pursuant to this provision, a court has the "inherent power . . . in cases removed from State court, to remand" if there is a basis to decline to exercise supplemental jurisdiction under § 1367(c). *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001). In deciding the "question of whether to remand" claims to state court, a court should consider "principles of economy, convenience, fairness, and comity" and "whether the efforts of a party in seeking remand amount to a 'manipulative tactic.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).

Upon consideration of the issue of remand this second time, the Court again declines to exercise supplemental jurisdiction over the state law claims and will remand Counts I–III for many

6

of the same reasons underlying its ruling in *MSI I*. In *MSI I*, the Court remanded the state law claims in Counts I–III of the original Complaint on the grounds that they included novel and complex issues of state law, the state law claims substantially predominated over the federal claims, and principles of judicial economy, convenience, fairness, and comity counseled in favor of remand. *See MSI I*, 2022 WL 375461, at *4–5. Here, the state law claims in Counts I, II, and III present the exact same novel and complex issues of state law as were present in *MSI I*, including those relating to whether multiple provisions of state law preempt the County's firearm restrictions. *See id.*

The addition to the Second Amended Complaint of the joint federal and state claims in Counts V and VI and the federal claims in Counts VII and VIII somewhat alters the balance on the question of whether the state law claims substantially predominate over the federal claims. Though there are only two purely federal law counts, only three of the seven counts in the Second Amended Complaint are purely state law counts. However, it remains the case that the state law claims predominate in one sense in that, if successful, they would invalidate most if not all of the provisions at issue in Chapter 57, primarily on the grounds that the County lacks the authority, under the Maryland Constitution or the Express Powers Act, to enact them in the first place. In Count I, for example, Plaintiffs broadly assert that Chapter 57, as amended by Bill No. 4-21 and Bill No. 21-22E, "conflicts with 'General Laws' in violation of Section 3 of Article XI-A and thus is unconstitutional." SAC ¶ 90, ECF No. 49. In opposing the Motion, Plaintiffs argue, contrary to the language of the Second Amended Complaint, that there may be certain federal claims that would remain even if they prevail on the state law claims, such as the Second Amendment claim relating to the County's restriction on possession of a firearm "within 100 yards of a park, church, school, [or] public building," which appears to be within the County's authority to enact under

7

state law. *See* Md. Code Ann., Crim. Law § 4–209(b)(1)(iii) (LexisNexis 2021) (exempting from preemption county regulations on the possession of firearms "within 100 yards of or in a park, church, school, public building, and other place of public assembly"). At a minimum, however, Plaintiffs' state law claims, if successful, would invalidate the vast majority of the firearms restrictions in Chapter 57 challenged by the Second Amended Complaint, including the restrictions on carrying a firearm in most of the newly identified "places of public assembly," which Plaintiffs argue impermissibly expand the definition of "places of public assembly" beyond what is authorized by Section 4–209(b)(1)(iii); the restrictions relating to the sale, transfer, possession, and transportation of ghost guns and "major components" of firearms near such places of public assembly or to or in the presence of a minor; and the restriction on possession of a ghost gun in a home. Moreover, Plaintiffs' state law claim in Count III, alleging violations of the Maryland Takings Clause and the Maryland Due Process Clause, would invalidate all of the Chapter 57 restrictions at issue in this case. Thus, although the federal constitutional claims are a larger part of the case than before, the state law claims still take on an outsized role in this case.

Finally, although the balance is altered to a degree, the Court finds that again declining to exercise supplemental jurisdiction over Counts I, II, and III and remanding those claims is consistent with principles of judicial economy, convenience, fairness, and comity. Even if Plaintiffs' success on the state law claims would not fully eliminate the need to address the federal claims in parallel proceedings, under the unique circumstances of this case, remand likely would enhance judicial economy, convenience, and fairness. Because resolution of the state law claims had already advanced in the Circuit Court to the point that the parties had fully briefed and argued the State Dispositive Motion, while the federal case remains at the early stages, allowing the Circuit Court to resume its consideration of the state law claims would be more efficient and would

likely result in a ruling on those claims on a substantially faster timeline. Such resolution has the potential to eliminate or narrow the remaining issues to be resolved through the federal claims before the federal case has progressed to the point that this Court would be in a position to issue dispositive rulings, which would create additional efficiencies.

Most importantly, the interest of comity again weighs substantially against exercising supplemental jurisdiction and in favor of remand. As discussed in *MSI I*, the state law claims present issues of first impression on core state law matters such as the meaning of the Maryland Constitution and the authority to legislate granted by the State to local governments such as the County. *See MSI I*, 2022 WL 375461, at *5. Such issues should be decided in the first instance by a state court, not a federal court. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

Plaintiffs' argument that, rather than remanding the state law claims to the Circuit Court, the Court should instead certify all of those claims to the Supreme Court of Maryland, is unconvincing. By statute "[t]he Supreme Court of Maryland . . . may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State." Md. Code Ann., Cts. & Jud. Proc. § 12–603 (LexisNexis 2020). Although the Maryland Supreme Court encourages certification to "promote judicial economy and the proper application of [Maryland]'s law in a foreign forum," *Proctor v. Wash. Metro. Area Transit Auth.*, 990 A.2d 1048, 1056 (Md. 2010), the decision to certify questions of law to a state supreme court rests in a federal district court's discretion and depends

9

on considerations including whether certification would "save time, energy, and resources" and "build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). Here, the matters at issue are not simply questions of law that may be determinative in the present case but instead consist of three specific causes of action under state law. Where such causes of action are typically addressed first in a trial court, and where the Circuit Court has already begun the process of adjudicating these claims, as discussed above, the Court finds that remand best serves the interests of both judicial economy and cooperative judicial federalism and declines to circumvent the application of the full state court process for resolving these causes of action.

For these reasons, and particularly in light of the novel and complex issues of state law and the interest of comity, the Court will again remand Counts I, II, and III to the Circuit Court.

## II. Stay of the Federal Claims

The County also requests in its Motion that the federal claims be stayed if the state law claims are remanded to state court. Courts have the inherent power to issue a stay of proceedings as a matter of "the efficient management of their dockets." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Id.*

In *MSI I*, the Court stayed the federal claim in the original Complaint, consisting of a void-for-vagueness challenge under the Fourteenth Amendment, because doing so prevented the County "from having to litigate simultaneously in two separate forums" and had the potential to "obviate the need to litigate the federal claim to completion." *MSI I*, 2022 WL 375461, at *5. In that instance, however, there was a greater likelihood that the resolution of the state law claims would fully eliminate the need to even consider the federal claims. As discussed above, some

10

examination of the federal claims may still be necessary going forward. Although it would be arguably more efficient to await the resolution of the state law claims in order to assess whether it would result in a narrowing of the issues to be decided, the Court is cognizant of the fact that regardless of whether it is intentional, the practical effect of the County's proposed resolution of the Motion is to delay or circumvent Plaintiffs' ability to have their federal claims considered. When such constitutional rights are at issue, such delay is not be justified based solely on issues of judicial economy. Finally, where the state law claims in Counts I–III relate to distinct legal issues separate from those presented in the federal claims, and they have already progressed toward resolution in the Circuit Court at a markedly faster pace than the federal claims in this Court, the lack of a stay is not likely to lead to conflicting rulings or create inefficiencies in the resolution of the claims. Accordingly, the Court will deny the Motion as to the request for a stay of the federal claims even while it declines to exercise supplemental jurisdiction over, and remands, the state law claims in Counts I–III.

## CONCLUSION

For the foregoing reasons, the County's Motion to Remand will be GRANTED IN PART and DENIED IN PART. The Motion will be granted in that the Court declines to exercise supplemental jurisdiction over the claims in Counts I, II, and III, which will be severed and remanded to the Circuit Court for Montgomery County. The Motion will be otherwise denied.

Date: May 5, 2023



THEODORE D. CHUANG
United States District Judge

11