USCA4 Appeal: 23-1719    Doc: 72-7    Filed: 12/18/2023    Pg: 1 of 19

IN THE CIRCUIT COURT FOR MONTGOMEERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., *et al.* :

    Plaintiffs :

        v. :   Case No. 485899-V

         :

MONTGOMERY COUNTY, MARYLAND :

    Defendant :

Memorandum Decision and Order

The plaintiffs in this case are challenging under State law certain firearms restrictions enacted by Montgomery County in Chapter 57 of the Montgomery County Code. These restrictions became effective on November 28, 2022.

The plaintiffs' federal (Second Amendment) claims regarding the legality of Chapter 57 remain in the United States District Court for the District of Maryland, and, to the extent they need to be decided, they will be resolved in federal court. *See Maryland Shall Issue, Inc. v. Montgomery County*, 2023 WL 3276497 (D. Md., May 5, 2023) and 2023 WL 4373260 (D. Md., July 6, 2023). Whether Chapter 57 will withstand a Second Amendment challenge is not before this court. *See Maryland Shall Issue, Inc v. Moore*, 2023 WL 8043827 (4th Cir., November 21, 2023)(invalidating under the Second Amendment Maryland's handgun qualification license requirement of Section 5-117.1 of the Public Safety Article).

The parties have cross moved for summary judgment on all of the plaintiffs' State law claims. Md. Rule 2-501. The court held a hearing on October 10, 2023.

Entered: Clerk, Circuit Court for
Montgomery County, MD
November 27, 2023


EXHIBIT F

The court agrees with the County that plaintiff Maryland Shall Issue, Inc., lacks standing under Maryland common law to challenge Chapter 57 of the Montgomery County Code. *See Voters Organized for the Integrity of City Elections v. Baltimore City Elections Board*, 451 Md. 377, 396-97 (2017). It will be dismissed as a party, and the court grants the County's motion to dismiss in this respect. All other plaintiffs, the court concludes, have standing under Maryland common law to pursue the state law claims in the Second Amended Complaint. They are entitled, therefore, to a declaratory judgment with respect to those claims. *Id*. at 398.

For the reasons that follow, the plaintiffs' motion for summary is granted, the defendant's motion for summary judgment is denied, and the parties are instructed to submit a form of declaratory judgment and a form of permanent injunction that implements this decision within ten days.

As requested, the court will certify this case for immediate appeal given the public importance of the issues this trial-level court has decided. Counsel are to submit a form of order compliant with Md. Rule 2-602(b), also within ten days.

## Background

The procedural history of this case is somewhat convoluted, and only a brief summary is necessary to put into context the issues this court needs to decide. Further, federal and State firearms laws are quite complex, and their full range and interplay are well beyond the scope of this decision. Federal and State firearms laws will be referred to and discussed solely to the extent necessary to put the specific claims regarding the local ordinance in this case into context.

This lawsuit begin in March 2021, when the plaintiffs filed a complaint in this court challenging Bill No. 4-21, passed by the Montgomery County Council in April 2021 to amend Chapter 57 of the Montgomery County Code. In brief, according to the plaintiffs, the bill

impermissibly included a variety of restrictions on firearms in Montgomery County greater than those imposed by State law. Before this court could act, on July 12, 2021, the County removed the case to federal court.

In February 2022, the federal court remanded the plaintiffs' State law claims to this court, while keeping for federal adjudication the Second Amendment claim. When the case was returned to this court, the parties filed cross motions for summary judgment. However, before this court could act, the Supreme Court decided *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). That decision by the Supreme Court announced significant limitations on how and when, consistent with the Second Amendment, the government can regulate firearms.

In light of the *Bruen* decision, the plaintiffs amended their complaint in this case to add new Second Amendment claims, and the County again removed the entire case to federal court. On November 15, 2022, the Montgomery County Council enacted Bill 21-22E, which further amended Chapter 57. On November 20, 2022, the plaintiffs, while in federal court for the second time, filed a Second Amended Complaint. Once again, the federal court remanded the plaintiffs' State law claims to this court. For present purposes, the Second Amended Complaint is the operative pleading.

The Second Amended Complaint

Subject to exceptions not relevant here under federal law a person may manufacture a firearm for his or her own personal use. Such firearms are not required to be serialized. Only federally licensed manufacturers and importers are required to serialize the firearms they manufacture, import, or sell. Federal law does not require the manufacturer or importer to place a serial number on the slide or cylinder of a handgun, or the barrel of a rifle or a shotgun.

3

Entered: Clerk, Circuit Court for
Montgomery County, MD
November 27, 2023

Rather, before it is sold, a serial number must be placed on the frame or the receiver. A frame or receiver that has been serialized by a federally regulated firearms manufacturer is treated as a firearm under federal law, subjecting the purchaser (or transferee), among other things, to a federal background check.

Under Maryland law, a person may carry a handgun on their person or in their vehicle if the handgun is unloaded and in a case. There are no restrictions on transporting rifles or shotguns, as long as they are unloaded.

Maryland law does not prohibit a person from wearing or carrying a handgun on property that person owns or leases, on property where the person resides, or on property (owned or leased) used for business. *See Blue v. Prince George's County*, 434 Md. 681 (2013). A wear and carry permit is not required by State law for such uses.

Chapter 57

Among other things, Bill 4-21 amended Section 57-1 of the County Code to broaden the definition of firearm to include any unfinished frame or receiver that lacks a serial number, referred to in the Bill as a "ghost gun." The bill also defined as an "undetectable gun" any firearm that, after the removal of all of its parts other than a major component, is not detectible through a walk-through metal detector. A "major component" is defined as any "slide or cylinder" or "the frame or receiver," and in the case of a rifle or shotgun, "the barrel."

In April 2022, the General Assembly of Maryland enacted comprehensive legislation regarding personally manufactured firearms, including "ghost guns," with a variety of specific requirements. HB 425 and SB 387. Beginning on June 1, 2022, under State law, no unfinished frames or receivers may be sold (or otherwise transferred) unless they are serialized in accordance with federal law. Public Safety Article § 5-703. As of March 1, 2023, it is a crime

Entered: Clerk, Circuit Court for
Montgomery County, MD
November 27, 2023

under State law to possess an un-serialized firearm or unfinished frame or receiver. In order to lawfully retain possession, the owner must get the item serialized. In enacting these detailed and comprehensive provisions, the General Assembly expressly intended that they be interpreted consistently with the regulations adopted by the Bureau of Alcohol, Tobacco Firearms and Explosives. *See generally Kipke v. Moore*, 2023 WL 6381503 (D. Md., Sept. 29, 2023). According to the plaintiffs, Chapter 57 of the Montgomery County Code regulates personally manufactured firearms (including what the County has defined as "ghost guns") in a manner inconsistent with State law and, therefore, they argue the Montgomery County ordinance is preempted.

According to the plaintiffs, Montgomery County also seeks to regulate where a person may carry or possess a firearm by expanding the concept of "place of public assembly." A place of public assembly is defined under the ordinance as any "place where the public may assemble, *whether the place is publicly or privately owned*," and includes all property associated with that place (whether public or private) including parking lots and grounds. (Emphasis added). According to the plaintiffs, the County seeks, by this device, to make illegal in Montgomery County conduct that is expressly permitted by State law.

Parties

Plaintiff Maryland Shall Issue, Inc. ("MSI") is a Maryland chartered, tax-exempt non-profit corporation with approximately 2,500 members. Its stated purpose is to preserve and advance the rights of gun owners in Maryland.

Plaintiff Engage Armament LLC ("Engage") is a Maryland corporation located in Rockville, Maryland. Engage is a federally licensed Type I dealer (retailer), a Type VII dealer (firearms manufacturer), and a Type X dealer manufacturer of destructive devices and

5

ammunition for such devices. Pursuant to the Maryland Public Safety Article, Section 5-106, Engage is a Maryland State licensed firearms dealer and is thus authorized by State law to conduct "the business of selling, renting or transferring regulated firearms." As a federal licensee, Engage is exempt from subtitle 7 of Title 5 of the Public Safety Article and thus may sell, deliver and possess an "unfinished frame or receiver." Public Safety Article, Section 5-702(2). Engage also is authorized by State law to perform serialization services for "unfinished frames or receivers" for the public. Public Safety Article, Section 5-703(b). Engage alleges that since the enactment of Bill 4-21, it has been prohibited from possessing unfinished receivers (sometimes referred to a "ghost guns") and from serializing such receivers as permitted by Section 5-703(b) of the Public Safety Article.

As part of its business as a Type VII federally licensed manufacturer, Engage manufactures firearms, and uses components which it assembles into finished firearms, in compliance with federal and State law. Engage stocked and sold unfinished frames or receivers, which were not firearms under federal law, but which could be built into a firearm by the purchaser. These various items (*e.g.*, slides, cylinders, barrels, frames and receivers), permitted by federal and State law, were banned generally by Chapter 57, as amended by Bill 4-21 and Bill 21-22E.

Plaintiff Andrew Raymond is a co-owner of Engage and resides in Montgomery County. Raymond possesses a wear and carry permit issued by the Maryland State Police. As permitted by State law, Raymond regularly carries a loaded firearm while at work at Engage, while he commutes to and from Engage, and at other places in Montgomery County, as permitted by State law. However, under Chapter 57, which prohibits possessing a firearm within 100 yards of schools, police stations, and County owned or controlled property (and a variety of other

Entered: Clerk, Circuit Court for Montgomery County, MD
November 27, 2023

locations) he contends that he cannot continue to use, without fear of prosecution, his State law wear and carry permit. He also contends that, prior to the enactment of Chapter 57, he possessed in his home various components that are now banned by Montgomery County.

Plaintiff Carlos Rabanales is a co-owner of Engage and contends that he suffers from the same burdens as plaintiff Raymond. In addition, Rabanales commutes daily to Engage from his home in Frederick County. During this commute, he alleges that he regularly passes within 100 yards of the "prohibited places," as defined by Chapter 57 and that there is no realistic way for him to commute without running afoul of Chapter 57, notwithstanding his right to carry a loaded firearm under State law.

Plaintiff Brandin Ferrell is a supervisor at Engage and lives in Gaithersburg, Maryland. Ferrell alleges that, given where he lives and its proximity to the "prohibited locations" he cannot step outside his home (even on to his own property) with a loaded firearm without violating Chapter 57, despite the fact that he is allowed to do so under State law as he has a permit to possess a firearm. His home is located within 100 yards of a County park. Ferrell has applied for a State wear and carry permit.

Plaintiff Deryck Weaver is a supervisor at Engage, possesses a State issued wear and carry permit, and is a qualified handgun instructor under Section 5-101(q) of the Public Safety Article. In addition, Weaver is a certified Range Safety Officer. Weaver regularly passes within 100 yards of a "prohibited location" during his commute to Engage.

Plaintiff Josha Edgar works at Engage. His home in Gaithersburg, Maryland is located within 100 yards of a "prohibited location," and he thus would be in violation of Chapter 57 if he stepped outside of his residence onto his own property with a loaded firearm. Edgar has a State issued permit to wear and carry a firearm.

Entered: Clerk, Circuit Court for Montgomery County, MD
November 27, 2023

Plaintiff I.C.E. Firearms & Defensive Training, LLC ("ICE") is a Maryland corporation located in Gaithersburg, Maryland. ICE provides firearms training to individuals with handguns, rifles, and shotguns. ICE also provides training to minors, with the consent of their parents. Prior to the enactment of Chapter 57, ICE possessed materials defined as "ghost guns" by Chapter 57.

Plaintiff Ronald Davis is the owner and operator of ICE and possesses a wear and carry permit issued by the Maryland State Police. Davis lives in Gaithersburg within 100 yards of a "prohibited location." Davis also is a qualified handgun instructor. Before the enactment of Chapter 57, Davis, as permitted by State law, regularly carried a loaded firearm at various places within Montgomery County that are now "prohibited locations."

Plaintiff Nancy Davis lives in Gaithersburg, and within 100 yards of a "prohibited location." She is a qualified handgun instructor and possesses a State wear and carry permit. As permitted by State law, she regularly carried a loaded firearm while traveling within the County.

Plaintiff Eliyahu Shemony is the former head of security for his synagogue, which is located within Montgomery County. Shemony possesses a State law wear and carry permit, and prior to Chapter 57, regularly carried a loaded firearm while attending religious services and while picking up his children at a private school, which is located on private property.

The sole defendant is Montgomery County, Maryland.

Chapter 57 is a penal statute, the violation of which can result in a $1,000 fine and up to six months imprisonment. There is no *mens rea* requirement. The court is satisfied that the allegations in the Second Amended Complaint, which is verified, and further supported by detailed (and uncontradicted) accompanying affidavits, satisfy the legal requirements for substantial injury in fact. Montgomery County has not controverted these facts.

Entered: Clerk, Circuit Court for
Montgomery County, MD
November 27, 2023

<u>The Claims</u>

Count I of the Second Amended Complaint alleges that Chapter 57, as amended by Bill 4-21 and Bill 21-22E, is not a valid local law within the meaning of Article XI, Section 3 of the Maryland Constitution. Count II alleges that Bill 4-21 violates the Express Powers Act, Local Gov't Code, Section 10-206, as it is expressly or impliedly preempted by, or inconsistent with, other provisions of State law. Count III alleges that Bill 4-21 constitutes an unlawful taking under Article III, Section 40 of the Maryland Constitution, as well as amounting to a deprivation of property without due process in violation of Article 24 of the Maryland Declaration of Rights. The Second Amended Complaint seeks declaratory and injunctive relief as to all counts.

As to Count III only, the plaintiffs seek "just compensation" on their takings claim, at an amount to be determined at a future evidentiary hearing. Given the public importance of issues for which the plaintiffs seek declaratory and injunctive relief, they ask that as to all equitable relief, the court issue an order under Md. Rule 2-602, so as to make any declaration or injunction immediately appealable.

It is important to parse out precisely what the plaintiffs are, and what they are not, challenging.

Chapter 57 operates largely by banning certain activities within 100 yards of any "place of public assembly." At issue in this case is the County's expansive definition of "place of public assembly." Under the ordinance, a place of public assembly is defined to include an extensive list of places (*e.g.*, a park, a place of worship, a school, a library, a recreational facility, a hospital and a fairgrounds or conference center), whether they are "publicly or privately owned." According to the complaint, Chapter 57's definition of "place of public assembly" makes it impractical, if not virtually impossible, for the holder of a wear and carry permit issued

Entered: Clerk, Circuit Court for Montgomery County, MD
November 27, 2023

by the Maryland State Police, to exercise the right granted by that permit (to carry a loaded firearm) in most parts of Montgomery County. In other words, they contend that it is impossible for someone to travel in most parts of Montgomery County without coming within 100 yards of a "place of public assembly" as defined by Chapter 57, as amended by Bill 21-22E. Thus, they contend, Montgomery County has criminalized conduct otherwise permitted by State law (and permitted in other counties), and effectively nullified within Montgomery County the rights granted under, among other State laws, Maryland's wear and carry law.

They also challenge the County's restrictions on "ghost guns" as being inconsistent with those recently passed (and being challenged in federal court) by the General Assembly.

The plaintiffs do not challenge those parts of Chapter 57 that pertain to the County "Firearm Safety Committee" (Section 57-2), to the County's "urban area boundary" (Section 57-3, or that regulate the discharge of firearms (Section 57-4 and 57-5) or of bows (Section 57-6). As well, the plaintiffs do not challenge the requirement for the distribution of child safety devices with the sale of a handgun (Section 57-8), or that portion of Chapter 57 that touches upon the unlawful ownership or possession of a firearm by a person who is otherwise disqualified by State or federal law. These, and a few other miscellaneous provisions, the plaintiffs contend, may be severed from any infirm provisions, and remain in effect.

What the plaintiffs are challenging are provisions of Section 57 that impose certain limitations or rules they say are not currently found in State or federal law and amount to additional restrictions on firearms possession or use imposed only by Montgomery County. As the court understands it, the plaintiffs are seeking to enjoin and declare violative of State law, those provisions that purport to impose additional limitations on the activities of persons who have otherwise lawfully been issued a wear and carry permit under Section 5-306 of the Public

10

Safety Article. The plaintiffs also are challenging Section 57-11 with respect to the sale, transfer, transport or possession of firearms or firearms components of privately made firearms by any federally or State licensed firearms dealer.

Standard of Review

With the exception of the County's motion to dismiss for lack of standing solely as to plaintiff Maryland Shall Issue, Inc., both sides have cross-moved for summary judgment. Under that well-settled standard, judgment can be entered only if there are no genuine disputes as to any material facts, and if a moving party is entitled to judgment as a matter of law. Md. Rule. 2-501; *see Romeka v. RadAmerica II, LLC*, 485 Md. 307, 330-31 (2023). The court agrees with the parties that there are no genuine factual disputes in this case. The questions presented by the cross-motions are ripe for a determination as a matter of law.

It should be noted at the outset that the wisdom of the ordinance enacted by Montgomery County is not a question for this court. *Md. Aggregates Ass'n, Inc. v. State*, 337 Md. 658, 668 (1995). The court well understands that there are varying and strongly held views on both sides. However, the sole question for this court is whether the challenged provisions of the ordinance violate Maryland law, by preemption or otherwise. *See Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540, 548-49 (1985) (holding that a Montgomery County ordinance restricting the sale of ammunition was preempted by State law). If they do, they must fall. If not, they stand, at least under Maryland law.

Discussion

Both in its brief, and at oral argument, the County contended that it enacted the amendments to Chapter 57 of the Montgomery County Code pursuant to a direct grant of authority under Section 4-209(b) of the Criminal Law Article. The County, at oral argument,

11

Entered: Clerk, Circuit Court for Montgomery County, MD
November 27, 2023

largely eschewed reliance on either the Home Rule Amendment or the Express Powers Act. As a consequence, the court will turn first to whether Chapter 57 is permitted by, or preempted by, Section 4-209. If it is preempted by this statute, no detailed analysis of the other preemption arguments raised is necessary.

Section 4-209 of the Criminal Law Article provides:

(a) Except as otherwise provided in this section, the State preempts the right of a county, municipal corporation, or special taxing district to regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation of:

(1) A handgun, rifle, or shotgun; and

(2) Ammunition for and components of a handgun, rifle, or shotgun.

* * *

(b)(1) A county, municipal corporation, or special taxing district may regulate the purchase, sale, transfer, ownership, possession and transportation of the items listed in subsection (a) of this section:

(i) with respect to minors;

(ii) with respect to law enforcement officials within the subdivision; and

(iii) except as provided in paragraph (2) of this subsection, within 100 yards of or in a park, church, school, public building and other place of public assembly.

Guidance as to the scope of preemption under Section 4-209(a), and the exception provided in Section 4-209(b) can be taken from the decision in *Mora v. City of Gaithersburg*, 462 F. Supp.2d 675 (D. Md. 2006), *aff'd as modified on other grounds*, (4th Cir. 2008). In that case, the plaintiff challenged the City of Gaithersburg's "policy" of refusing to return firearms that had been seized from the plaintiff, who was a licensed gun collector. The plaintiff had been detained, and the firearms seized, after he made a call to a mental health hotline. Although subjected to an involuntary emergency mental health evaluation at a local hospital, the plaintiff was never committed to a facility for mental health treatment or charged with a crime. Yet, the

12

Entered: Clerk, Circuit Court for Montgomery County, MD
November 27, 2023

City refused to return the firearms it had confiscated unless the plaintiff filled out an "application" to the City of Gaithersburg. The plaintiff, who was otherwise lawfully allowed under State law to possess the firearms refused the City's request and filed suit in federal court seeking the return of the firearms.

In ruling for the plaintiff, the federal court discussed the operation and effect of Section 4-209 and rejected the City's contention that its "withholding" the plaintiff's firearms was not a regulation of firearms withing the meaning of the state statute.

In construing the statute, as a whole, the federal court held that Section 4-209 precluded a local government "from imposing, by any method, rule, principle, policy or practice, its own requirements with regard to [the plaintiff] having and holding firearms that the federal and state government have licensed him to have and hold." 462 F. Supp.2d at 688.

The court went on to specifically reject the argument that the carve-out of Section 4-209(b), relied on by the County in this case, allowed the City of Gaithersburg to impose additional restrictions on firearms' possession, use or ownership. "In light of this history, there can be no doubt that the exceptions to otherwise blanket preemption are narrow and strictly construable. State law has so thoroughly and pervasively covered the subject of firearms regulation and the subject so demands uniform state treatment, that any non-specified regulation by local governments is clearly preempted." 462 F. Supp.2d at 690.

A September 2008 Opinion by the Attorney General of Maryland is also instructive, particularly for its reasoning regarding how to read Section 4-209 as a whole. 93 Op. Atty. Gen.126 (2008). In that decision, the Attorney General was asked by the City Solicitor for the City of Baltimore to opine on a bill passed by the Baltimore City Council and awaiting action by the Mayor. The proposed ordinance required a gun owner to report the theft or loss of a firearm

13

to the police within two days of discovering the theft or loss. The question posed to the Attorney General was whether the ordinance was preempted by State law. The Attorney General concluded that its effect "on gun ownership was too remote to be deemed a regulation of ownership, such that it would be expressly preempted by State statute." *Id*.

The Attorney General's opinion, written by then Assistant Attorney General Robert N. McDonald (later an Associate Judge on the Court of Appeals of Maryland) begins by noting the statutory framework of the preemption provisions of Maryland's firearms laws. Section 4-209(a) of the Criminal Law Article establishes the general rule of preemption. Only three specific subject areas are expressly exempted from State preemption under Subsection 4-209(b), allowing for local restrictions. These exemptions concern local laws regulating firearms with respect to (i) minors, (ii) local law enforcement officials, and (iii) within 100 yards of places of "public assembly." A final exemption under Subsection 4-209(d), not relevant to this case, allows the regulation of the discharge of firearms within the jurisdiction. As noted by the Attorney General "*the exceptions are to be narrowly construed.*" 93 Op. Atty. Gen. at 129 (Emphasis added). At issue in this case, is whether the General Assembly intended to preempt the types of provisions enacted by Montgomery County that are contained in Chapter 57.

The main argument advanced by the plaintiffs in this case is the doctrine of express preemption. Section 4-209(a) of the Criminal Law Article bars local legislation with respect to "the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation" of firearms. Other provisions of Maryland law expressly preempt local laws regarding "regulated firearms," such as handguns. *See* Public Safety Article, Sections 5-104, 5-133, and 5-134.

Entered: Clerk, Circuit Court for Montgomery County, MD
November 27, 2023

It is plain that the challenged provisions of Chapter 57 do, and are intended to, regulate the ownership, transfer and possession of a firearm under Section 4-209(a). Unlike the Baltimore City ordinance which simply required an owner to report a theft or loss of a firearm, Chapter 57 is clearly targeted at who may own a firearm, where it may be possessed, and what one may do with it in Montgomery County. Each of these areas are already the subject of comprehensive State regulation.

At its core, Chapter 57 also purports to define what constitutes a firearm. That is a matter for State law, which expressly regulates all handguns and otherwise defines what constitutes a firearm under Maryland law. Under the case law, those decisions are for the General Assembly of Maryland, not a local county council.

Chapter 57 also purports to limit where an otherwise lawfully owed firearm may be kept or possessed. Chapter 57's extraordinarily expansive language regarding the definition of "within 100 years of" a place of public assembly sweeps too broadly. It effectively prohibits much, if not most, of otherwise lawful possession and carry provisions afforded by State law. And, by attempting to reach otherwise lawful use or possession of a firearm on purely private property, Chapter 57 lands well outside of the narrow confines of the exemption allowed by the General Assembly under Subsection 4-209(b). In the court's view, and as counsel for the County conceded at oral argument, the County wanted, among other things, to largely eliminate the State granted right to wear and carry a firearm in the County, even when the individual held a State issued concealed carry permit. Chapter 57, as intended by the County, effectively bans the concealed carry of a firearm in Montgomery County outside of one's home or business, effectively nullifying a State granted right to those who have applied for and received a concealed carry permit by the Maryland State Police. In the court's view, this effectively

15

Entered: Clerk, Circuit Court for Montgomery County, MD
November 27, 2023

swallows the preemption provisions of Section 4-209(a), as well as other State laws expressly regulating handguns and the right to possess, or to carry a handgun in this State. If such a law is to be enacted, it is for the General Assembly of Maryland to do, not a municipality.

As the Attorney General noted in 2008, the "evident intent of a preemption provision like [Criminal Law Article] Section 4-209 is to ensure some uniformity in statewide regulation of firearms. As illustrated above, the challenged provisions of Chapter 57 undermine, conflict with, and largely undercut the General Assembly's stated goal of statewide uniformity for handgun and firearms regulation. *See* 93 Op. Atty. Gen. at 133.

Of course, the General Assembly in enacting exemptions to the broad preemption provision of Section 4-209(a) did not intend to prohibit all local regulation. The touchstone is whether the local law purports to regulate "who may own a gun or what one may do with a gun one owns." 126 Op. Atty. Gen. at 133. Generally, if it does, the local law is preempted. The challenged provisions of Chapter 57 directly burden what is currently allowed by State law. They directly affect "the right to manufacture, sell, transfer, posses, transport, repair, [and] use any firearm" 126 Op. Atty. Gen. at 131, in Montgomery County and add both substantive and substantial restrictions on firearms ownership and possession that are not present in State law and are not applicable in other parts of the State.

Also instructive on preemption is the decision by the Supreme Court of Maryland (then, the Court of Appeals) in *Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540 (1985). In that case, Montgomery County enacted an ordinance prohibiting the sale of ammunition in the County unless certain requirements were met. The circuit court declared the ordinance invalid and enjoined its enforcement. The Supreme Court agreed and affirmed. The Court recounted the numerous laws the State had enacted pertaining to the regulation of firearms in general and

Entered: Clerk, Circuit Court for Montgomery County, MD
November 27, 2023

16

handguns in particular. The Court went on to expressly reject the County's argument that its ordinance was intended to regulate *only* the sale of ammunition, not the use of the otherwise lawful possession or use of the firearm itself, as otherwise permitted by State law. The Court also rejected the County's contention that State law regulated only unloaded firearms. It found "wholly unreasonable" the County's contention that State laws regulating firearms, did not also regulate the ammunition used by all firearms. 304 Md. at 546-48. In short, Montgomery County's local law on ammunition was preempted by State law.

The County's reliance on *State v. Phillips*, 210 Md. App. 239 (2013), is misplaced. In that case, the intermediate appellate court reversed the dismissal of a criminal charge for failing to register as a convicted firearms offender. The Baltimore City Code required individuals who had been convicted of specified gun crimes to register with the police. The defendant, who had previously been convicted of gun crimes, allegedly failed to do so. The ordinance made the failure to register itself a crime, subject to up to twelve months imprisonment. Before trial, the circuit court dismissed the failure to register charge on numerous grounds, not relevant to this case. This decision was reversed on appeal. Relevant here, is only the appellate court's rather terse rejection of the defendant's preemption argument which said, unremarkably, that the General Assembly did not preempt all local laws relating to firearms. 210 Md. App. at 280-81. Perhaps because it was not necessary to the decision (or, perhaps not raised by the parties), there was no discussion by the appellate court in that case of the interplay between Section 4-209(a) and Section 4-209(b).

The court also concludes that the challenged provisions of Chapter 57 are contrary to the Express Powers Act as they are both irreconcilably inconsistent with State law and in conflict with the scheme of firearms regulation enacted by the General Assembly. The authority given to

17

Entered: Clerk, Circuit Court for Montgomery County, MD
November 27, 2023

counties under Section 4-209(b) cannot be exercised in a manner which, at least in this circumstance, largely eviscerates State law with respect to when and by whom a firearm (otherwise lawfully) may be possessed and carried by an individual for whom, under State law, it is lawful to do so. The County has done so in this case. The challenged provisions of Chapter 57 are in direct conflict with at least five separate state law provisions regarding the sale, possession, and transfer of regulated firearms, over the transfer of long guns (rifles and shotguns), and over the wear and carry of handguns. It is particularly in conflict with the General Assembly's very recent and comprehensive firearms legislation.

In summary, the comprehensive and intertwined scheme of existing State regulation preempts Montgomery County's efforts, through Chapter 57, to place additional legal hurdles on wear and carry permit holders, State licensed firearms dealers and privately made firearms. Section 4-209(b) simply does not allow a county effectively to nullify nearly all other State firearms rights and restrictions, at least not in the manner attempted in this instance. The court concludes that the challenged provisions of Chapter 57 conflict with and are preempted by State law. A political subdivision in Maryland simply cannot prohibit (save for a very narrow band of activity not challenged here) what is expressly permitted by state law. To hold otherwise would allow a municipality to substitute its will for that of the General Assembly. The exception to preemption in Section 4-209(b) is not that wide.

<u>Permanent Injunction and Declaratory Relief</u>

The plaintiffs have succeeded on the merits of their preemption claim and have demonstrated that they will suffer substantial and irreparable injury absent court intervention. *Bey v. Moorish Sci. Temple of Am.*, 362 Md. 339 354 (2001). They are entitled, therefore, to the issuance of a permanent injunction. Md. Rule 15-501(a); *see NCAA v. Johns Hopkins University*,

Entered: Clerk, Circuit Court for Montgomery County, MD
November 27, 2023

18

301 Md. 574, 580 (1984). In addition, the court is obligated by controlling Maryland appellate authority to declare the rights of the parties. *Harford Mut. Ins. Co. v. Woodfin Equities Corp.*, 344 Md. 399, 414-15 (1997).

## Conclusion

The plaintiffs' motion for summary judgment is granted. The defendants' motion to dismiss MSI as a party for lack of standing is granted. The defendants' motion for summary judgment is denied.

Counsel are directed to meet and confer, and within ten (10) days of the entry of this decision submit the following, *separate* proposed orders: (1) a Declaratory Judgment; (2) a Permanent Injunction; (3) a Certification Order under Md. Rule 2-602.

It is So Ordered this 27th day of November, 2023.

Ronald B. Rubin, Circuit Judge

Entered: Clerk, Circuit Court for
Montgomery County, MD
November 27, 2023