## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | |
|---|---|
| Maryland Shall Issue, Inc., *et al.*, | |
| *Plaintiffs-Appellants,* | No. 23-1719 |
| v. | |
| Montgomery County, Maryland, | |
| *Appellee.* | |

## MONTGOMERY COUNTY, MARYLAND'S
## STATUS REPORT

Pursuant to Federal Rule of Appellate Procedure 12 and Local Rule 12(d), Defendant-Appellee Montgomery County, Maryland ("County") respectfully provides to this Court the following status report:

On January 24, 2025, the Appellate Court of Maryland issued a decision on the County's appeal of the Circuit Court's declaratory judgment and permanent injunction. *See* Exhibit A, *Montgomery County, Maryland v. Engage Armament, LLC, et al.*, No. 2319, Sept. Term 2023 (Appellate Ct. of Md. January 24, 2025). In an unreported opinion, the Court held that the circuit court erred as a matter of law when it entered a declaratory judgment finding that Chapter 57 of the Montgomery County Code is not authorized by state law. The Court issued a limited remand to determine whether Chapter 57 permissibly expands upon Md. Code Ann., Crim. Law § 4-209(b)(1)(iii)'s list of places of public assembly. The Court declined to

address the issue of whether Chapter 57 constitutes a taking under Maryland's Constitution and required, on remand, that the court explain its reasoning for concluding that Chapter 57 is a taking under Maryland's Constitution. Finally, the Court retained jurisdiction to decide the remainder of the issues following the circuit court's decision on remand and thus stayed the appeal pending the circuit court's rulings.

Also on January 24, 2025, the State-appeal Plaintiffs-Appellees filed a Motion to Reconsider and to Stay Pending a Petition for Certiorari to the Maryland Supreme Court on Friday, January 24, 2025. *See* Exhibit B.

The County plans to file a motion to reconsider with the Appellate Court of Maryland.

Respectfully submitted,

JOHN P. MARKOVS
COUNTY ATTORNEY


_____ /s/ *Edward B. Lattner* _____
Edward B. Lattner
Deputy County Attorney

_____ /s/ *Erin J. Ashbarry* _____
Erin J. Ashbarry
Chief, Government Operations Division

_____ /s/ *Matthew H. Johnson* _____
Matthew H. Johnson
Assistant County Attorney

_____/s/ *Kristen J. Nunley*_____
Kristen J. Nunley
Assistant County Attorney

Executive Office Building
101 Monroe Street, Third Floor
Rockville, Maryland 20850
(240) 777-6700
(240) 777-6705 fax
Attorneys for Defendant-Appellee
Montgomery County, Maryland

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 29, 2025, a copy of the foregoing was

filed to be transmitted via this Court's CM/ECF Electronic Document Filing

System to:

> Mark W. Pennak
> Maryland Shall Issue, Inc.
> 9613 Harford Rd., Ste C #1015
> Baltimore, Maryland 21234-21502
> mpennak@marylandshallissue.org
> *Attorney for All Plaintiffs-Appellants*

> David H. Thompson
> Peter A. Patterson
> Cooper & Kirk, PLLC
> 1523 New Hampshire Avenue, N.W.
> Washington, D.C. 20036
> dthompson@cooperkirk.com
> ppatterson@cooperkirk.com
> *Attorneys for Plaintiff-Appellant MSI*

> Matthew Larosiere
> Law Office of Matthew Larosiere
> 6464 Houlton Circle
> Lake Worth, Florida 33467
> larosieremm@gmail.com
> *Counsel for all Plaintiffs-Appellants*

　　　　　　　　　　　　　　　　/s/ *Erin J. Ashbarry*
　　　　　　　　　　　　　　　　Erin J. Ashbarry

Circuit Court for Montgomery County
Case No. 485899V

UNDERLINE — UNREPORTED*

IN THE APPELLATE COURT

OF MARYLAND

No. 2319

September Term, 2023

---

MONTGOMERY COUNTY, MARYLAND

v.

ENGAGE ARMAMENT, LLC, ET AL.

---

Wells, C.J.,
Arthur,
Sharer, J. Frederick
  (Senior Judge, Specially Assigned),

JJ.

---

Opinion by Wells, C.J.

---

Filed: January 24, 2025



*This is an unreported opinion. It may not be cited as precedent within the rule of stare decisis. It may be cited for its persuasive value only if the citation conforms to Rule 1-104(a)(2)(B).

In this appeal, appellant Montgomery County ("the County"), supported by an amicus brief from the Maryland Office of the Attorney General, contends the Circuit Court for Montgomery County erred in granting a declaratory judgment and permanent injunction in favor of appellees, two organizations and seven individuals,[1] regarding two recent amendments to Chapter 57, "Weapons," of the Montgomery County Code. The first amendment, enacted via Bill 4-21 in April 2021, prohibited privately manufactured firearms ("PMFs"), referred to by the County as "ghost guns,"[2] and their major components near minors and within 100 yards of places of public assembly. The second amendment, enacted via Bill 21-22E in November 2022, modified the definition of "place of public assembly" in response to *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022).

The circuit court declared Chapter 57 is not expressly authorized by state law and is not a local law. The circuit court further declared Chapter 57 is expressly, impliedly, and conflict preempted by numerous state laws. Finally, the circuit court declared Chapter 57

---

[1] The two organizations are Engage Armament, LLC ("Engage"), a federally licensed retailer and manufacturer of firearms located in the County, and I.C.E. Firearms and Defensive Training, LLC ("ICE"), a firearms training facility located in the County.

The individual appellees are Andrew Raymond, Brandon Ferrell, Carlos Rabanales, Joshua Edgar, Deryck Weaver, Nancy David, and Ronald David. As correctly noted by the County in its brief, all these individuals reside or work in the County; have or applied for a state-issued wear-and-carry gun permit; and commute, plan to drive by, or live near a place of public assembly. Additionally, Andrew Raymond and Carlos Rabanales are co-owners of Engage, and Ronald Davis is the owner of ICE.

[2] We use "ghost guns" and "PMFs" interchangeably.

–Unreported Opinion–

to be an unlawful taking under the Maryland Constitution. Following its declaratory judgment, the circuit court permanently enjoined enforcement of numerous sections of Chapter 57.

The County timely appeals and submits four questions for our review.[3] We expand those four questions into five:

> 1. Did the circuit court err as a matter of law when it entered a declaratory judgment finding Chapter 57 is not authorized by state law?
>
> 2. Did the circuit court err as a matter of law when it entered a declaratory judgment finding Chapter 57 is not a local law?
>
> 3. Did the circuit court err as a matter of law when it entered a declaratory judgment finding state law preempts Chapter 57?
>
> 4. Did the circuit court err as a matter of law when it entered a declaratory judgment finding Chapter 57 effected a taking in violation of the Maryland Constitution?

---

[3] The County's verbatim questions are:

1. Is the County Firearms Law constitutional where it applies only within the County and the State expressly authorizes counties in § 4-209(b) to regulate firearms with respect to minors and near places of public assembly?
2. As the County Firearms Law does not dispossess anyone of any personal property, but rather adds to existing regulations governing firearms possession, does it effect a taking in violation of the Maryland Constitution and Declaration of Rights?
3. Did the Circuit Court err in entering a declaratory judgment and permanent injunction that invalidated and prohibited enforcement of portions of the County Code that were not referenced at all in the operative complaint or during summary judgment proceedings?
4. Did the Circuit Court err in entering a permanent injunction when the County Firearms Law was within the County's legislative authority and was not preempted by State law?

–Unreported Opinion–

5. Did the circuit court abuse its discretion when it entered a permanent injunction enjoining enforcement of Chapter 57?

We can only answer the first question in part, which we answer in the affirmative. Accordingly, we issue a limited remand for further proceedings consistent with this opinion as to the first question. Because we remand, and full resolution of the first question may impact our analysis regarding the remaining questions, we decline to answer the second, third, fourth, and fifth questions at this time.

## PROCEDURAL BACKGROUND

This appeal stems from Appellees' Second Amended Complaint before the circuit court. That complaint contains three state law claims, alleging Chapter 57 of the Montgomery County Code, as amended by Bills 4-21 and 21-22E, violates the Constitution and laws of Maryland.

Count I alleges the County exceeded its authority under Article XI-A of the Maryland Constitution to enact local laws.

Count II alleges Chapter 57 violates the Express Powers Act, Maryland Code, Local Government, § 10-206, because several sections of Chapter 57 are expressly, impliedly, or conflict preempted by state law.

Count III alleges Chapter 57 violates the Maryland Takings Clause, Article III, § 40 of the Maryland Constitution, and the Due Process Clause, Article 24 of the Maryland Declaration of Rights, by depriving Appellees of the "beneficial use and possession" of their property.

3

–Unreported Opinion–

We reprint from the County's brief a succinct summary of this case's procedural history up until the Second Amended Complaint:

> [Appellees] commenced this action in May 2021 to challenge Bill 4-21 in Montgomery County Circuit Court. The County removed the Complaint to the U.S. District Court for the District of Maryland ("Federal District Court") as it alleged both federal and state claims. The Federal District Court remanded the State law claims and stayed the remaining federal count. *See Md. Shall Issue, Inc. v. Montgomery Cnty.*, Civil Action No. TDC-211736, 2022 WL 375461 (D. Md. Feb. 7, 2022).[4]
>
> Three days after oral argument on the parties' cross-motions for summary judgment, [Appellees] filed an Amended Complaint in Circuit Court in July 2022 adding a federal Second Amendment claim. The County again removed the Amended Complaint to Federal District Court as it again alleged state and federal claims. Following the enactment of Bill 21-22E, in November 2022, [Appellees] filed the operative Second Amended Complaint in Federal District Court. A week after filing the Second Amended Complaint, [Appellees] moved the Federal District Court for an Emergency Temporary Restraining Order and Preliminary Injunction to enjoin enforcement of the County Firearms Law under one of the federal counts.
>
> In May 2023, the Federal District Court remanded the Second Amended Complaint's State law counts (Counts I, II, and III) to [Montgomery County] Circuit Court, but retained jurisdiction over the federal counts. *See Md. Shall issue, Inc. v. Montgomery Cnty.*, No. TDC-21-1736, 2023 WL 3276497 (D. Md. May 5, 2023).
>
> In July 2023, the Federal District Court denied [Appellee's] request for a temporary restraining order and a preliminary injunction. *See Md. Shall Issue, Inc. v. Montgomery Cnty.*, 680 F. Supp. 3d 567 (D. Md. 2023). [Appellees] noted an interlocutory appeal of the denial of the preliminary injunction to the U.S. Court of Appeals for the Fourth Circuit. Both the Federal District Court and the Fourth Circuit denied [Appellee's] request for an injunction pending appeal. The Federal District Court stayed all remaining federal counts pending a decision from the Fourth Circuit on pending federal challenges to state firearms statutes.

---

[4] Appellees' complaint was originally filed with Maryland Shall Issue, Inc. as the lead plaintiff. The circuit court later dismissed Maryland Shall Issue, Inc. for lack of standing. The lead plaintiff is now Engage Armament.

–Unreported Opinion–

After the Federal District Court remanded the state law claims in Counts I, II, and III to the circuit court, the parties filed cross-motions for summary judgment. The County also moved to dismiss Maryland Shall Issue, Inc. as a party for lack of standing. The Maryland Attorney General's Office filed an amicus brief in support of Chapter 57.

The circuit court held a hearing on the parties' motions for summary judgement. On November 27, 2023, the court issued a memorandum and order dismissing Maryland Shall Issue, Inc. as a plaintiff for lack of standing but otherwise granted Appellees' motion for summary judgment.

The circuit court found the challenged provisions of Chapter 57 regulated conduct outside the scope of legislative authority expressly granted to counties in Maryland Code, Criminal Law, § 4-209(b). Specifically, the court found Chapter 57's "expansive language regarding the definition of 'within 100 yards of' a place of public assembly" in § 4-209(b) exceeded legislative authority. Additionally, the court found Chapter 57 is not a local law within the meaning of Article XI-A of the Maryland Constitution. The court then found provisions of Chapter 57 expressly preempted by five state laws, impliedly preempted by "the comprehensive and intertwined scheme of existing State regulation of firearms," and conflict preempted by numerous state laws. Based upon these findings, on December 15, 2023, the court granted the Appellees' requested declaratory relief and issued a permanent injunction preventing enforcement or application of numerous provisions of Chapter 57.

Additionally, although the circuit court did not explain its reasoning in its memorandum decision or its order, it declared portions of Chapter 57 a taking in violation

5

–Unreported Opinion–

of Article III, § 40 of the Maryland Constitution and Article 24 of the Maryland Declaration

of Rights.

On December 20, 2023, the State filed a timely appeal to this court.

## STANDARD OF REVIEW

"In reviewing a declaratory judgment entered pursuant to a motion for summary

judgment, we determine whether it was correct as a matter of law and accord no deference

to the trial court's legal conclusions." *Emerald Hills Homeowners' Ass'n, Inc. v. Peters*,

446 Md. 155, 161 (2016). We review the circuit court's decision to grant a permanent

injunction for an abuse of discretion. *Chestnut Real Et. P'ship v. Huber*, 148 Md. App.

190, 200 (2002).

## DISCUSSION

**I.    State Law Expressly Authorizes the County to Enact Chapter 57, but Only in Part.**

### A. Parties' Contentions

The County contends § 4-209(b) of the Maryland Code of Criminal Law Article

expressly authorizes it to adopt Chapter 57 as amended by Bills 4-21 and 21-22E.[5] Section

4-209(a) preempts counties from regulating firearms:

> (a) Except as otherwise provided in this section, the State preempts the
>     right of a county, municipal corporation, or special taxing district to
>     regulate the purchase, sale, taxation, transfer, manufacture, repair,
>     ownership, possession, and transportation of:
>     (1) a handgun, rifle, or shotgun; and

---

[5] The County does not purport it amended Chapter 57 pursuant to authorization from the Express Powers Act. The County only argues § 4-209(b) expressly authorized it to amend Chapter 57 via Bills 4-21 and 21-22E.

6

–Unreported Opinion–

(2) ammunition for and components of a handgun, rifle, or shotgun.

There are exceptions to § 4-209(a)'s general preemption, two of which are relevant to this

appeal:

> (b)(1) A county, municipal corporation, or special taxing district may regulate the purchase, sale, transfer, ownership, possession, and transportation of the items listed in subsection (a) of this section:
> **(i) with respect to minors;**
> **(iii) … within 100 yards of or in a park, church, school, public building, and other place of public assembly.**

(Emphasis added). The County claims the plain language of § 4-209(b) expressly

authorizes the County to regulate PMFs and other firearms with respect to minors and

within 100 yards of places of public assembly.

Specifically, the County contends it has the authority to expand upon the list of

places of public assembly found in § 4-209(b) as the word "other" in "other place of public

assembly" indicates the public places named in § 4-209(b) is not exhaustive. Therefore, §

4-209(b) permits the County to expand "places of public assembly" beyond those in § 4-

209(b)(1)(iii):

> a publicly or privately owned park; place of worship; school; library; recreational facility; hospital; community health center, including any health care facility or community-based program licensed by the Maryland Department of Health; long-term facility, including any licensed nursing home, group home, or care home; multipurpose exhibition facility, such as a fairgrounds or conference center; childcare facility government building, including any place owned by or under the control of the County; polling place; courthouse; legislative assembly; or a gathering of individuals to collectively express their constitutional right to protest or assemble. A "place of public assembly" includes all property associated with the place, such as a parking lot or grounds of a building.

7

–Unreported Opinion–

Further, the County posits that the circuit court erred in finding Chapter 57 regulates purely private locations, thus exceeding the scope of § 4-209(b)(1)(iii) which only permits local regulation of places open to the public. The County argues § 4-209(b)(1)(iii) authorizes local regulation of places that are open to the public, be they publicly or privately owned, given that some of the places of public assembly listed in §4-209(b)(1)(iii) are privately owned or can be either publicly or privately owned. Consequently, the County posits § 4-209(b)(1)(iii) authorized Chapter 57's definition of place of public assembly to include locations "publicly or privately owned."

While the County contends that we need not look beyond the plain language of § 4-209(b) in determining whether it expressly authorizes the bills at issue, if we do, the County argues both the pre- and post-enactment history of § 4-209 indicate the General Assembly expressly authorized the County to enact local legislation like Chapter 57 as amended by Bills 4-21 and 21-22E. Specifically, the County points to pre-enactment history highlighting how § 4-209(b) was, essentially, a compromise between the General Assembly, which wanted to remove any local authority to regulate weapons and ammunition, and Governor Harry Hughes, who favored local legislation regulating weapons. The County also notes that since § 4-209's enactment in 1985, the General Assembly never modified the state law even though the legislature was on notice of Chapter 57 and Maryland Attorney General opinions interpreting the statute as authorizing local firearms regulations.

8

–Unreported Opinion–

Appellees contend § 4-209(b) does not authorize the County's passage of the two bills amending Chapter 57. Appellees argue § 4-209(b) only creates exceptions to the preemption otherwise imposed by § 4-209(a), thus § 4-209(b) does not create exceptions to the five other express preemption state statutes. They also assert that because of § 4-209(c), which allows a locality to amend a local ordinance existing on December 31, 1984, only if the amendment does not "expand existing regulatory control," § 4-209(b) only authorizes local laws that do not "expand" the scope of local laws in existence in 1984. Appellees also argue Chapter 57 exceeds the scope of § 4-209(b)'s authorization as Chapter 57's definition of "place of public assembly" as "publicly or privately owned" is not found in § 4-209(b)(1)(iii)'s definition of the term, and the list of places of public assembly in Chapter 57 includes locations that are not open to the public. Finally, in support of its overall argument that the amendments to Chapter 57 exceeds any authorization from § 4-209(b), Appellees cite *Mora v. City of Gaithersburg*, a federal district court case that held "the exceptions [in § 4-209(b)] to otherwise blanket preemption [in § 4-209(a)] are narrow and strictly construable." 462 F.Supp.2d 675, 690 (D. Md. 2006), *aff'd as modified sub nom.* 519 F.3d 216 (4th Cir. 2008).

## B. Analysis

Article XI-A of the Maryland Constitution, known as the "Home Rule Amendment," requires the General Assembly to "provide a grant of express powers" to charter counties, like Montgomery County here, so that they can enact local laws. *See McCrory Corp. v. Fowler*, 319 Md. 12, 16 (1990). A local law enacted by a county must

–Unreported Opinion–

be within the express powers granted by the General Assembly. Md. Const. art. XI-A § 3. The General Assembly primarily grants such power to counties via the Express Powers Act, which lists specific areas in which a county can legislate and further permits local legislation that "may aid in maintaining the peace, good government, heath, and welfare of the county." Md. Code Ann., Local Gov't § 10-206. Aside from the Express Powers Act, the General Assembly can grant express powers to counties via other legislation, such as § 4-209(b).

### 1.  Plain Meaning of the Statute

"When construing a statute, we first look to the normal, plain meaning of the language." *City of Frederick v. Pickett*, 392 Md. 411, 427 (2006) (citations omitted). As a preliminary issue, the plain meaning of § 4-209(c) indicates it only applies to amendments to local laws existing in 1984. This is because § 4-209(c) is a savings clause: it "preserves" local laws that existed on or before December 31, 1984, from "immediate interference" by § 4-209. 20A M.L.E Statutes § 62. Otherwise put, § 4-209(c) preserves local laws that existed in 1984 by only allowing localities to amend such laws pursuant to § 4-209(b) if such amendments do not "expand existing regulatory control" (*i.e.*, regulatory control in existence in 1984). However, as the County correctly contends in its reply brief, § 4-209(c) does not prevent local laws enacted *after* 1984 pursuant to § 4-209(b) from expanding the regulatory control in existence in 1984. Accordingly, § 4-209(c) does not impact our analysis *infra* of whether the County enacted Chapter 57 pursuant to § 4-209(b) because the County enacted Chapter 57 after 1984.

10

–Unreported Opinion–

The plain meaning of § 4-209(b)(1)(i) authorizes the County to regulate the use of handguns, including PMFs, by or near persons under the age of 18. Even if the § 4-209(b) exceptions to "otherwise blanket preemption are narrow and strictly construable," the plain meaning of § 4-209(b)(1)(i) authorizes the County to enact Chapter 57 regulating firearms with respect to minors. *Mora*, 462 F.Supp.2d at 690; *see also Selective Way Insurance Company v. Nationwide Prop. & Cas. Ins. Co.*, 242 Md. App. 688, 731 (2019) ("An opinion of a federal district court is not binding on the circuit court or on this Court, but at most might be persuasive authority."). Therefore, we conclude § 4-209(b)(1)(i) expressly authorizes the County to enact Chapter 57's regulation of firearms with respect to minors.

A plain reading of § 4-209(b)(1)(iii)'s text also authorizes the County to regulate whether a person may carry a firearm in or near "place[s] of public assembly." First, a plain language reading shows § 4-209(b)(1)(iii) does not strictly limit "places of public assembly" to those which are solely publicly owned. This is because § 4-209(b)(1)(iii)'s list includes some locations that are always privately owned, such as churches, and other locations which can be either publicly or privately owned, such as schools. Accordingly, we conclude a plain text reading of § 4-209(b)(1)(iii) authorizes Chapter 57 to define place of public assembly as either publicly or privately owned locations open to the public.

Further, Chapter 57 may extend firearms restrictions to private places but only to the extent that the public gathers there. As the Federal District Court that heard part of this case explained, this is because

> all identified locations [in Chapter 57], even those that are privately owned, necessarily are modified by the term "place of public assembly,"

11

–Unreported Opinion–

> so privately owned libraries, recreational facilities, and other locations
> referenced in [Chapter 57's] definition of "place of public assembly" meet
> the definition only if they are actually open to members of the public.

*Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, 680 F.Supp.3d 567, 576 (D. Md. 2023). The Federal District Court's analysis seems reasonable and persuasive. We adopt the Federal District Court's reasoning on this point.

As discussed, it seems clear the legislature sought to carve out an exception for statewide firearms regulation in places where the public may gather. More importantly, for this discussion, the General Assembly's inclusion of the term "and other place of public assembly" indicates its authorization of local legislation regulating certain firearms within 100 yards of places of public assembly is not strictly limited to the places listed in the § 4-209(b)(1)(iii): "park, church, school, public building." The Supreme Court of Maryland in *County Council of Prince George's County v. Zimmer Development Company* noted that "[t]he Legislature's use of 'including' indicates that the local functions listed in the [state statute] are not intended to be an exhaustive list[.]" 444 Md. 490, 529 (2015). Just as the word "including" indicates a list is non-exhaustive, the phrase "and other place of public assembly" indicates the list of places in § 4-209(b)(1)(iii) is non-exhaustive. Accordingly, we conclude localities enacting local laws pursuant to § 4-209(b)(1)(iii) are not limited to regulating firearms only at the places listed in § 4-209(b)(1)(iii).

While § 4-209(b)(1)(iii) authorizes the County to expand upon the places of public assembly listed in § 4-209(b)(1)(iii), the County's expansion seems problematic. Ejusdem generis, Latin for "of the same kind or class," is a "canon of construction holding that when

12

–Unreported Opinion–

a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." *Ejusdem Generis*, *Black's Law Dictionary* (12th ed. 2024). Considering this canon, the phrase "and other place of public assembly" in § 4-209(b)(1)(iii) seemingly only encapsulates places of the same class as those listed before it: "park, church, school, public building." Therefore, localities like the County may only expand upon the list of places of public assembly in § 4-209(b)(1)(iii) if such expansion only includes places of the same class as "park, church, school, [and] public building."

While we can envision the expansion of places of public assembly to include "place of worship," thus capturing temples, mosques, and other religious sites along with "church[es]," we have a harder time discerning whether, for example, "multipurpose exhibition facility, such as a fairground" is included in the term "park" or "public building." Because this issue is unclear, we look at the legislative history to determine whether Chapter 57 permissibly expands upon the list of places of public assembly in § 4-209(b)(1)(iii).

### 2. Pre- and Post-Enactment History

As general rule, "[i]f the language is clear and unambiguous, we need not look beyond the provision's terms to inform our analysis; however, the goal of our examination is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision." *Pickett*, 392 Md. at 427. While we concluded the language of § 4-209(b) with respect to minors is clear and unambiguous, we briefly review

–Unreported Opinion–

§ 4-209's pre- and post-enactment history to discern legislative purpose in order to help inform our analysis regarding local regulation of firearms near places of public assembly.

In 1984, Governor Hughes vetoed a bill from the General Assembly that would have "entirely removed any local authority to regulate weapons and ammunition." 76 Md. Op. Att'y Gen. 240, at *3 (1991). The Governor vetoed the bill because there was "local legislation he believed should not be preempted," namely local legislation regulating weapons in relation to minors and places of public assembly. *Id.* at *5. Because of the veto, § 4-209 came into existence in 1985 as a compromise between the Governor and the members of the General Assembly who enacted the 1984 bill. Specifically, the compromise was Article 27, § 36H(b) of the Maryland Code—now codified as § 4-209(b)—with its "specific exception[s] to general preemption rule." *Id.* This pre-enactment history shows the General Assembly intended to authorize counties to enact local laws that regulate firearms in relation to minors and within 100 yards of places of public assembly. However, it does not clarify whether the General Assembly intended to authorize Chapter 57's expansion upon the list of places of public assembly in § 4-209(b)(1)(iii).

Post-enactment history further highlights the General Assembly's continuing intent to authorize counties to enact local laws regulating firearms in relation to minors and within 100 yards of places of public assembly. Since its enactment in 1985, two Attorney General opinions determined § 4-209(b) authorized pending local gun regulations. In 1991, the Attorney General interpreted § 4-209(b) as not just an exception to preemption from § 4-209(a), but also other general preemption statutes. 76 Md. Op. Att'y Gen. 240, *2 (1991).

14

–Unreported Opinion–

In 1997, the Attorney General reiterated the exceptions to § 4-209(a)'s preemption of local statutes, specifically focusing on the ability of local governments to regulate firearms "with respect to minors." 82 Md. Op. Att'y Gen. 84 (1997). In interpreting *pending* county laws and finding § 4-209(b) authorized such laws without considering regulatory control in 1984, the 1991 and 1997 opinions align with our interpretation of the plain meaning of § 4-209(c) discussed *supra*. Overall, these Attorney General opinions not only align with our reading of the plain language of § 4-209(b) with respect to minors and § 4-209(c), but they also show the General Assembly "acquiesce[s to] the Attorney General's construction" of § 4-209 given "the absence of [the General Assembly] enacting any change to the statutory language" of § 4-209. *Gomez v. Jackson Hewitt, Inc.*, 427 Md. 128, 170 n.36 (2012). Again, however, these Attorney General opinions do not clarify whether § 4-209(b)(1)(iii) authorizes the Chapter 57's expansion of the list of places of public assembly in § 4-209(b)(1)(iii).

### C. Our Preliminary Conclusion

We have concluded that § 4-209(b)(1)(iii) authorizes the County to expand upon the places of public assembly listed in § 4-209(b)(1)(iii), but the County's expansion nonetheless seems problematic. As outlined in our analysis above, neither the plain language of § 4-209(b)(1)(iii) nor the statute's pre- or post-enactment history help us determine whether § 4-209(b)(1)(iii) expressly authorizes the County's expansion of the list of places of public assembly in § 4-209(b)(1)(iii). Because neither the circuit court nor the parties fully addressed what places of public assembly § 4-209(b)(1)(iii) authorizes

localities to regulate aside from those listed in § 4-209(b)(1)(iii), we are not in a position to make those factual findings. Accordingly, we issue a limited remand to determine whether Chapter 57 permissibly expands upon § 4-209(b)(1)(iii)'s list of places of public assembly.

A county law like Chapter 57 can only be valid if it is (1) within the express powers granted by the General assembly, (2) a local law, and (3) not preempted by state law. *See generally Montrose Christian Sch. Corp. v. Walsh*, 363 Md. 565, 579 (2001). Because determining whether § 4-209(b) expressly authorizes *all* of Chapter 57 may impact our analysis of whether Chapter 57 is a local law and/or whether it is preempted by state law, we decline to conduct a full analysis at this time. Accordingly, we reserve those issues and ask the circuit court to determine whether § 4-209(b)(1)(iii) authorizes the Chapter 57's expansion of the list of places of public assembly in § 4-209(b)(1)(iii).

Additionally, we decline to address the issue of whether Chapter 57 constitutes a taking under Maryland's Constitution. On remand, the court should explain its reasoning for concluding that Chapter 57 is a taking under Maryland's Constitution. To the extent the court concludes additional argument from counsel is necessary on either issue, we leave that to the court's discretion.

We shall retain jurisdiction to decide the remainder of the issues presented in this appeal following the circuit court's decision on remand. Therefore, we stay this appeal pending the circuit court's rulings. We will reserve on the assessment of costs.

**THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**THE APPEAL IS STAYED AND ALL OTHER ISSUES RAISED HEREIN ARE RESERVED PENDING THE CIRCUIT COURT'S RULINGS.**

**THE ASSESSMENT OF COSTS ARE ALSO RESERVED.**

E-FILED
Rachel Dombrowski, Clerk
Appellate Court of Maryland
1/24/2025 10:11 PM

# IN THE
# APPELLATE COURT OF MARYLAND

---------------------------------------------

September Term, 2023

No. ACM-REG-2319-2023

---------------------------------------------

MONTGOMERY COUNTY, MARYLAND,
*Appellant,*

*vs.*

ENGAGE ARMAMENT LLC, et al.,
*Appellees.*

---------------------------------------------

Appeal from the Circuit Court for Montgomery County
(The Honorable Ronald B. Rubin)

---------------------------------------------

**MOTION OF PLAINTIFFS-APPELLEES FOR RECONSIDERATION
AND TO STAY THE MANDATE PENDING A PETITION FOR CERTIORARI
TO THE MARYLAND SUPREME COURT**

---------------------------------------------

Mark W. Pennak
*Maryland Shall Issue, Inc.*
9613 Harford Rd
Ste. C #1015
Baltimore, MD 21234-2150
mpennak@marylandshallissue.org
*Counsel for Appellees*


EXHIBIT
B

Pursuant to Maryland Rule 8-606(b)(4), Plaintiffs-Appellees respectfully move this Court for an order reconsidering its January 24, 2025, Opinion in this case and for an order Staying the Mandate of the Court pending the filing of a Petition for Certiorari to the Maryland Supreme Court under MD Code, Courts and Judicial Proceedings, § 12-201. Other parties to this appeal have not agreed to "not to oppose the motion." See Rule 8-431(a). For the reasons set forth below, this Motion should be granted.

## ARGUMENT

## I.    Introduction

This case presents the issue of whether Montgomery County ("the County") is authorized by MD Code, Criminal Law, §4-209(b)(1), to enact Chapter 57 of the County Code. Chapter 57 imposes across the board, County-wide regulation of the possession, sale, transport and transport of all types of firearms, including regulated firearms. There is no dispute in this case that Chapter 57 swallows much of the broad express preemption of such local regulation by MD Code, Criminal Law, § 4-209(a). Nor is there any question that Chapter 57 is in direct and acknowledged conflict with four other express preemption statutes governing the sale, possession and transfer of regulated firearms (handguns) and the transfer of long guns.[1]

Chapter 57 is also in direct conflict with another an express preemption statute that governs the wear, carry and transport of handguns, including by persons with carry permits

---

[1] See MD Code, Public Safety, § 5-133(a) (superseding and preempting local regulation over the "possession" of regulated firearms); MD Code, Public Safety, § 5-134(a) (superseding and preempting local regulation of the "transfer" of regulated firearms); MD Code, Public Safety, § 5-104 (providing that subtitle 1 of Title 5 supersedes

issued by the Maryland State Police under MD Code, Public Safety, § 5-306.[2] That regulatory scheme for the wear, carry and transport of handguns was amended with the 2023 enactment of Senate Bill 1[3] and of House Bill 824,[4] both of which were enacted in response to the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). See Brief of Plaintiffs-Appellees at 3-6. Chapter 57 likewise conflicts with specific provisions of the comprehensive regulatory scheme governing the possession of privately made firearms, enacted in 2022 by Senate Bill 387,[5] firearms dealer security measures enacted in 2021 by House Bill 1021,[6] and possession of firearms by minors enacted in 2023 by Senate Bill 858.[7] See Brief of Plaintiffs-Appellees at 8-9. The Circuit Court held, and County does not dispute, that the restrictions imposed by Chapter

---

and preempts local regulation of the "sale" of regulated firearms); MD Code, Public Safety, § 5-207(a) (superseding and preempting local regulation of "the transfer of a rifle or shotgun").

[2] See 1972 Maryland Session Laws, Ch. 13, §§ 6, 8 (preempting local regulation "on the wearing, carrying, or transporting of handguns" and expressly repealing any local or State law inconsistent with that enactment).

[3] 2023 Maryland Session Laws, Ch. 680, *codified in part at* MD Code, Criminal Law, §§ 4-203, 4-111 and 6-411, and MD Code, Public Safety § 5-307.

[4] 2023 Maryland Session Laws, Ch. 651, *codified in part at* MD Code, Public Safety, § 5-306.

[5] 2022 Maryland Session Laws, Ch. 19, *codified in part at* MD Code, Public Safety, § 5-701, et seq,

[6] 2022 Maryland Session Laws, Ch. 55, *codified in part at* MD Code, Public Safety, §§ 5-114, 5-145.1.

[7] 2023 Maryland Session Laws, Ch. 622, *amending* MD Code, Criminal Law, § 4-104.

57 directly conflict with all these express preemption provisions and with these other regulatory schemes. E.874-E903.

## II.    This Court's January 24, 2025, Decision

In its January 24, 2025, Opinion the Court ruled that this case presented five issues:

1. Did the circuit court err as a matter of law when it entered a declaratory judgment finding Chapter 57 is not authorized by state law?
2. Did the circuit court err as a matter of law when it entered a declaratory judgment finding Chapter 57 is not a local law?
3. Did the circuit court err as a matter of law when it entered a declaratory judgment finding state law preempts Chapter 57?
4. Did the circuit court err as a matter of law when it entered a declaratory judgment finding Chapter 57 effected a taking in violation of the Maryland Constitution?
5. Did the circuit court abuse its discretion when it entered a permanent injunction enjoining enforcement of Chapter 57?

Slip op. at 2-3.

The Court, however, purported to answer only the first question. *Id*. at 3. Relying on MD Code, Criminal Law, § 4-209(b)(1)(iii), the Court ruled that notwithstanding the existence of these express preemption statutes (including one statute enacted as recently as 2021),[8] "it seems clear the legislature sought to carve out an exception for statewide firearms regulation in places where the public may gather." *Id.* at 12. The Court held that the County may enact legislation that effectively bars any carry permit holder from carrying anywhere within 100 yards of a "park, church, school, public building" and ruled, as a matter of law, that the County "may expand upon the list of places of public assembly in §

---

[8] See MD Code, Public Safety, § 5-207(a) (preempting and superseding local regulations of transfers of long guns).

4-209(b)(1)(iii) if such expansion only includes places of the same class as 'park, church, school, [and] public building.'" Slip op. at 13.

The Court then remanded the case back to Circuit Court "to determine whether Chapter 57 permissibly expands upon § 4-209(b)(1)(iii)'s list of places of public assembly." *Id.* at 15. According to the Court, such a remand is necessary because "neither the circuit court nor the parties fully addressed what places of public assembly § 4-209(b)(1)(iii) authorizes localities to regulate aside from those listed in § 4-209(b)(1)(iii)," holding that "we are not in a position to make those factual findings." *Id.* at 15-16. The Court expressly declined to address Plaintiffs-Appellees' claim that Chapter 57 was a general law and thus violated Article XI-A § 3 of the Maryland Constitution and likewise declined to address Plaintiffs-Appellees' claim that Chapter 57 imposed a Taking in violation of Article 40 of the Maryland Constitution and Article 24 of the Maryland Declaration of Rights. Slip op. at 16. The Court then stayed the appeal pending a decision by the Circuit Court on the remand. *Id.* at 16-17.

## III.  A Stay of the Mandate Is Appropriate Pending A Petition for Certiorari

The Maryland Supreme Court has jurisdiction under MD Code, Courts and Judicial Proceedings, § 12-203, to issue a writ of certiorari "before or after the Appellate Court of Maryland has rendered a decision" where the Court finds that such review "is desirable and in the public interest." That standard is easily satisfied here. This Court has now held that Section 4-209(b)(1)(iii) allows a locality to enact a local law that supersedes and overrides five other express preemption statutes enacted by the General Assembly, in addition to effectively swallowing much of the express preemption otherwise imposed by

- 4 -

MD Code, Criminal Law, § 4-209(a). Slip op. at 12. By any measure the scope of Section 4-209(b)(1)(iii) is a profoundly important issue that has State-wide implications requiring Supreme Court resolution. There is no dispute in this case that the County's law is in direct conflict with these other express preemption statutes.

There is likewise no dispute that the General Assembly has since 1972 enacted and repeatedly amended a comprehensive regulatory scheme governing the wear, carry and transport of handguns, including by persons issued wear and carry permits by the Maryland State Police. See Brief of Plaintiffs-Appellees at 6-7. Sections 6 and 8 of that 1972 legislation imposed absolute uniformity on this subject matter by not only superseding and preempting local law, but also by expressly *repealing* any local or **State** law that was inconsistent with that 1972 legislative scheme. See Reply to Amicus at 10. The Maryland Court of Appeals (now Supreme Court) recognized and gave effect to these provisions in *Montgomery County v. Atlantic Guns, Inc.,* 302 Md. 540 (1985), by striking down another Montgomery County ordinance that attempted to regulate ammunition.

That legislative scheme has been repeatedly amended over the years, including as recently as 2023 with the enactment of Senate Bill 1 and House Bill 824. See Brief of Plaintiffs-Appellees at 6-7. The continued viability of the uniformity imposed by that legislative scheme directly affects every county in the State as well as every gun-owning resident of Maryland and is obviously a matter of great legal and practical importance. If the most populous county in the State (Montgomery County) may override State express preemption laws and disregard the comprehensive scheme for carry permits in this manner, then it is more than likely that other counties will follow suit with the imposition of their

own restrictions, including the imposition of strict criminal liability like the County has here.[9] The resulting patchwork of legal restrictions will result in legal "chaos." See *Board of County Commissioners v. Perennial Solar, LLC*, 464 Md. 610, 620-21 (2019). Such laws will ensnare the innocent by allowing counties to impose strict criminal liability for simple mistakes. Avoidance of such draconian consequences is precisely why the General Assembly imposed a "willfully" *mens rea* requirement in enacting Senate Bill 1 in 2023 governing carry by permit holders. See MD Code, Criminal Law, § 4-111(f); MD Code, Criminal Law, § 6-411(e). These issues demand definitive resolution by the Supreme Court.

With its decision on Question 1 alone, this Court has sustained the power of a county to enact legislation that effectively bars any carry permit holder from carrying anywhere within 100 yards of a "park, church, school, public building" and ruled, as a matter of law, that the County "may expand upon the list of places of public assembly in § 4-209(b)(1)(iii) if such expansion only includes places of the same class as 'park, church, school, [and] public building.'" Slip op. at 13. The County has never disputed that the 100-yard bans for a "park, church, school, public building" **alone** cover thousands of locations and an immense geographic area. See Brief of Plaintiffs-Appellees at 17. That is particularly so since the County measures its 100-yard gun-free zones from the outer edge of "all property associated with the place, such as a parking lot or grounds." *Id*. at 9-10. The County's law

---

[9] See Montgomery County Code, § 57-15 (providing that a violation of Chapter 57 is a "Class A violation to which the maximum penalties for a Class A violation apply"). A Class A violation is punishable by a $1,000 fine and 6 months in jail. County Code, § 1-20(c). Nothing in Chapter 57 imposes any *mens rea* requirement.

makes it impossible, as a practical matter, for a permit holder to carry in the County. That reality cannot be ignored.

These County restrictions also collide head on with the Second Amendment, as construed in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), where the Supreme Court held that under the Second Amendment there is a "general right to publicly carry arms for self-defense" (*id*. at 31), which may be restricted only in "exceptional circumstances." *Id.* at 38. While this federal constitutional issue is not before this Court, the constitutionality of the County's restrictions is currently before the United States Court of Appeals for the Fourth Circuit in *Maryland Shall Issue, Inc. v. Montgomery County,* No. 23-1719 (4th Cir.). The Fourth Circuit is holding its proceedings in abeyance "pending resolution by the Maryland appellate courts of the County's appeal" in this case. *Id*. Order ECF # 77 (Feb. 22, 2024). This Court's ruling thus affects federal constitutional rights which makes it even more likely that the Supreme Court will grant certiorari on the scope of authority accorded by Section 4-209(b)(1)(iii). See *Fooks v. State*, 485 Md. 52 (2023) (granting certiorari to consider the scope of firearm disqualifications that may be imposed under the Second Amendment).

A stay of the Court's mandate is essential to maintaining the *status quo ante* while the Maryland Supreme Court considers the petition for certiorari. While reversing the Circuit Court on Question 1, this Court did not reach the merits of the other questions presented and thus did not vacate or disturb the injunction against the County entered by the Circuit Court on these other Counts of the Second Amended Complaint. The injunction thus remains in place. The County did not seek to stay the Circuit Court's judgment while

the case was on appeal in this Court and thus would not be harmed or prejudiced by the stay of the mandate sought here.

Under Maryland Rule 8-302(a), a petition for certiorari is due within 30 days "after the filing" of this Court's "opinion," the same time specified by Maryland Rule 8-606(b) for the issuance of the Court's mandate. Plaintiffs-Appellees fully intend to file a petition within that 30-day period. A stay of the mandate would thus not result in any undue delay in the remand proceedings ordered by this Court. Rather, a stay of the mandate would simply maintain the *status quo* while the Supreme Court considers the petition. A decision by the Supreme Court favorable to Plaintiffs-Appellees would likely obviate the perceived need for further proceedings in the Circuit Court as well as in this Court and thus conserve the resources of this Court, of the Circuit Court and of the parties. A favorable decision might even moot Plaintiffs' request for prospective injunctive relief in the pending proceedings in the Fourth Circuit, just as the County has claimed in seeking and obtaining the abeyance of those proceedings. Comity considerations thus favor a stay of the mandate. In short, there is no reason to deny a stay of the mandate on the important issues that would be presented by a petition for certiorari.

## III. The Court's Remand For "Factual Findings" Concerning The Scope of the Authority Accorded Localities By Section 4-209(b)(1)(iii) Is Error

The Court erred in remanding the case for the Circuit Court to enter "factual findings" concerning "what places of public assembly § 4-209(b)(1)(iii) authorizes localities to regulate aside from those listed in § 4-209(b)(1)(iii)." See slip op. at 15-16. Respectfully, the "places" that Section 4-209(b)(1)(iii) "authorizes" is a **legal** question, not

a question requiring "factual findings." That question is purely a matter of statutory interpretation of the language of Section 4-209(b)(1)(iii). Statutory construction issues are questions of law. "The paramount object of statutory construction is the ascertainment and effectuation of the real intention of the Legislature." *Andrews & Lawrence Professional Services, LLC v. Mills*, 467 Md. 126, 149 (2020). In making that inquiry "[w]e assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly." *Lyles v. Santander Consumer USA Inc.,* 478 Md. 588, 601 (2022). Those principles apply no less to preemption cases. See, e.g., *Angel Enterprises Limited Partnership v. Talbot County*, 474 Md. 237, 260 (2021) (holding that in cases arising under the Express Powers Act, a court must determine if the local government "has the *legal authority* to undertake the action") (citation omitted) (emphasis added).

Nor are the rest of the questions presented dependent on any "factual findings" concerning the scope of the authority accorded by Section 4-209(b)(1)(iii). For example, whether Chapter 57 is a "local law" under Article XI-A, § 3 of the Maryland Constitution is an independent question that turns on, among other things, whether the local law "'affect[s] matters of significant interest to the entire State.'" *Assanah-Carroll v. Law Offices of Edward J. Maher, PC*., 480 Md. 394, 426 (2022), quoting *McCrory Corp. v. Fowler*, 319 Md. 12, 20 (1990). See Brief of Plaintiffs-Appellees at 29-30; Reply to Amicus, at 12-14. Whether Maryland has such a "significant interest" is obviously a legal question. Whether Chapter 57 "affects" that interest is likewise a legal question that turns *on the language* of Chapter 57. Again, the scope of the language of Chapter 57 is *a legal*

*question*. The scope of Section 4-209(b)(1)(iii) (the remanded issue) is irrelevant because the General Assembly simply does not have the authority under Article XI-A, §§ 3 and 6 of the Maryland Constitution to authorize a locality to enact a general law. See Brief of Plaintiffs-Appellees at 31. If Chapter 57 is not a local law, then nothing in Section 4-209(b)(1)(iii) can possibly save it. Full stop.

The Takings issue likewise is a pure question of law that can be answered by reference to the language of Chapter 57. The Takings in this case *have already occurred* with the amendments to Chapter 57 made by the enactment of Bill 4-21 and Bill 21-22E. See Brief of Plaintiffs-Appellees at 9-10, 32-33. Nothing regarding the scope of Section 4-209(b)(1)(iii) can change that fact. The County has declared, *ipse dixit*, that previously lawfully owned personal property is contraband and barred possession, sale, transfer and transport of that property solely on that basis. See Brief of Plaintiffs-Appellees at 31-35. Whether these statutory bans constitute a Taking under the Maryland Constitution is purely a legal question on which Plaintiffs-Appellees are likely to prevail. See, e.g., *Tyler v. Hennepin County, Minnesota*, 598 U.S. 631, 638 (2023) ("[T]he Takings Clause would be a dead letter if a state could simply exclude from its definition of property any interest that the state wished to take.") (citation omitted). See also *Moore v. Harper*, 600 U.S. 1, 34-35 (2023) ("States 'may not sidestep the Takings Clause by disavowing traditional property interests'") (citation omitted); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980) (holding that States may not, "by *ipse dixit* ... transform private property into public property without compensation"). Not even the County has contended that

Section 4-209(b)(1)(iii) authorizes the County to Take property in violation of Maryland's Constitution.

This Court had a "duty to decide" the Takings issue under Article III, § 40 of the Maryland Constitution, and Article 24 of the Maryland Declaration of Rights, and to decide whether Chapter 57 is a "local law" under Article XI-A § 3 of the State Constitution. See, e.g., *Maryland Board of Physicians v. Geier*, 241 Md.App. 429, 518 (2019) ("'The absence of a controlling decision on an issue does not absolve this Court (or a circuit court) of its duty to decide an issue before it."). The remand for "factual findings" ordered by the Court on the scope of Section 4-209(b)(1)(iii) cannot possibly answer the legal issues associated with either question. The petition for certiorari will thus include both the Takings issue and the Article XI-A, § 3 questions as both issues present questions of law that should be considered and decided by the Supreme Court. In this manner, the entire case can be resolved all at once.

## CONCLUSION

For the foregoing reasons, the Court should reconsider its decision and stay its mandate pending a timely petition for certiorari to the Maryland Supreme Court.

Respectfully submitted,

*/s/ Mark W. Pennak*

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd, Ste. C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
MD Atty No. 1905150005

January 24, 2025                          *Counsel for Plaintiffs-Appellees*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on January 24, 2025, an electronic copy of the foregoing Motion Of Plaintiffs-Appellees For Reconsideration And To Stay The Mandate Pending A Petition For Certiorari To The Maryland Supreme Court was served on the following counsel for defendant Montgomery County and any other counsel of record via the MDEC e-filing system.

/s/ *Mark W. Pennak*

MARK W. PENNAK
*Counsel for Plaintiffs-Appellees*

**E-FILED**
**Rachel Dombrowski, Clerk**
**Appellate Court of Maryland**
**1/24/2025 10:11 PM**

**IN THE**
**APPELLATE COURT OF MARYLAND**

-----------------------------------------------

September Term, 2023

No. ACM-REG-2319-2023

-----------------------------------------------

MONTGOMERY COUNTY, MARYLAND,
*Appellant,*

*vs.*

ENGAGE ARMAMENT LLC, et al.,
*Appellees.*

-----------------------------------------------

Appeal from the Circuit Court for Montgomery County
(The Honorable Ronald B. Rubin)

---

**ORDER**

Upon consideration of the Motion of Plaintiffs-Appellees for reconsideration and for a stay of mandate, and the response thereto, it is hereby ORDERED:

The motion for a stay of mandate pending the filing of a petition for certiorari with the Supreme Court of Maryland is GRANTED. This stay of the Court's mandate shall continue until such time as the Supreme Court disposes of any petition for certiorari in a final order. The parties are directed to promptly inform this Court of any disposition of any petition for certiorari by the Supreme Court.

SO ORDERED:

_____ DATED: _____