# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| **MARYLAND SHALL ISSUE, INC., *et al.*,** | ) | |
| ***Plaintiffs-Appellants,*** | ) | **No. 23-1719** |
| **v.** | ) | |
| **MONTGOMERY CO., MD,** | ) | |
| ***Defendant-Appellee.*** | ) | |

## NOTICE

Pursuant to this Court's order of May 22, 2026, the plaintiffs-appellants in the above captioned matter hereby notify the Court that by order dated November 16, 2026, the Supreme Court denied certiorari in *Novotny v. Moore*, No. 25-1324 (U.S. filed May 20, 2026). A copy of the order and the accompanying statement of Justice Thomas are attached.

By a separate filing, the plaintiffs-appellants in *Barreto, et al. v. Montgomery County, Md.*, No. 26-2473 (4th Cir.), have notified the Court of that denial of certiorari in *Novotny*. Undersigned counsel is counsel for the appellants in both cases. Maryland Shall Issue, Inc. is a party in both the *MSI* and in *Barreto* appeals. Both *MSI* and *Barreto* involve ordinances enacted by Montgomery County, Maryland. The individual plaintiffs are otherwise completely different in the two

cases. The plaintiffs-appellants respectfully request additional time of not less than two weeks to confer with co-counsel and counsel for appellee, Montgomery County, Maryland, and to file a motion concerning the establishment of a briefing schedule both in this appeal and in *Barreto.*

Respectfully submitted,

*/s/ Mark W. Pennak*

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd, Ste, C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
*Counsel for Plaintiffs-Appellants*

Dated: November 17, 2026

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on November 17, 2026, the forgoing Notice was served on all counsel of record via ECF service.

*s/ Mark W. Pennak*

MARK W. PENNAK
*Counsel for Plaintiffs-Appellants*

USCA4 Appeal: 23-1719 Doc: 142 Filed: 11/17/2026 Pg: 3 of 6



# SUPREME COURT OF THE UNITED STATES

KATHERINE NOVOTNY, ET AL. *v.* WES MOORE, GOVERNOR OF MARYLAND, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 25–1324. Decided November 16, 2026

The petition for a writ of certiorari is denied.

Statement of JUSTICE THOMAS respecting the denial of certiorari.

Maryland is one of several States that prohibit law-abiding gun owners from carrying firearms in a wide variety of public places. Under Maryland law, an individual may not carry a firearm in public demonstrations, mass transit, places of amusement, healthcare facilities, locations that sell alcohol for onsite consumption, and tens of thousands of acres of state park and forest land. Md. Crim. Law Code Ann. §§4–111(a)(2)(iii), (a)(9)(i)–(vi), (c), (e), 4–208(b)(2) (2021 and Supp. 2026); Md. Transp. Code Ann. §7–705(b)(6) (2015); Code of Md. Regs., tit. 8, §§08.07.01.04(B), 08.07.06.04(B) (2025). The Fourth Circuit upheld these restrictions against petitioners' Second Amendment challenge because it concluded that each law banned firearms in a "sensitive place." *Kipke* v. *Moore*, 165 F. 4th 194, 204–205 (2026).

I am skeptical that each of these laws "is consistent with this Nation's historical tradition of firearm regulation" in "sensitive places." *New York State Rifle & Pistol Assn., Inc.* v. *Bruen*, 597 U. S. 1, 17, 30 (2022). Still, I agree with the Court's decision not to grant certiorari. Because each Maryland statute implicates a distinct historical tradition of firearm regulation, the breadth of petitioners' challenge would complicate our review. In an appropriate and more narrowly focused case, however, we should consider the

USCA4 Appeal: 23-1719 Doc: 142 Filed: 11/17/2026 Pg: 4 of 6



scope of States' authority to ban firearms in "sensitive places."

The Second Amendment recognizes the people's "inherent" right to keep and bear firearms, a right that admits of only historically grounded exceptions. See *District of Columbia* v. *Heller*, 554 U. S. 570, 628, 634–635 (2008). Before and after the founding, it was well understood that individuals enjoyed a natural right to keep and bear arms, which included the right to carry firearms in public spaces for self-defense. *Id.*, at 593–594, 612; see also *Bruen*, 597 U. S., at 50. The Constitution "codified [that] *pre-existing* right." *Heller*, 554 U. S., at 592; accord, *Wolford* v. *Lopez*, 609 U. S. 185, 193 (2026). The first generations after the founding recognized the breadth of the Second Amendment's "guarante[e]," and "those who sought to carry firearms publicly and peaceably in antebellum America were generally free to do so." *Bruen*, 597 U. S., at 33, 52. Thus, when a State seeks to restrict the right to bear arms—including by limiting the places in which a law-abiding citizen may carry his firearm—the State must root its law in the Second Amendment's "historical understanding" by "demonstrat[ing] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*, at 17, 26.

This Court has previously acknowledged a limited tradition of States' regulating the right to carry firearms in certain "sensitive places." *Heller*, 554 U. S., at 626. In *Bruen*, we observed that early American legislatures sometimes prohibited weapons in "legislative assemblies, polling places, and courthouses." 597 U. S., at 30. But, we emphasized that this tradition was narrow. "[T]he historical record yields relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited." *Ibid.* While "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations . . . are constitutionally permissible," "expanding the

category of 'sensitive places' . . . to all places of public congregation . . . would eviscerate the general right to publicly carry arms for self-defense." *Id.*, at 30–31.

Nevertheless, States have seized on the idea of "sensitive places" to prohibit the peaceable carry of firearms in locations that bear little resemblance to legislatures, polling places, or courthouses. New Jersey, for example, prohibits firearms in at least 25 locations, including zoos, public libraries, casinos, and state-owned beaches. N. J. Stat. Ann. §§2C:58–4.6(a)(9), (10), (12), (18) (West 2024). New York has designated 20 locations as "sensitive," ranging from "any place of worship" to "residential settings licensed . . . by the department of health." N. Y. Penal Law Ann. §§265.01–e(2)(c), (*l*) (West 2025). California's 29 gun-free spaces include "athletic facilit[ies]," "financial institution[s]," and any government-permitted "public gathering or special event." Cal. Penal Code Ann. §§26230(a)(10), (12), (23) (West Cum. Supp. 2026).* These restrictions stand on questionable historical ground. And, their cumulative effect is to prohibit firearms wherever people gather for eating, drinking, recreation, amusement, and free speech—an affront to the right of "law-abiding citizens" to "carr[y] arms in public for" their "ordinary self-defense." *Bruen*, 597 U. S., at 60.

The lower courts have largely blessed these ahistorical ventures. The Fourth Circuit below upheld all but one of Maryland's locational restrictions. *Kipke*, 165 F. 4th, at 204–205. A now-vacated decision of the Third Circuit upheld many of New Jersey's "sensitive-place" laws. See *Koons* v. *Attorney Gen. N. J.*, 156 F. 4th 210, 274 (2025), reh'g en banc granted, opinion vacated, 162 F. 4th 100. Courts of Appeals have also rejected challenges to specific

---

*Several other States ban firearms in many public places. See, *e.g.*, Ill. Comp. Stat., ch. 430, §66/65 (West 2024); Haw. Rev. Stat. §134–9.1 (2023).

locational restrictions in New York, California, and Hawaii. See, *e.g.*, *Antonyuk* v. *James*, 120 F. 4th 941, 1007–1013, 1015–1032 (CA2 2024) (upholding New York laws prohibiting the possession of firearms in treatment centers, urban parks, zoos, places that serve alcohol, and theatres); *Wolford* v. *Lopez*, 116 F. 4th 959, 982–990 (CA9 2024) (upholding bans on carrying firearms in parks, playgrounds, bars and restaurants that serve alcohol, places of amusement, and parking areas connected to "sensitive places"), rev'd on other grounds, 609 U. S. 185 (2026).

I harbor serious doubts that our Nation's historical tradition of firearm regulation supports many of these sweeping restrictions. In an appropriate case, this Court should consider whether particular sensitive-place laws are consistent with the right to public carry.